# EXHIBIT 1

## Declaration of James McCormack

1.        My name is James McCormack.  I am over 18 years of age and competent in all respects to make this Declaration pursuant to 28 U.S.C. §1746.  My office address is 3267 Bee Cave Road, Suite 107—PMB 107, Austin, Texas 78746.  I have personal knowledge of the facts in this declaration; can testify to their accuracy; and make this statement voluntarily.

2.        I am a Texas attorney and have been licensed since 1984.  I am the former **General Counsel and Chief Disciplinary Counsel of the State Bar of Texas** (1991-1996) and, as such, served as the chief legal ethics enforcement officer for the attorney disciplinary system in Texas. I am also a former **Chair of the Texas Center for Legal Ethics and Professionalism** (now called the Texas Center for Legal Ethics); a past member of the **Texas Disciplinary Rules of Professional Conduct Committee** of the State Bar of Texas; an **adjunct professor of law at the University of Texas School of Law**; and the current **Editor-in Chief of the *EthicsExchange*** of the Texas Center for Legal Ethics.

3.   In 2015, the Supreme Court of Texas appointed me to the **Texas Professional Ethics Committee,** which prepares formal ethics opinions for publication in the Texas Bar Journal for the guidance of Texas lawyers.  In 2018, the Court reappointed me to an additional three-year term on the Committee.

4.        On January 15, 2020, I sent a written request under the Texas Public Information Act ("TPIA") to Mr. Gene Major of the State Bar of Texas Advertising Review Department for Advertising Review Department records relating to advertising submissions and applications by Texas attorneys Michael Josephson and Andrew Dunlap of the Josephson Dunlap law firm ("Josephson Dunlap") from January 1, 2019 through January 15, 2020.  A true and correct copy of that request is attached as **Exhibit A**.

5.        On or around February 17, 2020, I received the requested records, totaling in 1,332 individual pages (the "TPIA Production.").

6.        Attached as **Exhibit B** is a true and correct copy of a letter included in the TPIA Production (Bates Stamped 001331-001332) sent to Josephson Dunlap from the Advertising Review Department on August 1, 2019.

7.        Attached as **Exhibit C** is a true and correct copy of a letter included in the TPIA Production (Bates Stamped 0042-0046) sent to Josephson Dunlap from the Advertising Review Department on September 17, 2019.

8.        Attached as **Exhibit D** is a true and correct copy of a letter included in the TPIA Production (Bates Stamped 001315) sent to the Advertising Review Department from Josephson Dunlap on October 2, 2019.

9.        Attached as **Exhibit E** is a true and correct copy of a letter included in the TPIA Production (Bates Stamped 0036-0041) sent to Josephson Dunlap from the Advertising Review Department on October 3, 2019.

10.        Attached as **Exhibit F** are true and correct copies of the Advertising Review Department's approvals for "day rate" advertisements for the following companies:

- Enbridge

- Enterprise

- Energy Transfer Partners

- Cheniere

- Cleveland Integrity Services

- Applied Consultants

- Boardwalk Pipeline Partners

- Kinder Morgan

- ONEOK

- Plains All American Pipeline

- Phillips 66

- On & Offshore Quality Control Specialists

- Tulsa Inspection Resources

- Magellan Midstream

- Kestrel Engineering

- QIS

These approvals were included in the TPIA Production (Bates Stamped 0063-0067, 0075-0078, 0081-0082, 00105-00106, 00115-00116, 00161-00162, 00181-00182, 00187-00188, 00191-00192, 00203-00204, 00207-00208, 00217-00218, 00237-00238, 00281-00282, 00327-00328, 00608-00614).

11.    During my review of the TPIA Production, I did not see any document relating to the below "Offer of Judgment" advertisement in **Exhibit H** (*i.e.*, Josephson Dunlap's advertising review submissions to the State Bar of Texas Advertising Review Department).  This means that Josephson Dunlap did not submit its <u>complete</u> advertising to the State Bar of Texas, as required. Filing incomplete advertising with the State Bar and misleading the State Bar into approving incomplete versions of deceptive advertising is indicative of conduct violating the advertising provisions of the Texas Disciplinary Rules of Professional Conduct as well as Texas Rule 8.04(a)(3)("*A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation*").  Further, the "Offer of Judgment" advertisement does not indicate whether the clients accepted this "offer" or what the actual outcome of this matter was.  Therefore, this

"Offer of Judgment" advertisement violates Rule 7.02(a), Texas Disciplinary Rules of Professional Conduct because it raises undue expectations about the results that the lawyers can achieve as well as fails to disclose the actual result and net to the clients. The "offer" advertisement claims that the net to the clients would be $140,000--if the clients accepted this offer--but this information is not the same as disclosing what the <u>actual</u> net to the clients was (i.e., the reader is misled into believing that the clients actually received $140,000 when the ad does not say that nor does the ad disclose what the actual monetary result of this case was).

12.     Similarly, I did not see any document relating to the webpage in **Exhibit I** during my review of the TPIA Production. Therefore, **Exhibit I** was not submitted to the State Bar of Texas during the period covered by my January 2020 TPIA request.

13.     I also did not see any document relating to the email in **Exhibit J** during my review of the TPIA Production. Therefore, **Exhibit J** was not submitted to the State Bar of Texas during the period covered by my January 2020 TPIA request.

14.     I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of July 2020 in Lincoln County, Maine.


_____

James M. McCormack

4

# EXHIBIT A

# James M. McCormack

ATTORNEY AND COUNSELOR AT LAW

VIA EMAIL: Gene.Major@TexasBar.com

January 15, 2020

Mr. Gene Major, Director
Advertising Review Department
The State Bar of Texas
1414 Colorado Street
Austin, Texas 78701

Re: Texas Public Information Act Request for Advertising Review Department Records Relating to Advertising Submissions/Applications of **Beatriz Sosa-Morris** and **John Neuman** of the Sosa-Morris Newman law firm; and **Michael Josephson** and **Andrew Dunlap** of the Josephson Dunlap law firm**.**

Dear Mr. Major:

Pursuant to the Texas Public Information Act (TPIA), I respectfully request a copy of all advertising review applications **(with the ad or written solicitation copy)** filed by **Beatriz Sosa-Morris (State Bar No. 24076154) and John Neuman (State Bar No. 24083560) of the Sosa-Morris Newman law firm**; and **Michael Josephson (State Bar No. 24014780) and Andrew Dunlap (State Bar No. 24078444) of the Josephson Dunlap law firm** with the State Bar of Texas Advertising Review Department since **January 1, 2019** to the present.  My request includes **all filings, approvals, disapprovals, non-filer notices, and all other correspondence**, in whatever form (letter, email or otherwise), between any of the four lawyers identified above and/or their law firms and the Department during the same period.  This request includes all correspondence from the Department to any of these attorneys and/or their law firms regarding the firms' advertising and written solicitations during this time period.

Thank you for your kind attention to this request.  Please let me know if there are any complications or questions about this matter.

Very truly yours,

James M. McCormack

Cc: Mr. John Sirman, Esq., State Bar of Texas Counsel, via jsirman@texasbar.com

# EXHIBIT B

# STATE BAR OF TEXAS



## ADVERTISING REVIEW COMMITTEE

August 1, 2019

Michael A. Josephson
Josephson Dunlap
11 Greenway Plaza
Ste. 3050
Houston, TX 77046-1122

9171 9690 0935 0199 3995 62

RE:   File Number:  79725
      Bar Card Number:  24014780

Dear Michael A. Josephson:

It has come to the attention of the staff of the Advertising Review Department that you or your firm has disseminated either a public media advertisement or a written solicitation communication in violation of Part 7 of the Texas Disciplinary Rules of Professional Conduct. A copy of the ad or writing in question is attached.

The information on the filing requirements for advertisements and solicitation communications can be found in Section 7.07 of the Texas Disciplinary Rules of Professional Conduct. Most ads and written solicitations are required by the Rules to be filed with the Advertising Review Committee upon first dissemination. There are certain exemptions to these filing requirements which are listed in Rule 7.07(e). Please note that if an advertisement or writing is non-exempt, the failure to file with the Committee is a violation of Part VII of the rules, even if the ad or writing complies with the rules in all other respects. (Also, please note that any substantive change in the text of a previously filed advertisement or written solicitation letter could lead to a new filing. If you believe that you have previously filed and received an approval you should check to ensure that the attached is the same as your previously approved material. If it is, you should contact staff with the file number under which the material was previously approved.)

Please be aware that under the rules, failure to file can be a disciplinary offense. The Advertising Review Committee was designed to assist in administratively correcting violations before reporting an attorney to the grievance system. The Committee will allow you the opportunity to submit your advertisement or written solicitation for review. Within twenty (20) days of your receipt of this letter, you are requested to file the attached ad or writing with the Advertising Review Department.

An advertisement or written solicitation can only be filed in the form of an official application packet that includes: a copy of the ad or writing, a completed application form, and a $100.00 filing fee. In addition, there is a late filing fee of $250.00 assessed to each advertisement or written solicitation letter that is not timely filed as required by the Rules. These fees should be combined into one payment. Each ad or writing must be filed separately. A sample copy of the envelope in which they are to be mailed must accompany written solicitations .Television or radio commercials must include both a copy of the ad and a detailed production script. The rules, filing requirements, and forms are available on our website which is located at: **https://www.texasbar.com/AM/Template.cfm?Section=Advertising_Review**
As a convenience, an application packet has been enclosed.

If your completed application packet is not received in this office by the twentieth (20th) day following the

RESPONDENT'S NO. 001331

**www.texasbar.com**
1414 Colorado St. / P.O. Box 12487 / Austin, Texas 78711-2487 / (800) 566-4616 / (512) 463-1463 / FAX (512) 427-4109



79725

RESPONDENT'S NO. 001332

# EXHIBIT C

# STATE BAR OF TEXAS



## ADVERTISING REVIEW COMMITTEE

ANDREW W DUNLAP
JOSEPHSON DUNLAP LLP
11 GREENWAY PLAZA
STE 3050
HOUSTON TX 77046

### FILING REQUEST INFO

September 17, 2019

RE:     File Number: **79846**
        Bar Card Number: **24078444**

Dear Andrew W. Dunlap:

Thank you for submitting your application and advertisement or writing to the Advertising Review Committee. The staff for the Committee reviewed the above-referenced application. The advertisement or writing either requires additional information to substantiate representations that are contained therein, or may violate Part 7 of the Texas Disciplinary Rules of Professional Conduct. Listed are the potential violations:

*       The material indicated is likely to create an unjustified expectation concerning the results the lawyer can achieve as prohibited by 7.02(a)(3). (Please refer to attached advertisement, letter, or production script for specific material indicated.)
*       The city or town in which the lawyer's or firm's principal office is located is not disclosed as required by 7.04(j).

The application you submitted indicates that this advertisement or writing containing the above-referenced possible violations is currently being disseminated to the public. Please note that under the rules, should these areas be found to violate the TDPC, this could result in a disciplinary offense.

The staff of the Advertising Review Committee of the State Bar wants to assist you in eliminating any possible violation. With that in mind, the Committee is here to guide you in what we believe is some needed corrections to your current publication.   Within fifteen (15) days from the date of this letter, please return via either mail, fax or email, one of the following documents to the Advertising Review Committee:

        (1) the advertisement or writing with the appropriate corrections completed, or
        (2) a notice certifying that you have stopped public dissemination of the advertisement or writing.

        Such a notice should contain one of the following explanations:
                (a) Dissemination has been temporarily stopped for the purpose of making corrections. (Include the date corrections will be forwarded to the staff.);

# STATE BAR OF TEXAS



## ADVERTISING REVIEW COMMITTEE

Should you decide to change the advertisement by deleting or adding information or text beyond an address or phone number change, the advertisement will be considered a new advertisement requiring an additional $100 filing fee.

If you have any questions regarding this notice or other questions regarding the application or your submission to the Committee, please call the staff at (800)566-4616, or email at adreview@texasbar.com.

**Please include your unique file number (referenced above) on all correspondence pertaining to this application.**

Thank you for your cooperation.

Sincerely,

Gene Major
Director, Advertising Review Department

enc.

RESPONDENT'S NO. 0043

## ADVERTISEMENT / WRITTEN SOLICITATION
## REVIEW CHECKLIST – Revised Rules 09/2019

Lawyer Name: _____ Dunlap, Andrew W.

File/Case No.: _____ 79846 _____ Resubmittal? (Circle one) YES ( NO )

### VIOLATIONS OF THE RULES:

( ) partner, shareholder or associate – 7.01(d)

( ) trade or fictitious name – 7.01(a),(e)

( ) false and misleading – 7.02(a)(1), 7.05(a)(3)

( ) 'no designation...', misleading – 7.02(a)(1), 7.05(a)(3)

( ) false and misleading – results – 7.02(a)(2)

( ) unjustified expectation – 7.02(a)(3)

( ) client testimonials – 7.02(a)(1),(a)(2)

( ) comparison of services – 7.02(a)(4)

( ) use of an actor – 7.02(a)(7)

( ) 'specialist' – 7.02(c)

( ) in each language used – 7.02(d)

( ) lawyer responsible – 7.04(b)(1)

( ) certifying organization not accredited – 7.04(b)(2)

( ) disclaimer not present – 7.04(q)

( ) same manner, equal prominence – 7.04(q)

( ) portrays a lawyer – 7.04(g)

( ) contingent fee – 7.04(h)

( ) city or town – 7.04(j)

( ) office other than principal – 7.04(j)(2)

( ) paid for by another lawyer – 7.04(k)

( ) likely to be referred – 7.04(l)

( ) lawyer referral service – 7.04(n)

( ) cooperative or venture – 7.04(o)

( ) ADVERTISEMENT – 7.05(b)(1),(2),(c)(1)

( ) nature of legal prob. revealed – 7.05(b)(4)

( ) info. prompting communication – 7.05(b)(5),(c)(3)

( ) no envelope / Packing – 7.07(a)(1)

( ) non-exempt, not filed – 7.07(d),(a),(b)

( ) requires substantiation – 7.07(f)

( ) mailed before 31 day –PenCd.38.12(d)(2)(A)

( ) television advertisements –
Chapter 81.151, Government Code

( ) Other Violations or Comments:

_____

_____

_____

_____

_____

( ) PRE-APPROVE    ( ) APPROVE    ( ) REQUEST INFO    ( ) DISAPPROVE    ( ) REFER TO GC

REVIEWED BY: _____    DATE: 9/13/19

RESPONDENT'S NO. 0044

# DID YOU GET PAID A DAY RATE?

## CLAIM YOUR UNPAID OVERTIME.

Did you receive a day rate? You may not have been paid what you were rightly owed. Fill out the form to start the process and get back your wages. This is an advertisement by Josephson Dunlap, LLP. Contact Andrew W. Dunlap for questions.

7.12(a)(3)        7.04(5)

# 79846

RESPONDENT'S NO. 0045



The actual layout of your ad may look slightly different from this preview and the final ad appearance may vary by device.

RESPONDENT'S NO. 0046

# EXHIBIT D



### JOSEPHSON DUNLAP LLP
LAWYERS FOR THE WORKERS®

**ANDREW W. DUNLAP**
PARTNER

October 2, 2019

Via Email: adreview@texasbar.com
Advertising Review Committee
State Bar of Texas
P.O. Box 12487
Austin, Texas 78711-2487

      Re:    File Number 79846

Dear Gene Major:

      Thank you for your September 17, 2019 correspondence.

      This letter certifies that the advertisement referenced in File Number 79846 has been updated to comply with the changes recommended by the Advertising Review Committee. A copy of the updated advisement is attached.

      Further, we also certify that dissemination of the previous version of the advertisement has been permanently stopped.

      We look forward to final approval of the advertisement attached to this letter.

      If you have any questions, please do not hesitate to contact me at 713-352-1100.

Sincerely,

Andrew W. Dunlap

RESPONDENT'S NO. 001315

# EXHIBIT E

# **STATE BAR OF TEXAS**



## **ADVERTISING REVIEW COMMITTEE**

ANDREW W DUNLAP
JOSEPHSON DUNLAP LLP
11 GREENWAY PLAZA
STE 3050
HOUSTON TX 77046



## **NOTICE OF APPROVAL**

October 3, 2019

RE:  File Number: **79846**
     Bar Card Number: **24078444**

Dear Andrew W. Dunlap:

Thank you for your submission to the Advertising Review Committee of the State Bar of Texas. Committee staff has reviewed your advertisement and determined that it complies with Part VII of the Texas Disciplinary Rules of Professional Conduct (TDRPC). In addition, this approval submission is in compliance with Chapter 81.151, Texas Government Code.  (Note that effective September 1, 2019, television advertisements need to comply with Chapter 81.151, Texas Government Code. For more information and a copy of the statute, visit the Advertising Review webpage at www.texasbar.com/adreview.)

This opinion is based only on review of your submission for compliance with Part VII of the TDRPC regulating lawyer advertising and Chapter 81.151, Texas Government Code. It does not address any unauthorized practice of law or ethics issues that may be present, which are beyond the scope of an advertising opinion.

At all times, the Committee reserves the right to request substantiation of the claims made in the advertisement. In addition, the Committee may rescind approval of an advertisement if:

1.   It is discovered that the communication contains or implies false and otherwise misleading information; and/or

2.   A change of circumstances occurring subsequent to the Committee's evaluation of an advertisement or written solicitation raises a substantial possibility that the communication has become or was false and misleading as a result of the change in circumstances. A change in circumstances may include:

   A.)   A change in law, ethics opinion, disciplinary rule, or Interpretive Comment
   B.)   Change in interpretation of a rule by the Advertising Review Committee

In the event that approval of your advertisement is rescinded, you will be given written notification of the Committee's decision. If the advertisement is rescinded because it was discovered that it is false or misleading as described in item #1 above, your right to continue disseminating the communication is immediately revoked. If the advertisement is rescinded due to a change of circumstances as described in item #2, you will be given written notice and a period of time, not to exceed ninety 90 days from the notice of rescission, in which to discontinue use of the advertisement. Rescission of approval under item #2 will be applicable to all advertisements similarly impacted by the Committee's decision.

# STATE BAR OF TEXAS



## ADVERTISING REVIEW COMMITTEE

Should you decide to change the advertisement by deleting or adding information or text beyond an address or phone number change, the advertisement will be considered a new advertisement requiring an additional $100 filing fee.

If you have any questions regarding this notice or other questions regarding the application or your submission to the Committee, please call the staff at (800)566-4616, or email at adreview@texasbar.com.

**Please include your unique file number (referenced above) on all correspondence pertaining to this application.**

Thank you for your cooperation.

Sincerely,

Gene Major
Director, Advertising Review Department

enc.

**ADVERTISEMENT / WRITTEN SOLICITATION
REVIEW CHECKLIST – Revised Rules 09/2019**

Lawyer Name: _Dunlap, Andrew W._

File/Case No.: _79846_          Resubmittal? (Circle one) YES NO

### VIOLATIONS OF THE RULES:

( ) partner, shareholder or associate – 7.01(d)

( ) trade or fictitious name – 7.01(a),(e)

( ) false and misleading – 7.02(a)(1), 7.05(a)(3)

( ) 'no designation...', misleading – 7.02(a)(1), 7.05(a)(3)

( ) false and misleading – results – 7.02(a)(2)

( ) unjustified expectation – 7.02(a)(3)

( ) client testimonials – 7.02(a)(1),(a)(2)

( ) comparison of services – 7.02(a)(4)

( ) use of an actor – 7.02(a)(7)

( ) 'specialist' – 7.02(c)

( ) in each language used – 7.02(d)

( ) lawyer responsible – 7.04(b)(1)

( ) certifying organization not accredited – 7.04(b)(2)

( ) disclaimer not present – 7.04(q)

( ) same manner, equal prominence – 7.04(q)

( ) portrays a lawyer – 7.04(g)

( ) contingent fee – 7.04(h)

( ) city or town – 7.04(j)

( ) office other than principal – 7.04(j)(2)

( ) paid for by another lawyer – 7.04(k)

( ) likely to be referred – 7.04(l)

( ) lawyer referral service – 7.04(n)

( ) cooperative or venture – 7.04(o)

( ) ADVERTISEMENT – 7.05(b)(1),(2),(c)(1)

( ) nature of legal prob. revealed – 7.05(b)(4)

( ) info. prompting communication – 7.05(b)(5),(c)(3)

( ) no envelope / Packing – 7.07(a)(1)

( ) non-exempt, not filed – 7.07(d),(a),(b)

( ) requires substantiation – 7.07(f)

( ) mailed before 31 day –PenCd.38.12(d)(2)(A)

( ) television advertisements –
      Chapter 81.151, Government Code

( ) Other Violations or Comments:

_____

_____

_____

_____

_____

( ) PRE-APPROVE   (X) APPROVE   ( ) REQUEST INFO   ( ) DISAPPROVE   ( ) REFER TO GC

REVIEWED BY: _____   DATE: _10/3/19_

# APPLICATION FORM
## LAWYER ADVERTISING AND SOLICITATION COMMUNICATIONS

Effective July 29, 1995, Part VII of the Texas Disciplinary of Rules of Professional Conduct (TDRPC) require that a lawyer **file** with the Advertising Review Committee a copy of all public media advertisements and solicitation communications, except those exempt by Rule 7.07(e), contemporaneously with first dissemination or mailing. If desired, an advisory opinion (**pre-approval**) may be obtained by submitting a copy of the advertisement or writing at least 30 days prior to its first dissemination or mailing. (If pre-approval is requested for an advertisement that is to be placed in a telephone directory or similar publication, the ad must be submitted at least 30 days prior to the printing deadline of the publication rather than 30 days prior to dissemination date of the publication.) If a pre-approval is requested, a response will be mailed within 25 days of the date of receipt of a completed application packet.

For Committee Use Only
- Fee Enclosed
- Letter/Email
- Brochure/Newsletter
- Print Ad
- Script
- Recording
- Website
- Billboard

Case No. 71846

Date Rec'd. 8/16/19

---

### INSTRUCTIONS FOR SUBMISSION OF A COMPLETE APPLICATION PACKET

1. Complete the entire Application. You can either complete each space on this form online and then print it after completion or print the form and complete it manually by printing your responses. This form may be reproduced.
2. Attach advertisement or solicitation communication.
   - For a solicitation letter, attach a sample of the letter and the envelope in which it will be mailed.
   - For a television or radio ad or internet video, attach a detailed production script (including ad title or number) and recording on an audio or video disk/USB flash drive.
   - If requesting pre-approval of a television or radio ad or internet video that has not yet been produced, a production script can be submitted without the recording on CD/DVD or USB flash drive.
   - For an ad or letter in any language other than English, attach a complete, accurate English translation along with the ad, script, or solicitation in the original language.
   - **For a website, include the domain name/URL address on the Application Form and two printed copies of the initial access page.**

3. Enclose check in the amount of **$100.00** payable to the State Bar of Texas for each ad or writing unless you complete the credit card section of this form.
4. **Mail original and one copy\* of each completed application packet to:**
   **Advertising Review Committee**
   **State Bar of Texas**
   **PO Box 12487**
   **Austin, TX 78711-2487**

   \*Note exception: It is not necessary to include an additional copy of the recording on a second CD/DVD or USB flash drive for television or radio commercials or internet videos.

   If multiple advertisements are being submitted, a separate application packet and fee must be submitted for each advertisement or writing. If submitting more than one packet at a time, television or radio advertisements or internet videos can be combined onto one disk/tape. Filing fees can also be combined onto one check. Incomplete application packets may be returned and will not be docketed for review. Addendum Form is located on the Mandatory Submission Steps page of the Committee's website, www.texasbar.com/adreview. **For questions concerning filing requirements, call 1-800-566-4616 or email adreview@texasbar.com.**

---

Lawyer\*: Andrew W. Dunlap                    Bar Card #\*: 24078444

Firm: Josephson Dunlap, LLP

Firm's Principal Office Address\*: 11 Greenway Plaza, Suite 3050, Houston, Texas 77046

APPROVED

---

Phone\*: 713-352-1100        Fax:                    E-mail: 552.137; 552.1176

**Nature of advertisement or solicitation communication\*:**

| | | | |
|---|---|---|---|
| A. ____ | Letter (Complete Addendum Form) | E. ____ Brochure Newsletter (Complete Addendum Form) | I. ____ Billboard Ad |
| B. ____ | Telephone Directory | F. X Internet Ad | J. ____ Other |
| C. ____ | Magazine/Newspaper | G. ____ Internet Video | |
| D. ____ | Television/Radio | H. ____ Website, URL: _____ | |

This form (updated 06/01/2015) supersedes all prior forms.                    (Form continued on back.....)
**\* Required Fields**

(.....page 2 of 2, form continued from front)
It is extremely important that you review the explanation of the difference between filing and pre-approval at top of this page before answering the following question:
**Does applicant seek pre-approval?\*** Yes (pre-approval) _____   No (filing) X _____
If you answered **No**, state the date the advertisement or solicitation was first disseminated or mailed. 8/15/19

**Is it likely that a case or matter resulting from the advertisement or solicitation will be referred to another lawyer or law firm?\*** Yes _____ No X _____

**Does the advertisement or solicitation disclose or allude to a specific fee, range of fees, or that the lawyer or law firm will render fees on a contingent fee basis?\*** Yes _____ No X _____

**Does the advertisement or solicitation disclose the existence of an office other than the firm's principal office?\*** Yes _____ No X _____
If you answered **Yes**, is the satellite office staffed by a lawyer at least three days per week? Yes _____ No _____

**Does the advertisement or solicitation designate or allude to one or more specific areas of practice?\*** Yes_____ No X _____
If you answered **Yes**, is the lawyer board certified in the areas of practice advertised? Yes _____ No _____

**Has another lawyer or law firm paid any part of the advertisement or solicitation?\*** Yes _____ No X _____

If you answered **Yes**, identify the lawyer or law firm. _____

**In what geographic location(s) will the material be disseminated?\*** Internet _____

**Identify any lawyers depicted in the submitted material.\*** None _____

**Identify any actual clients depicted in the submission along with such clients' addresses and phone numbers.\***
None

**Note:** The Advertising Review Department may request substantiation of any statement or representation made in the submitted advertisement or solicitation communication.

**Payment by credit card:** Name of cardholder _____ (circle one) AMEX  MC  Visa  $ _____
                                        Please Print

Number: _____ CVV: _____ Date of Expiration: _____
ATTEST: I HAVE REVIEWED THE ADVERTISEMENT OR WRITING SUBMITTED AS REQUIRED BY RULE 7.04(e) OR 7.05(d), TDRPC. THE REPRESENTATIONS CONTAINED THEREIN AND THE INFORMATION IN THIS APPLICATION ARE TRUE AND CORRECT.

_____        August 12, 2019
Signature of Applicant                                    Date

| FOR COMMITTEE USE ONLY | | | | |
|---|---|---|---|---|
| PRE-APPROVED | APPROVED | ADD'L INFORMATION REQUESTED | DISAPPROVED | REFERRED TO CHIEF DISC. COUNSEL |
| DATE _____ | DATE 10/3/19 | DATE 9/1/19 | DATE _____ | DATE _____ |
| BY _____ | BY CMM | BY _____ | BY _____ | BY _____ |

This form (updated 06/01/2013) supersedes all prior forms.

**\* Required Fields**

RESPONDENT'S NO. 0040

 **Josephson Dunlap**
268 followers
1m

 + Follow  •••

Did you receive a day rate? [Job Titles] may not have been paid what they were rightly owed. Fill out the form to start the process and get back your wages. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



RESPONDENT'S NO. 0041

# EXHIBIT F

# STATE BAR OF TEXAS



**ADVERTISING REVIEW COMMITTEE**



ANDREW W DUNLAP
JOSEPHSON DUNLAP LLP
11 GREENWAY PLAZA
STE 3050
HOUSTON TX 77046

## NOTICE OF APPROVAL

December 11, 2019

RE:     File Number: **80452**
        Bar Card Number: **24078444**

Dear Andrew W. Dunlap:

Thank you for your submission to the Advertising Review Committee of the State Bar of Texas. Committee staff has reviewed your advertisement and determined that it complies with Part VII of the Texas Disciplinary Rules of Professional Conduct (TDRPC). In addition, this approval submission is in compliance with Chapter 81.151, Texas Government Code. (Note that effective September 1, 2019, television advertisements need to comply with Chapter 81.151, Texas Government Code. For more information and a copy of the statute, visit the Advertising Review webpage at www.texasbar.com/adreview.)

This opinion is based only on review of your submission for compliance with Part VII of the TDRPC regulating lawyer advertising and Chapter 81.151, Texas Government Code. It does not address any unauthorized practice of law or ethics issues that may be present, which are beyond the scope of an advertising opinion.
At all times, the Committee reserves the right to request substantiation of the claims made in the advertisement. In addition, the Committee may rescind approval of an advertisement if:

1.      It is discovered that the communication contains or implies false and otherwise misleading information; and/or
2.      A change of circumstances occurring subsequent to the Committee's evaluation of an advertisement or written solicitation raises a substantial possibility that the communication has become or was false and misleading as a result of the change in circumstances. A change in circumstances may include:
        A.)     A change in law, ethics opinion, disciplinary rule, or Interpretive Comment
        B.)     Change in interpretation of a rule by the Advertising Review Committee

In the event that approval of your advertisement is rescinded, you will be given written notification of the Committee's decision. If the advertisement is rescinded because it was discovered that it is false or misleading as described in item #1 above, your right to continue disseminating the communication is immediately revoked. If the advertisement is rescinded due to a change of circumstances as described in item #2, you will be given written notice and a period of time, not to exceed ninety 90 days from the notice of rescission, in which to discontinue use of the advertisement. Rescission of approval under item #2 will be applicable to all advertisements similarly impacted by the Committee's decision.

RESPONDENT'S NO. 0063

# STATE BAR OF TEXAS



## ADVERTISING REVIEW COMMITTEE

Should you decide to change the advertisement by deleting or adding information or text beyond an address or phone number change, the advertisement will be considered a new advertisement requiring an additional $100 filing fee.

If you have any questions regarding this notice or other questions regarding the application or your submission to the Committee, please call the staff at (800)566-4616, or email at adreview@texasbar.com.

**Please include your unique file number (referenced above) on all correspondence pertaining to this application.**

Thank you for your cooperation.

Sincerely,

Gene Major
Director, Advertising Review Department

enc.

RESPONDENT'S NO. 0064

## ADVERTISEMENT / WRITTEN SOLICITATION
## REVIEW CHECKLIST – Revised Rules 09/2019

Lawyer Name:                    Dunlap, Andrew W.

File/Case No.: _____ 80452 _____          Resubmittal? (Circle one)  YES   NO

### VIOLATIONS OF THE RULES:

(   ) partner, shareholder or associate – 7.01(d)

(   ) trade or fictitious name – 7.01(a),(e)

(   ) false and misleading – 7.02(a)(1), 7.05(a)(3)

(   ) 'no designation…', misleading – 7.02(a)(1), 7.05(a)(3)

(   ) false and misleading – results – 7.02(a)(2)

(   ) unjustified expectation – 7.02(a)(3)

(   ) client testimonials – 7.02(a)(1),(a)(2)

(   ) comparison of services – 7.02(a)(4)

(   ) use of an actor – 7.02(a)(7)

(   ) 'specialist' – 7.02(c)

(   ) in each language used – 7.02(d)

(   ) lawyer responsible – 7.04(b)(1)

(   ) certifying organization not accredited – 7.04(b)(2)

(   ) disclaimer not present – 7.04(q)

(   ) same manner, equal prominence – 7.04(q)

(   ) portrays a lawyer – 7.04(g)

(   ) contingent fee – 7.04(h)

(   ) city or town – 7.04(j)

(   ) office other than principal – 7.04(j)(2)

(   ) paid for by another lawyer – 7.04(k)

(   ) likely to be referred – 7.04(l)

(   ) lawyer referral service – 7.04(n)

(   ) cooperative or venture – 7.04(o)

(   ) ADVERTISEMENT – 7.05(b)(1),(2),(c)(1)

(   ) nature of legal prob. revealed – 7.05(b)(4)

(   ) info. prompting communication – 7.05(b)(5),(c)(3)

(   ) no envelope / Packing – 7.07(a)(1)

(   ) non-exempt, not filed – 7.07(d),(a),(b)

(   ) requires substantiation – 7.07(f)

(   ) mailed before 31 day –PenCd.38.12(d)(2)(A)

(   ) television advertisements –
        Chapter 81.151, Government Code

(   ) Other Violations or Comments:

_____

_____

_____

_____

(   ) PRE-APPROVE    ( ✓ ) APPROVE    (   ) REQUEST INFO    (   ) DISAPPROVE    (   ) REFER TO GC

REVIEWED BY: _____          DATE: 12/11/01

# APPLICATION FORM
## LAWYER ADVERTISING AND SOLICITATION COMMUNICATIONS

Effective July 29, 1995, Part VII of the Texas Disciplinary of Rules of Professional Conduct (TDRPC) require that a lawyer **file** with the Advertising Review Committee a copy of all public media advertisements and solicitation communications, except those exempt by Rule 7.07(e), contemporaneously with first dissemination or mailing. If desired, an advisory opinion (**pre-approval**) may be obtained by submitting a copy of the advertisement or writing at least 30 days prior to its first dissemination or mailing. (If pre-approval is requested for an advertisement that is to be placed in a telephone directory or similar publication, the ad must be submitted at least 30 days prior to the printing deadline of the publication rather than 30 days prior to dissemination date of the publication.) If a pre-approval is requested, a response will be mailed within 25 days of the date of receipt of a completed application packet.

| For Committee Use Only | |
|---|---|
| X | Fee Enclosed |
| | Letter/Email |
| | Brochure/Newsletter |
| | Print Ad |
| | Script |
| | Recording |
| X | Website |
| | Billboard |

Case No. __80452__

Date Rec'd. __10/21/19__

---

## INSTRUCTIONS FOR SUBMISSION OF A COMPLETE APPLICATION PACKET

1. Complete the entire Application. You can either complete each space on this form online and then print the form after completion or print the form and complete it manually by printing your responses. This form may be reproduced.
2. Attach advertisement or solicitation communication.
   > For a solicitation letter, attach a sample of the letter and the envelope in which it will be mailed.
   > For a television or radio ad or internet video, attach a detailed production script (including ad title or number) and recording on an audio or video disk/USB flash drive.
   > If requesting pre-approval of a television or radio ad or internet video that has not yet been produced, a production script can be submitted without the recording on CD/DVD or USB flash drive.
   > For an ad or letter in any language other than English, attach a complete, accurate English translation along with the ad, script, or solicitation in the original language.
   > **For a website, include the domain name/URL address on the Application Form and two printed copies of the initial access page.**

3. Enclose check in the amount of **$100.00** payable to the State Bar of Texas for each ad or writing unless you complete the credit card section of this form.
4. **Mail original and one copy* of each completed application packet to:**
   **Advertising Review Committee**
   **State Bar of Texas**
   **PO Box 12487**
   **Austin, TX 78711-2487**

   *Note exception: It is not necessary to include an additional copy of the recording on a second CD/DVD or USB flash drive for television or radio commercials or internet videos.

If multiple advertisements are being submitted, a separate application packet and fee must be submitted for each advertisement or writing. If submitting more than one packet at a time, television or radio advertisements or internet videos can be combined onto one disk/tape. Filing fees can also be combined onto one check. Incomplete application packets may be returned and will not be docketed for review.
Addendum Form is located on the Mandatory Submission Steps page of the Committee's website, www.texasbar.com/adreview.
**For questions concerning filing requirements, call 1-800-566-4616 or email adreview@texasbar.com.**

---

Lawyer*: Andrew W. Dunlap

Bar Card #*: 24078444

Firm: Josephson Dunlap, LLP

Firm's Principal Office Address*: 11 Greenway Plaza, Suite 3050, Houston, Texas 77046

Phone*: 713-352-1100     Fax:     E-mail: 552.137; 552.1176

**Nature of advertisement or solicitation communication*:**

| | | | | | |
|---|---|---|---|---|---|
| A. ____ | Letter **(Complete Addendum Form)** | E. ____ | Brochure Newsletter **(Complete Addendum Form)** | I. ____ | Billboard Ad |
| B. ____ | Telephone Directory | F. _X_ | Internet Ad | J. ____ | Other |
| C. ____ | Magazine/Newspaper | G. ____ | Internet Video | | |
| D. ____ | Television/Radio | H. ____ | Website, URL: | | |

This form (updated 06/01/2015) supersedes all prior forms.     (Form continued on back.....)
**\* Required Fields**

*(.....page 2 of 2, form continued from front)*
*It is extremely important that you review the explanation of the difference between filing and pre-approval at top of this page before answering the following question:*
**Does applicant seek pre-approval?\*** Yes (pre-approval) _____   No (filing) X_____
If you answered **No**, state the date the advertisement or solicitation was first disseminated or mailed. 10/16/19 _____

**Is it likely that a case or matter resulting from the advertisement or solicitation will be referred to another lawyer or law firm?\*** Yes _____   No X_____

**Does the advertisement or solicitation disclose or allude to a specific fee, range of fees, or that the lawyer or law firm will render fees on a contingent fee basis?\*** Yes _____   No X_____

**Does the advertisement or solicitation disclose the existence of an office other than the firm's principal office?\***
Yes _____   No X_____
If you answered **Yes**, is the satellite office staffed by a lawyer at least three days per week? Yes_____   No_____

**Does the advertisement or solicitation designate or allude to one or more specific areas of practice?\***
Yes_____   No X_____
If you answered **Yes**, is the lawyer board certified in the areas of practice advertised?   Yes _____   No _____

**Has another lawyer or law firm paid any part of the advertisement or solicitation?\*** Yes _____   No X_____

If you answered **Yes**, identify the lawyer or law firm. _____

**In what geographic location(s) will the material be disseminated?\*** The Internet _____

**Identify any lawyers depicted in the submitted material.\*** Andrew W. Dunlap _____

**Identify any actual clients depicted in the submission along with such clients' addresses and phone numbers.\***
N/A

**Note:** The Advertising Review Department may request substantiation of any statement or representation made in the submitted advertisement or solicitation communication.

Payment by credit card: Name of cardholder 552.136

552.136

Number _____

ATTEST: I HAVE REVIEWED THE ADVERTISEMENT OR WRITING SUBMITTED AS REQUIRED BY RULE 7.04(e) OR 7.05(d), TDRPC. THE REPRESENTATIONS CONTAINED THEREIN AND THE INFORMATION IN THIS APPLICATION ARE TRUE AND CORRECT.

_____     10/14/19
Signature of Applicant                          Date

| FOR COMMITTEE USE ONLY | | | | |
|---|---|---|---|---|
| PRE-APPROVED | APPROVED | ADD'L INFORMATION REQUESTED | DISAPPROVED | REFERRED TO CHIEF DISC. COUNSEL |
| DATE _____ | DATE 12/11/19 | DATE _____ | DATE _____ | DATE _____ |
| BY _____ | BY _____ | BY _____ | BY _____ | BY _____ |

*This form (updated 06/01/2013) supersedes all prior forms.*

**\* Required Fields**

 **Josephson Dunlap**
418 followers
2mo • Edited

Did you work for Enbridge? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.





 **Josephson Dunlap**
418 followers
2mo • Edited

• • •

Did you work for Enterprise? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



RESPONDENT'S NO. 0077



 **Josephson Dunlap**
418 followers
2mo • Edited

• • •

Did you work for Energy Transfer Partners? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.





RESPONDENT'S NO. 0082

 **Josephson Dunlap**
418 followers
2mo • Edited

Did you work for Cheniere? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.





RESPONDENT'S NO. 00106

 **Josephson Dunlap**
418 followers
2mo • Edited

• • •

Did you work for Cleveland Integrity Services? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



RESPONDENT'S NO. 00115



RESPONDENT'S NO. 00116

 **Josephson Dunlap**
415 followers
2mo • Edited

...

Did you work for Applied Consultants? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.





Find out if you and your family can be compensated for your injuries and lost wages.

Speak to an attorney today for a free confidential consultation. Advertisement by Josephson Dunlap LLP of Houston, Texas. Contact Andrew Dunlap for questions.

Submit

RESPONDENT'S NO. 00162

 **Josephson Dunlap**
415 followers
2mo • Edited

...

Did you work for Boardwalk Pipeline Partners? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



DID YOU GET A DAY RATE AT **Boardwalk Pipeline Partners?**

FIND OUT WHETHER YOU'RE OWED UNPAID OVERTIME WAGES TODAY.

RESPONDENT'S NO. 00181



 **Josephson Dunlap**
418 followers
2mo • Edited

**· · ·**

Did you work for Kinder Morgan? Many who worked for them may not have
been paid what they were rightly owed. Fill out the form to start the easy
process to learn more about your back wages today. This is an advertisement
by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for
questions.





RESPONDENT'S NO. 00188



**Josephson Dunlap**
416 followers
3w • Edited

• • •

Did you work for Oneok? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



RESPONDENT'S NO. 00191



 **Josephson Dunlap**
418 followers
2mo • Edited

· · ·

Did you work for Plains All American Pipeline? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



RESPONDENT'S NO. 00203



RESPONDENT'S NO. 00204

 **Josephson Dunlap**
418 followers
2mo • Edited

• • •

Did you work for Phillips 66? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



RESPONDENT'S NO. 00207



RESPONDENT'S NO. 00208



**Josephson Dunlap**
419 followers
1w • Edited

• • •

Did you work for On & Offshore Quality Control Services? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.





RESPONDENT'S NO. 00218

 **Josephson Dunlap**
415 followers
2mo • Edited

Did you work for Tulsa Inspection Resources? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



RESPONDENT'S NO. 00237



RESPONDENT'S NO. 00238

 **Josephson Dunlap**
418 followers
2mo • Edited

Did you work for Magellan Midstream? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



RESPONDENT'S NO. 00281



Find out if you and your family can be compensated for your injuries and lost wages.

Speak to an attorney today for a free confidential consultation. Advertisement by Josephson Dunlap LLP of Houston, Texas. Contact Andrew Dunlap for questions.

Submit

RESPONDENT'S NO. 00282

 **Josephson Dunlap**   · · ·
418 followers
2mo · Edited

Did you work for Kestrel Engineering? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process to learn more about your back wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.



DID YOU GET A
DAY RATE AT
**Kestrel Engineering?**

FIND OUT WHETHER YOU'RE OWED
UNPAID OVERTIME WAGES TODAY.

RESPONDENT'S NO. 00327



# STATE BAR OF TEXAS



## ADVERTISING REVIEW COMMITTEE



ANDREW W DUNLAP
JOSEPHSON DUNLAP LLP
11 GREENWAY PLAZA
STE 3050
HOUSTON TX 77046

### NOTICE OF APPROVAL

December 11, 2019

RE:     File Number: **80482**
        Bar Card Number: **24078444**

Dear Andrew W. Dunlap:

Thank you for your submission to the Advertising Review Committee of the State Bar of Texas. Committee staff has reviewed your advertisement and determined that it complies with Part VII of the Texas Disciplinary Rules of Professional Conduct (TDRPC). In addition, this approval submission is in compliance with Chapter 81.151, Texas Government Code. (Note that effective September 1, 2019, television advertisements need to comply with Chapter 81.151, Texas Government Code. For more information and a copy of the statute, visit the Advertising Review webpage at www.texasbar.com/adreview.)

This opinion is based only on review of your submission for compliance with Part VII of the TDRPC regulating lawyer advertising and Chapter 81.151, Texas Government Code. It does not address any unauthorized practice of law or ethics issues that may be present, which are beyond the scope of an advertising opinion.
At all times, the Committee reserves the right to request substantiation of the claims made in the advertisement. In addition, the Committee may rescind approval of an advertisement if:

1.   It is discovered that the communication contains or implies false and otherwise misleading information; and/or
2.   A change of circumstances occurring subsequent to the Committee's evaluation of an advertisement or written solicitation raises a substantial possibility that the communication has become or was false and misleading as a result of the change in circumstances. A change in circumstances may include:
     A.)    A change in law, ethics opinion, disciplinary rule, or Interpretive Comment
     B.)    Change in interpretation of a rule by the Advertising Review Committee

In the event that approval of your advertisement is rescinded, you will be given written notification of the Committee's decision. If the advertisement is rescinded because it was discovered that it is false or misleading as described in item #1 above, your right to continue disseminating the communication is immediately revoked. If the advertisement is rescinded due to a change of circumstances as described in item #2, you will be given written notice and a period of time, not to exceed ninety 90 days from the notice of rescission, in which to discontinue use of the advertisement. Rescission of approval under item #2 will be applicable to all advertisements similarly impacted by the Committee's decision.

RESPONDENT'S NO. 00608

# STATE BAR OF TEXAS



## ADVERTISING REVIEW COMMITTEE

Should you decide to change the advertisement by deleting or adding information or text beyond an address or phone number change, the advertisement will be considered a new advertisement requiring an additional $100 filing fee.

If you have any questions regarding this notice or other questions regarding the application or your submission to the Committee, please call the staff at (800)566-4616, or email at adreview@texasbar.com.

**Please include your unique file number (referenced above) on all correspondence pertaining to this application.**

Thank you for your cooperation.

Sincerely,

Gene Major
Director, Advertising Review Department

enc.

www.texasbar.com
1414 Colorado St. / P.O. Box 12487 / Austin, Texas 78711-2487 / (800) 566-4616 / (512) 463-1463 / FAX (512) 427-4109

RESPONDENT'S NO. 00609

## ADVERTISEMENT / WRITTEN SOLICITATION
## REVIEW CHECKLIST – Revised Rules 09/2019

Lawyer Name: _____ Dunlap, Andrew W. _____

File/Case No.: _____ 80482 _____     Resubmittal? (Circle one)  YES ( NO )

### VIOLATIONS OF THE RULES:

( ) partner, shareholder or associate – 7.01(d)

( ) trade or fictitious name – 7.01(a),(e)

( ) false and misleading – 7.02(a)(1), 7.05(a)(3)

( ) 'no designation…', misleading – 7.02(a)(1), 7.05(a)(3)

( ) false and misleading – results – 7.02(a)(2)

( ) unjustified expectation – 7.02(a)(3)

( ) client testimonials – 7.02(a)(1),(a)(2)

( ) comparison of services – 7.02(a)(4)

( ) use of an actor – 7.02(a)(7)

( ) 'specialist' – 7.02(c)

( ) in each language used – 7.02(d)

( ) lawyer responsible – 7.04(b)(1)

( ) certifying organization not accredited – 7.04(b)(2)

( ) disclaimer not present – 7.04(q)

( ) same manner, equal prominence – 7.04(q)

( ) portrays a lawyer – 7.04(g)

( ) contingent fee – 7.04(h)

( ) city or town – 7.04(j)

( ) office other than principal – 7.04(j)(2)

( ) paid for by another lawyer – 7.04(k)

( ) likely to be referred – 7.04(l)

( ) lawyer referral service – 7.04(n)

( ) cooperative or venture – 7.04(o)

( ) ADVERTISEMENT – 7.05(b)(1),(2),(c)(1)

( ) nature of legal prob. revealed – 7.05(b)(4)

( ) info. prompting communication – 7.05(b)(5),(c)(3)

( ) no envelope / Packing – 7.07(a)(1)

( ) non-exempt, not filed – 7.07(d),(a),(b)

( ) requires substantiation – 7.07(f)

( ) mailed before 31 day –PenCd.38.12(d)(2)(A)

( ) television advertisements –
     Chapter 81.151, Government Code

( ) Other Violations or Comments:

_____

_____

_____

_____

_____

_____

( ) PRE-APPROVE   (L) APPROVE   ( ) REQUEST INFO   ( ) DISAPPROVE   ( ) REFER TO GC

REVIEWED BY: _____ LmP _____     DATE: __ 12/11/19 __

RESPONDENT'S NO. 00610

# APPLICATION FORM
## LAWYER ADVERTISING AND SOLICITATION COMMUNICATIONS

Effective July 29, 1995, Part VII of the Texas Disciplinary of Rules of Professional Conduct (TDRPC) require that a lawyer **file** with the Advertising Review Committee a copy of all public media advertisements and solicitation communications, except those exempt by Rule 7.07(e), contemporaneously with first dissemination or mailing. If desired, an advisory opinion (**pre-approval**) may be obtained by submitting a copy of the advertisement or writing at least 30 days prior to its first dissemination or mailing. (If pre-approval is requested for an advertisement that is to be placed in a telephone directory or similar publication, the ad must be submitted at least 30 days prior to the printing deadline of the publication rather than 30 days prior to dissemination date of the publication.) If a pre-approval is requested, a response will be mailed within 25 days of the date of receipt of a completed application packet.

**For Committee Use Only**
_____ Fee Enclosed
_____ Letter/Email
_____ Brochure/Newsletter
_____ Print Ad
_____ Script
_____ Recording
__X__ Website
_____ Billboard

Case No. _80482_
Date Rec'd. _10 / 21 / 19_

---

## INSTRUCTIONS FOR SUBMISSION OF A COMPLETE APPLICATION PACKET

1. Complete the entire Application. You can either complete each space on this form online and then print it after completion or print the form and complete it manually by printing your responses. This form may be reproduced.
2. Attach advertisement or solicitation communication.
   > For a solicitation letter, attach a sample of the letter and the envelope in which it will be mailed.
   > For a television or radio ad or internet video, attach a detailed production script (including ad title or number) and recording on an audio or video disk/USB flash drive.
   > If requesting pre-approval of a television or radio ad or internet video that has not yet been produced, a production script can be submitted without the recording on CD/DVD or USB flash drive.
   > For an ad or letter in any language other than English, attach a complete, accurate English translation along with the ad, script, or solicitation in the original language.
   > **For a website, include the domain name/URL address on the Application Form and two printed copies of the initial access page.**

3. Enclose check in the amount of **$100.00** payable to the State Bar of Texas for each ad or writing unless you complete the credit card section of this form.
4. **Mail original and one copy\* of each completed application packet to:**
   **Advertising Review Committee**
   **State Bar of Texas**
   **PO Box 12487**
   **Austin, TX 78711-2487**

   \*Note exception:  It is not necessary to include an additional copy of the recording on a second CD/DVD or USB flash drive for television or radio commercials or internet videos.

If multiple advertisements are being submitted, a separate application packet and fee must be submitted for each advertisement or writing. If submitting more than one packet at a time, television or radio advertisements or internet videos can be combined onto one disk/tape. Filing fees can also be combined onto one check.  Incomplete application packets may be returned and will not be docketed for review.
Addendum Form is located on the Mandatory Submission Steps page of the Committee's website, www.texasbar.com/adreview.
**For questions concerning filing requirements, call 1-800-566-4616 or email adreview@texasbar.com.**

---

Lawyer\*: Andrew W. Dunlap                    Bar Card #\*: 24078444

Firm: Josephson Dunlap, LLP

Firm's Principal Office Address\*: 11 Greenway Plaza, Suite 3050, Houston, Texas 77046

Phone\*: 713-352-1100          Fax:                    E-mail: 552.137; 552.1176

**Nature of advertisement or solicitation communication\*:**

A. ____ Letter **(Complete Addendum Form)**    E. ____ Brochure Newsletter **(Complete Addendum Form)**    I. ____ Billboard Ad
B. ____ Telephone Directory          F. _X_ Internet Ad          J. ____ Other
C. ____ Magazine/Newspaper          G. ____ Internet Video
D. ____ Television/Radio          H. ____ Website, URL: _____

This form (updated 06/01/2015) supersedes all prior forms.          (Form continued on back.....)
**\* Required Fields**

*(.....page 2 of 2, form continued from front)*
It is *extremely* important that you review the explanation of the difference between filing and pre-approval at top of this page before answering the following question:

**Does applicant seek pre-approval?\*** Yes (pre-approval) _____   No (filing) X
If you answered **No**, state the date the advertisement or solicitation was first disseminated or mailed. 10/16/19

**Is it likely that a case or matter resulting from the advertisement or solicitation will be referred to another lawyer or law firm?\*** Yes _____   No X

**Does the advertisement or solicitation disclose or allude to a specific fee, range of fees, or that the lawyer or law firm will render fees on a contingent fee basis?\*** Yes _____   No X

**Does the advertisement or solicitation disclose the existence of an office other than the firm's principal office?\*** Yes _____   No X
If you answered **Yes**, is the satellite office staffed by a lawyer at least three days per week? Yes_____   No_____

**Does the advertisement or solicitation designate or allude to one or more specific areas of practice?\*** Yes_____   No X
If you answered **Yes**, is the lawyer board certified in the areas of practice advertised?   Yes _____   No _____

**Has another lawyer or law firm paid any part of the advertisement or solicitation?\*** Yes _____   No X

If you answered **Yes**, identify the lawyer or law firm. _____

**In what geographic location(s) will the material be disseminated?\*** The Internet

**Identify any lawyers depicted in the submitted material.\*** Andrew W. Dunlap

**Identify any actual clients depicted in the submission along with such clients' addresses and phone numbers.\***
N/A

**Note:** The Advertising Review Department may request substantiation of any statement or representation made in the submitted advertisement or solicitation communication.

**Payment by credit card:**  Name of cardholder 552.136

Please Print

Number 552.136

ATTEST: I HAVE REVIEWED THE ADVERTISEMENT OR WRITING SUBMITTED AS REQUIRED BY RULE 7.04(e) OR 7.05(d), TDRPC. THE REPRESENTATIONS CONTAINED THEREIN AND THE INFORMATION IN THIS APPLICATION ARE TRUE AND CORRECT.

Signature of Applicant                                        Date 10/14/19

| FOR COMMITTEE USE ONLY | | | | |
|---|---|---|---|---|
| PRE-APPROVED | APPROVED | ADD'L INFORMATION REQUESTED | DISAPPROVED | REFERRED TO CHIEF DISC. COUNSEL |
| DATE _____ | DATE 12/11/19 | DATE _____ | DATE _____ | DATE _____ |
| BY _____ | BY _____ | BY _____ | BY _____ | BY _____ |

*This form (updated 06/01/2013) supersedes all prior forms.*

**\* Required Fields**

RESPONDENT'S NO. 00612





#80482

RESPONDENT'S NO. 00613

Did you work for Quality Integrated Services ("QIS")? Many who worked for them may not have been paid what they were rightly owed. Fill out the form to start the easy process and get back your wages today. This is an advertisement by Josephson Dunlap, LLP, of Houston, Texas. Contact Andrew W. Dunlap for questions.)

RESPONDENT'S NO. 00614



Find out if you're owed any unpaid wages today.

Speak to an attorney today for a free confidential consultation.
Advertisement by Josephson Dunlap LLP of Houston, Texas.
Contact Andrew Dunlap for questions.

Submit

# EXHIBIT H



# EXHIBIT I

Get Your Wages BACK



## Three inspectors offered $140,000 to settle unpaid overtime lawsuit.

Cypress Energy Management AKA Tulsa Inspection Resources agreed in a Court filing to have a $140,000 judgment entered against it for its failure to pay overtime to 3 inspectors. The inspectors alleged that Cypress/Tulsa improperly paid them a day rate without overtime pay. The inspectors alleged that they worked over 40 hours a week without overtime pay. Cypress/Tulsa did not admit liability, but still offered the 3 inspectors $140,000, as well as attorneys' fees.

If you, or someone you know, worked as an inspector and were paid a day rate, you may be entitled to unpaid overtime, back wages, double damages, and attorney fees. Contact the attorney's at Josephson Dunlap to learn whether you have a claim for unpaid overtime.



This is an advertisement by Josephson Dunlap, LLP of Houston, Texas. Contact Andrew W. Dunlap for questions.

Get Your Safe, Free and Confidential Consultation Today

🔒 **Safe** and **Private**

First Name REQUIRED

Last Name REQUIRED

Email Address

Phone Number REQUIRED

Zip Code REQUIRED

SUBMIT

**Read The Settlement For Yourself**

16

# EXHIBIT J

**From:** Information <info@mybackwages.com>
**Date:** November 11, 2019 at 2:17:40 PM CST
**To:** "hdutro75@gmail.com" <hdutro75@gmail.com>
**Subject: Cypress Energy Partners, AKA Tulsa Inspection Resources, Pays 140K for Unpaid Overtime Lawsuit**

Josephson Dunlap brought a lawsuit against Cypress Energy Partners, also known as Tulsa Inspection Resources, on behalf of Inspectors who were paid a day rate for all hours worked. To avoid paying all of the class members unpaid overtime claims, Cypress offered to have a judgment entered against it for **$140,000.00** to pay *our three clients* for the unpaid back wages owed to them. See the attached Offer of Judgement against Cypress. Cypress had improperly paid these workers a day rate without overtime.

If you or your friends have worked for Cypress or Tulsa in the past three years and were paid a day rate, please contact us immediately. These are valuable claims for unpaid overtime and you may be eligible to recover back wages. Time is of the essence. Please call 888-992-2990 or email info@mybackwages.com for more information.

All communications will be kept confidential. Call today!



**ANDREW DUNLAP// JOSEPHSON DUNLAP**

PHONE #713-352-1100    FAX # 713-352-3300
ADDRESS11 GREENWAY PLAZA, SUITE 3050, HOUSTON, TX 77046
WEBSITEWWW.MYBACKWAGES.COM


18

# EXHIBIT 2

## Declaration of John Barrick Bollman

1.        My name is John Barrick Bollman. I am an associate attorney with McDermott Will & Emery, LLP. I am over 18 years of age and competent in all respects to make this Declaration pursuant to 28 U.S.C. §1746. I have personal knowledge of the facts in this declaration; can testify to their accuracy; and make this statement voluntarily.

2.        On July 27, 2020, I went to Josephson Dunlap's LinkedIn.com page. Once there, I clicked on the "ads" button, which shows Josephson Dunlap's advertisements. Scrolling down, I came across the below "Offer of Judgment" advertisement. Attached as Exhibit A is a true and correct copy of a screenshot of that advertisement.

3.        The lower left corner of the "Offer of Judgment" advertisement also directs viewers to a website: "ouramericanjobs.com" and contains a heading **"3 Inspectors Offered 140k to Settle Overtime Lawsuit."** On July 27, 2020, I typed "ouramericanjobs.com" into Google Search. Exhibit B is a true and correct copy of a screenshot of the results from that search.

4.        On July 27, 2020, I clicked on the first result of the search reflected in Exhibit I entitled **"Find Out What You're Owed,"** which brought me to https://www.ouramericanjobs.com/. Exhibit C is a true and correct copy of a screenshot of that URL at July 27, 2020.

5.        On July 27, 2020, I clicked on the result reflected in Exhibit J entitled **"Three inspectors offered $140000 to settle unpaid overtime,"** which brought me to: https://www.ouramericanjobs.com/12301b2. Exhibit D is a true and correct copy of a screenshot of that URL on July 27, 2020.

6.        I declare under the penalty of perjury, that the foregoing is true and correct.

2

Executed on this <u>28th</u> day of July, 2020

J. Barrick Bollman

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C

Get Your Wages BACK

© 2019 — © 2019 Josephson Dunlap LLP

Privacy Policy

# EXHIBIT D

Get Your Wages BACK



**Three inspectors offered $140,000 to settle unpaid overtime lawsuit.**

Cypress Energy Management AKA Tulsa Inspection Resources agreed in a Court filing to have a $140,000 judgment entered against it for its failure to pay overtime to 3 inspectors. The inspectors alleged that Cypress/Tulsa improperly paid them a day rate without overtime pay. The inspectors alleged that they worked over 40 hours a week without overtime pay. Cypress/Tulsa did not admit liability, but still offered the 3 inspectors $140,000, as well as attorneys' fees.

If you, or someone you know, worked as an inspector and were paid a day rate, you may be entitled to unpaid overtime, back wages, double damages, and attorney fees. Contact the attorney's at Josephson Dunlap to learn whether you have a claim for unpaid overtime.



*This is an advertisement by Josephson Dunlap, LLP of Houston, Texas. Contact Andrew W. Dunlap for questions.*

Get Your Safe, Free and Confidential Consultation Today

🔒 **Safe** and **Private**

First Name REQUIRED

Last Name REQUIRED

Email Address

Phone Number REQUIRED

Zip Code REQUIRED

SUBMIT

**Read The Settlement For Yourself**

# EXHIBIT 3

**<u>Declaration Of Chris Parker</u>**

My name is Chris Parker.  I currently work as a Pipeline Inspector for Cleveland Integrity

Services, Inc. ("CIS").  I have personal knowledge of the facts set forth herein.

1.      On Wednesday March 18 at 1:11 p.m., I received a call on my cell phone from the

telephone number 1 (713) 659-0976.  When I answered, a woman, whose name I did not hear,

advised me that she was either representing or with CIS, and that she wanted to discuss a lawsuit

with me.  She wanted to make sure that I was receiving all of my overtime payments.

2.      The caller then stated that she wanted to make sure that she had all of my contact

information correct, and then stated my address, email address and cell phone number, which were

all correct.

3.      Based upon the caller's representation that she represented or was with CIS and

that she knew all of my contact information, I assumed that she worked for CIS.  So, I confirmed

that my contact information was accurate.

4.      The caller then said she was going to send me a document, and stated that if mind,

could I review and sign the document.  Further, she stated that if I had questions, she could put me

in touch with a representative.

5.      The call lasted only a minute or two.  Then, at 1:15 p.m., I received an email from

conversions@alertcommuncations.com, asking me to sign an agreement with Josephson Dunlap.

The email also had a hyperlink to e-sign the agreement.

From: conversions@alertcommunications.com
Date: March 18, 2020 at 1:15:06 PM CDT
To: parkerchris01@yahoo.com
Subject: ***Please Review and Sign*** Josephson Dunlap has sent an e-Sign Agreement
Reply-To: conversions@alertcommunications.com

Dear Christopher O,

Josephson Dunlap has prepared an agreement for your review and signature.

Please sign the agreement in order to proceed with your matter.

Please click here to sign/review the agreement: Sign Here

Thanks very much!

P.S. In case you need any assistance, please feel free to call us at (713) 659-0976

(See Exhibit 1, email from Conversions@alertcommunications.com).

6.      When I click the link I am prompted to sign a consent to sue form that states:

## SETTLEMENT CONSENT FORM – QUALITY INTEGRATED SERVICES

1.      I hereby consent to make a claim against Quality Integrated Services and to pursue my claims of unpaid overtime during the time that I worked with the company.

2.      I retain the law firms and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.      I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against Quality Integrated Services, if necessary.

4.      I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

(See Exhibit 2, Screen Shots of the Link).

7.      Quality Integrated Services ("QIS"), listed in the Consent Form, is actually my prior employer.  To my recollection, the caller did not mention QIS.

8.      Prior to receiving the call from this person, I had not sought out the services of Josephson Dunlap or Bruckner Burch.  After receiving the email from this account, I responded by advising the sender never to contact me again.

9.      I declare under the penalty of perjury, that the foregoing is true and correct.

Executed on this __ day of May, 2020

_____.

Chris Parker

# EXHIBIT 1: Email from Conversions@alertcommunications.com

**From:** conversions@alertcommunications.com
**Date:** March 18, 2020 at 1:15:06 PM CDT
**To:** parkerchris01@yahoo.com
**Subject: \*\*\*Please Review and Sign\*\*\* Josephson Dunlap has sent an e-Sign Agreement**
**Reply-To:** conversions@alertcommunications.com

Dear Christopher O,

Josephson Dunlap has prepared an agreement for your review and signature.

Please sign the agreement in order to proceed with your matter.

Please click here to sign/review the agreement: Sign Here

Thanks very much!

P.S. In case you need any assistance, please feel free to call us at (713) 659-0976

**EXHIBIT 2: Screen Shots of the Link**



# EXHIBIT 4

**Declaration Of Joel Vestal**

My name is Joel Vestal.  I currently work as an Inspector for Natural Energy Field Services, ("NEFS").  I used to work as an Inspector for Applied Consultants, Inc. ("Applied Consultants"). I have personal knowledge of the facts set forth herein.

1.      On March 25, 2020, at 9:35pm Central Time I received an email with the subject "Confidential QIS Unpaid Overtime Survey."  That email was from Josephson Dunlap LLP.  It asked me to answer a short survey to help the lawyers calculate the damages I am owed.  It also asked for information about my work history for the past three years to help the lawyers determine if I am owed additional unpaid overtime.  Exhibit A is a true and correct screenshot of the email I received.

From: Information <info@mybackwages.com>
Date: March 25, 2020 at 9:25:30 PM CDT
To: "joelvestal@yahoo.com" <joelvestal@yahoo.com>
Subject: Confidential QIS Unpaid Overtime Survey

Thank you for your interest in the QIS unpaid overtime settlement. To better assist our lawyers and case managers to process your claim, we need you to complete a short survey. You can access the survey by clicking on the link below. Your answers to the survey will help us to verify the time periods you worked for QIS, the states you worked in and the operators you worked with. This will allow us to more precisely calculate the damages you are owed.

The survey also seeks information about your work history during the past three years. This will help us determine whether you are owed additional unpaid overtime.

**QIS UNPAID OVERTIME DAMAGES SURVEY**

We appreciate your cooperation and look forward to working with you. If you have questions please call us or text at 713-352-1100 or email info@mybackwages.com. Our team is available to assist you 24/7.

Josephson Dunlap, LLP
Lawyers for the Workers
www.mybackwages.com

(Exhibit A, Email from Josephson Dunlap.)

2.      I had never expressed interest in or heard of the QIS Settlement that the March 25, 2020 email referred to.  I did not fill out the survey requested.

3.      Shortly after receiving the email, I was called by someone who said they were a lawyer from Houston and wanted to talk about the QIS Settlement.  The caller told me that there would be a settlement that would be paying out in a couple weeks.   The caller also told asked about me about the work I did for Applied Consultants and another company I had worked for.  As I currently recall, the gist of the conversation was that I was being wrongly paid on a day rate and could claim unpaid overtime.  I told the caller that I was happy with how I was paid.  I did not explicitly tell the caller not to call me again.

4.      From the end of March 2019 until the end of April 2019, I received about ten phone calls from individuals representing they were with the law firm of Josephson Dunlap.  Each time, the callers wanted to get information about the work I've done for various employers.  Each time, I told the callers that I did not want to get involved in a lawsuit with Applied Consultants or about a day rate.  As the calls continued, I began telling the caller that I did not want to be contacted any more but still received calls after doing so.

5.      I declare under the penalty of perjury that the foregoing is true and correct.


Executed on _____.
              7/30/2020 | 6:43:03 AM CDT


DocuSigned by:

*Joel Vestal*
_____
5479876C5BB2449...

Joel Vestal

DocuSign Envelope ID: 0A259801-32A9-4435-B5AA-446AC30119C0

# EXHIBIT A:  Email from Josephson Dunlap

**From:** Information <info@mybackwages.com>
**Date:** March 25, 2020 at 9:25:30 PM CDT
**To:** "joelvestal@yahoo.com" <joelvestal@yahoo.com>
**Subject: Confidential QIS Unpaid Overtime Survey**

Thank you for your interest in the QIS unpaid overtime settlement. To better assist our lawyers and case managers to process your claim, we need you to complete a short survey. You can access the survey by clicking on the link below. Your answers to the survey will help us to verify the time periods you worked for QIS, the states you worked in and the operators you worked with. This will allow us to more precisely calculate the damages you are owed.

The survey also seeks information about your work history during the past three years. This will help us determine whether you are owed additional unpaid overtime.
**QIS UNPAID OVERTIME DAMAGES SURVEY**

We appreciate your cooperation and look forward to working with you. If you have questions please call us or text at 713-352-1100 or email info@mybackwages.com. Our team is available to assist you 24/7.

Josephson Dunlap, LLP
Lawyers for the Workers
www.mybackwages.com

# EXHIBIT 5

## Declaration Of Harold Dutro

My name is Harold Dutro.  I used to work as an Inspector for Cleveland Integrity Services, Inc. ("CIS").  I have personal knowledge of the facts set forth herein.

1.      At some point two to three years ago, I received a letter asking me to sign up for a settlement with my former employer BJ Inspections, Inc. ("BJ Inspections").   I did so, but do not recall receiving any money.

2.      On November 11, 2019 at 2:17pm Central Time, I received an email with the subject "Cypress Energy Partners, AKA Tulsa Inspection Resources, Pays 140K for Unpaid Overtime Lawsuit."  That email was from Andrew Dunlap from the law firm Josephson Dunlap. It asked me to contact them immediately if I or my friends had worked for Cypress in past three years.  I worked for Cypress earlier in my career but I did not contact the law firm.  Attached as Exhibit A is a true and correct copy of a screenshot of the November 11, 2019 email that I received.

**From:** Information <info@mybackwages.com>
**Date:** November 11, 2019 at 2:17:40 PM CST
**To:** "hdutro75@gmail.com" <hdutro75@gmail.com>
**Subject: Cypress Energy Partners, AKA Tulsa Inspection Resources, Pays 140K for Unpaid Overtime Lawsuit**

Josephson Dunlap brought a lawsuit against Cypress Energy Partners, also known as Tulsa Inspection Resources, on behalf of Inspectors who were paid a day rate for all hours worked. To avoid paying all of the class members unpaid overtime claims, Cypress offered to have a judgment entered against it for **$140,000.00** to pay *our three clients* for the unpaid back wages owed to them. See the attached Offer of Judgement against Cypress. Cypress had improperly paid these workers a day rate without overtime.

If you or your friends have worked for Cypress or Tulsa in the past three years and were paid a day rate, please contact us immediately. These are valuable claims for unpaid overtime and you may be eligible to recover back wages. Time is of the essence. Please call 888-992-2990 or email info@mybackwages.com for more information.

All communications will be kept confidential. Call today!



**ANDREW DUNLAP// JOSEPHSON DUNLAP**
PHONE #713-352-1100    FAX # 713-352-3300
ADDRESS 11 GREENWAY PLAZA, SUITE 3050, HOUSTON, TX 77046
WEBSITE WWW.MYBACKWAGES.COM

DocuSign Envelope ID: 53536C20-68D5-446B-B791-460B35DB7E1E

(*See* Exhibit A, November 11, 2019 email from Andrew Dunlap.)

3.      Attached to the November 11, 2019 email identified in Exhibit A was a document entitled "Cypress and Tulsa Inspection's 140K Offer of Judgment."  Exhibit B is a true and correct copy of that attachment.

4.      Between November 11, 2019 and late March or early April 2020, I received four phone calls from someone identifying themselves as a representative of the law firm Josephson Dunlap.

5.      In the first phone call, I was asked for information about the work I did for my previous and current employers, and how I was paid.   I gave them the dates that I worked for various companies and asked if there was a lawsuit or a settlement, but did not get a straight answer.  I recall the caller mentioning that the time period I worked for QIS was outside the time frame that I could be involved in a lawsuit or get a settlement.  During the call, I was told that I their client.  I told the caller that I did not hire them, and the caller responded that I did through the BJ Inspection Settlement.  This confused me.  I do not believe joining a settlement hires the lawyer for anything else but that specific settlement.  I told the caller that I did not want anything to do with them or have my name associated with any lawsuits.

6.      I received two more calls from representatives of Josephson Dunlap before March 24, 2020.  Each time I was again asked about the work I did for previous and current employers.  Each time, I told the caller I did not want anything to do with them or have my name associated with any lawsuits.

7.      On March 24, 2020 at 3:45pm CT, I received an email received an email with the subject "QIS Settlement Confirmation" and addressing me as "QIS Settlement Member."  That email was from Michael Josephson from the law firm Josephson Dunlap.  The email told me that

I received the email to "confirm that we have received your unpaid overtime consent form" and that there was an attachment with information about the settlement.  It also told me that I would be receiving an email with questions about my work history over the past three years to "help streamline the verification process and improve our quality control."  Attached as Exhibit C is a true and correct copy of a screenshot of the March 24, 2020 email that I received.

**From:** Information <info@mybackwages.com>
**Date:** March 24, 2020 at 3:45:57 PM CDT
**To:** "hdutro75@gmail.com" <hdutro75@gmail.com>
**Subject: QIS Settlement Confirmation**

Dear QIS Settlement Member:

We are sending this email to confirm that we have received your unpaid overtime consent form.  We have also attached a short FAQ which provides general information about the settlement.

Over the next week, our team will be contacting you to discuss your work history with QIS.  The information you provide will help us to verify the amount you are ultimately due.

We will also be sending you with a short survey with questions about your work history.  The email with the survey link will make it clear that it is a survey pertaining to QIS and that it is from our office.  Please take several minutes to respond to the survey.  Your answers will help us to complete your work history over the past three years.  This will also help to streamline the verification process and improve our quality control.

As the settlement progresses through the approval and notification process, our firm will stay in touch through emails and text messages.  We will do our best to provide you with regular updates about the settlement, timing and when payments will be mailed out.  We are also available to respond to phone calls and emails regarding QIS or any other matter.  Our email is info@mybackwages.com and our phone number is 888-992-2990.  You can also text us at 713-352-1100.

We look forward to working with you to resolve your QIS overtime claims.

Michael Josephson
Josephson Dunlap, LLP
www.mybackwages.com
Lawyers for the Workers®

(*See* Exhibit C, March 24, 2020 email from Michael Josephson.)

8.     Attached to the March 24, 2020 email identified in Exhibit C was a document entitled "QIS Settlement Facts."  Exhibit D is a true and correct copy of that attachment.

9.     I do not remember receiving anything about a QIS Settlement prior to that March 24, 2020 email or signing anything about a QIS Settlement.

10.     Shortly after receiving the March 24, 2020, I received the last of the four calls from Josephson Dunlap.  I had previously talked to a family member who is a lawyer about these phone calls and emails.  That family member said I could get them to stop by telling the caller I would

sue for harassment.  On this call, I told the Josephson Dunlap law firm representative that, if I was called again, I would sue for harassment.

11.     I have not received a communication since that fourth phone call.

12.     I declare under the penalty of perjury that the foregoing is true and correct.

Executed on __7/30/2020 | 11:07:02 AM CDT__.

Harold Dutro
Harold Dutro

# EXHIBIT A:  November 11, 2019 Email from Andrew Dunlap

**From:** Information <info@mybackwages.com>
**Date:** November 11, 2019 at 2:17:40 PM CST
**To:** "hdutro75@gmail.com" <hdutro75@gmail.com>
**Subject: Cypress Energy Partners, AKA Tulsa Inspection Resources, Pays 140K for Unpaid Overtime Lawsuit**

Josephson Dunlap brought a lawsuit against Cypress Energy Partners, also known as Tulsa Inspection Resources, on behalf of Inspectors who were paid a day rate for all hours worked. To avoid paying all of the class members unpaid overtime claims, Cypress offered to have a judgment entered against it for **$140,000.00** to pay *our three clients* for the unpaid back wages owed to them. See the attached Offer of Judgement against Cypress. Cypress had improperly paid these workers a day rate without overtime.

If you or your friends have worked for Cypress or Tulsa in the past three years and were paid a day rate, please contact us immediately. These are valuable claims for unpaid overtime and you may be eligible to recover back wages. Time is of the essence. Please call 888-992-2990 or email info@mybackwages.com for more information.

All communications will be kept confidential. Call today!



**ANDREW DUNLAP// JOSEPHSON DUNLAP**

PHONE #713-352-1100    FAX #  713-352-3300
ADDRESS11 GREENWAY PLAZA, SUITE 3050, HOUSTON, TX 77046
WEBSITEWWW.MYBACKWAGES.COM



**Exhibit B: "Cypress and Tulsa Inspection's 140K Offer of Judgment" Attached to the November 11, 2019 Email**

## IN AND FOR THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

JAMES FITHIAN, individually and )
on behalf of others similarly situated, )
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　)
v. )
　　　　　　　　　　　　　　　　　　)
CYPRESS ENERGY MANAGEMENT TIR, LLC, )
　　　　　　　　　　　　　　　　　　)
　　　　　Defendant. )

**DISTRICT COURT**
**F I L E D**

SEP - 6 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

Case No. CJ-2017-4522
Honorable Caroline Wall

## DEFENDANT'S OFFER OF JUDGMENT

Pursuant to Okla. Stat. Ann. tit. 12, § 1101.1, Cypress Energy Management—TIR, LLC, offers judgment to be taken against it  in this case by Plaintiffs James Fithian, David Kole, and Robert Plymate on the following terms:

- This offer of judgment is contingent on all three plaintiffs accepting.

- This offer of judgment is without admission of liability.

- The amounts in this offer of judgment are exclusive of any attorneys' fees and costs available under the Fair Labor Standards Act ("FLSA"). Upon acceptance of this offer of judgment, any issue of attorneys' fees and costs may be decided by the Court.

- The offer of judgment is in the amount of one hundred, forty thousand dollars ($140,000.00) in aggregate. That total is based on individualized calculations which exceed the claimed overtime and liquidated damages under the FLSA for each of those three plaintiffs:

for Fithian, Sixty Thousand Dollars ($60,000); for Kole, Fifty Thousand Dollars ($50,000); and for Plymate, Thirty Thousand Dollars ($30,000).

If these three plaintiffs do not accept this Offer of Judgment within ten (10) days, it is withdrawn and shall not be mentioned at trial. If this Offer of Judgment is not accepted and the judgments obtained by Messrs. Fithian, Kole and Plymate on their FLSA claims is not more favorable than this one hundred, forty thousand dollar offer, those three plaintiffs must pay all costs and expenses, including attorney's fees, incurred by Defendant Cypress Energy Management—TIR, LLC from the date of service of this offer on their counsel.

RESPECTFULLY SUBMITTED:

Paul DeMuro, OBA # 17605
FREDERIC DORWART, LAWYERS PLLC
124 East Fourth Street
Tulsa, Oklahoma 74103
(918) 583-9922 - Telephone
pdemuro@fdlaw.com

Keith Wilkes, OBA #16750
HALL ESTILL
320 S. Boston Ave., Suite 200
Tulsa, OK 74103
kwilkes@hallestill.com

Rachel B. Cowen
Brian Mead
(admitted pro hac vice)
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606

*Counsel for Defendant,*
*Cypress Energy Management TIR, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of September, 2019, a copy of the foregoing document was served to all counsel of record via U.S. Mail, postage pre-paid, addressed to:

| | |
|---|---|
| John Neuman<br>Beatriz-Sosa Morris<br>SOSA-MORRIS NEUMAN<br>5612 Chaucer Drive<br>Houston, TX 77005<br>jneuman@smnlawfirm.com<br>bsosamorris@smnlawfirm.com | Andrew W. Dunlap<br>William R. Liles<br>JOSEPHSON DUNLAP LAW FIRM<br>11 Greenway Plaza, Suite 3050<br>Houston, TX 77046<br>adunlap@mybackwages.com<br>wliles@mybackwages.com |
| Hugh M. Robert<br>SHERWOOD, McCORMICK &<br>ROBERT<br>Bank of America Center<br>15 W. 6th St., Ste. 2112<br>Tulsa, OK 74119<br>hugh@sm-oklaw.com | Richard J. Burch<br>BRUCKNER BURCH, P.L.L.C.<br>8 Greenway Plaza, Suite 1500<br>Houston, TX 77046<br>rburch@brucknerburch.com |

Paul DeMuro

3

# EXHIBIT C: March 24, 2020 Email from Michael Josephson

**From:** Information <info@mybackwages.com>
**Date:** March 24, 2020 at 3:45:57 PM CDT
**To:** "hdutro75@gmail.com" <hdutro75@gmail.com>
**Subject: QIS Settlement Confirmation**

Dear QIS Settlement Member:

We are sending this email to confirm that we have received your unpaid overtime consent form. We have also attached a short FAQ which provides general information about the settlement.

Over the next week, our team will be contacting you to discuss your work history with QIS. The information you provide will help us to verify the amount you are ultimately due.

**We will also be sending you with a short survey with questions about your work history.** The email with the survey link will make it clear that it is a survey pertaining to QIS and that it is from our office. Please take several minutes to respond to the survey. Your answers will help us to complete your work history over the past three years. This will also help to streamline the verification process and improve our quality control.

As the settlement progresses through the approval and notification process, our firm will stay in touch through emails and text messages. We will do our best to provide you with regular updates about the settlement, timing and when payments will be mailed out. We are also available to respond to phone calls and emails regarding QIS or any other matter. Our email is info@mybackwages.com and our phone number is 888-992-2990. You can also text us at 713-352-1100.

We look forward to working with you to resolve your QIS overtime claims.

Michael Josephson
Josephson Dunlap, LLP
www.mybackwages.com
Lawyers for the Workers®

DocuSign Envelope ID: 53536C20-68D5-4461-B791-490B25DB7E1E

# Exhibit D: "QIS Settlement Facts" Attached to the March 24, 2020 Email

# QIS SETTLEMENT FACTS—ATTORNEY COMMUNICATION

Thank you for participating in the QIS Unpaid Overtime Settlement.  We have spoken with over 2,000 current and former QIS inspectors.  Based on these conversations, we wanted to provide a short summary of the frequently asked questions.  If you would like more information, please call 888-992-2990, text 713-352-1100 or email info@mybackwages.com.  All communications with our law firm are strictly confidential.

## Why was QIS sued and what did they do wrong?

QIS was sued for failing to pay its inspectors (Welding, NACE, Coating, Utility, Safety, and Chief) overtime as required by law – the Fair Labor Standards Act and state laws.  Instead of paying overtime, QIS paid everyone a **day rate** (or straight time) and **no overtime,** regardless of the hours worked each week. We say this pay practice violates federal and state overtime requirements because the law requires overtime when you work than 40 hours a week regardless of whether you agreed to be paid a day rate or straight time.  In other words, NO company has the right to force you to contract around the overtime laws.

## Who is covered by the settlement?

QIS employed over 3,000 inspectors within the past 3 years. Those workers are intended to be covered by the settlement. If you worked for QIS and were paid a day rate or straight time for overtime, you are likely part of the settlement.

## How long until the inspectors get paid?

QIS is required to put the entire settlement amount into an escrow account in March of 2020. The process to get the settlement approved by the Courts has already begun. It is anticipated that all settlement class members will receive checks in the mail by the end of the year. Because checks are being mailed, it is important to communicate with our firm, Josephson Dunlap, and keep all of your contact information up to date.

## What does it cost to bring an unpaid overtime claim?

All consultations are 100% free.  There are **no up front** costs to you.  If you recover, we recover.  We advance all costs, our time and effort to help our clients recover unpaid overtime.  The only way we make any money is if you make a recovery.  If there isn't a recovery, **you will not be liable for our fees or expenses**.

## How much time is there to make a claim for overtime?

You typically have up to **3 years to make a claim,** but the longer you wait, the less overtime you may recover. For example, if you made a claim on 3/23/20, you would be able to go back to 3/23/17.  Time is of the essence because every week you wait is a week of wages you can't recover.  Don't forfeit your rights.  Take action now.

## Do other inspection companies and operators owe me overtime?

If you worked as an inspector (any type of inspector) and were paid a day rate or straight time for overtime at any time in the past **3 years**, you have a claim for unpaid overtime.  Other companies who have paid or will pay unpaid overtime to inspectors include:

◦ **Cleveland Integrity** ◦ **Tulsa/Cypress** ◦ **Onshore** ◦**Applied** ◦ **Enbridge** ◦**Acuren** ◦ **Intertek** ◦ **Liberty** ◦ **SMS Frontier (FIS)** ◦ **Kinder Morgan** ◦ **Enterprise** ◦ **TransCanada** ◦ **ONE Ok** ◦ **Energy Transfer** ◦ **Avery Pipeline** ◦ **Kestrel** ◦ **Plains** ◦ **Williams** ◦ TC Energy ◦**EQT** ◦ **Antero** ◦ **Phillips 66** ◦ **Conoco** ◦ **DCP Midstream** ◦

If you worked for these companies, you must act quickly to preserve your valuable claim. Companies that aren't paying overtime as required by law are breaking the rules.

\*\*Additional Questions—Call 888-992-2990, Text 713-352-1100 or Email info@mybackwages.com\*\*

# EXHIBIT 6

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80829-Civ-Ryskamp/Vitunac

DONALD HAMM, ELLIOT COOK,
RONALD SIMMS, MARK WAGNER,
MARTHA HARRIS, and TIMOTHY
BRIDGES, individually and on behalf
of persons similarly situated,

Plaintiffs,

vs.

TBC CORPORATION, a Delaware
corporation, and TIRE KINGDOM, INC.,
a Florida corporation,

Defendants.
_____/



FILED by_____D.C.

DEC 3 0 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### REPORT AND RECOMMENDATION

This Cause is before the Court on Order of Reference (DE 114), filed July 21, 2008,

from United States District Judge Kenneth L. Ryskamp "for a hearing . . . and decision on

defendants' motion for sanctions **[DE 58]**." Before the Court is Defendants' Motion for

Sanctions Against the Shavitz Law Group for Directly Soliciting Putative Class Members

(DE 58), filed December 28, 2007. Plaintiff filed a Response (DE 66) on January 17, 2008.

Defendants filed a Reply (DE 71) on January 28, 2008. The Court held an evidentiary

hearing on July 31, 2008. The matter is ripe for review.

### BACKGROUND

Plaintiffs, a group of workers employed by Defendant corporations, brought this

case as a proposed collective action to recover unpaid overtime compensation from

1

Defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (DE 5).

The action is in its earliest stages, and has not yet been conditionally certified. Plaintiffs

filed a Motion to Authorize Notice to Potential Class Members (DE 46) on November 28,

2007, which states that in addition to the six named Plaintiffs, twenty-four individuals had

opted in to the collective action as of that date.

On December 28, 2007, Defendants filed their Motion seeking court-imposed

sanctions against Plaintiffs' counsel, the Shavitz Law Group (SLG), for direct solicitation

of putative class members in violation of the Rules Regulating the Florida Bar (DE 58).

After the parties fully briefed the issue, the Court heard oral argument on February 8, 2008

(DE 91). On March 11, 2008, this Court stayed the litigation so that the Florida Bar could

investigate Defendants' claims (DE 109). On July 9, 2008, the Florida Bar informed the

Court that it declined to review the charges or make any determination on the merits based

on Rule 15.55 of the Rules Regulating the Florida Bar, which states that the Bar should

stay any investigation if a court has concurrent jurisdiction over the matter (DE 113).

Based upon this information, the Court denied Plaintiffs' Motion to Lift Stay and Reopen

Case (DE 110) in order for the Court to first issue a ruling on Defendants' Motion for

Sanctions. The Court indicated that "[u]pon resolution of that motion, the Court will lift the

stay and continue the litigation" (DE 113).

## PARTIES' CONTENTIONS

### Defendant's Written Motion for Sanctions

Defendants allege that SLG violated Southern District Local Rule 11.1.C and Florida

Rule of Professional Conduct 4-7.4(a) by soliciting at least four employees of Defendant

2

Tire Kingdom[1] (TK). Defendants claim that on the morning of Saturday, December 15, 2007, an SLG employee called the personal cellular phones of three current TK employees and one former TK employee living in Missouri. One employee, Shane Cook, stated that the woman caller "identified herself as working for an attorney for some plaintiffs who were suing [TK]" and that they "had gotten [his] name and number from a former employee." According to Cook, after she explained that the suit was for unpaid overtime owed to employees who worked during their lunch breaks, she asked if he "would like to join the lawsuit and 'recover the money that [TK] owes [him].'" Cook's response was to tell her he "thought the allegations were 'bull****,' as...no one is ever forced to work through their breaks."

A second employee, Nick Kilgore, said the woman caller "identified herself as working for a Florida attorney's office handling a lawsuit that a number of [TK] employees had filed." According to Kilgore, after she explained that the suit "concerned claims that employees were working through their lunch breaks and not being paid for them," she asked if he "would be interested in joining the lawsuit in order to 'recover [his] lost pay.'" Kilgore told the caller he "was not interested in suing anyone, particularly since [he] did not believe the claims against [TK] were true." Defendants claim that these two employees, together with a third current employee, Victor Harris, and a fourth former employee, Matt Bidner,[2] reported the phone calls to TK Store Manager Chris Blum the next day. Blum

---

[1] The record and hearing transcript also contains references to National Tire & Battery, or "NTB", also a division of TBC Corporation.

[2] Defendants did not submit declarations of Victor Harris or Matt Bitner. Store Manager Chris Blum's declaration indicated that these two employees reported receiving phone calls similar to those described by Cook and Kilgore.

3

reported the calls to his Area Director, who then contacted Defendants' counsel.

Defendants contend that the sole purpose of the calls was to directly solicit Cook and Kilgore to join as members of the putative class in violation of Rule 4-7.4. Defendants point to Plaintiffs' proposed notice, filed as part of their Motion to Authorize Notice, as evidence that SLG's solicitation was for pecuniary gain in that the notice does not inform potential class members that they may contact counsel of their own choice or choose to opt-out and pursue their own action. Instead, the notice indicates that a putative class member must contact and agree to retain SLG in order to join the litigation. Defendants also argue that SLG's placement of the calls ten days before Christmas, a time when people focus on holiday debt, evidences an intent to solicit individuals at a time when they have "'impaired capacity for reason, judgment, and protective self-interest,' which Rule 4-7.4(a) was designed to protect against." Defendants argue that there is no way to know if SLG has solicited other putative class members and whether any of the named Plaintiffs or opt-in Plaintiffs were joined in the suit as the result of improper solicitations by SLG.

By way of relief, Defendants ask this Court to (1) issue an injunction barring SLG from further contact with any potential class member to enjoin SLG from soliciting, entering an agreement for, charging, or collecting a fee for employment from any potential class member from this date forward, (2) compel SLG to produce for in camera review all documents relating to any communications between SLG and all current Plaintiffs, opt-in Plaintiffs, or prospective class member, (3) prohibit SLG from contacting putative class members in any manner other than Court approved written notice, (4) require SLG to provide Defendants with name and contact information for any putative class members they contacted and permit Defendants to depose them regarding solely these

4

communications separate and apart from the ten-deposition limit, and (5) require SLG to reimburse Defendants for fees and costs for bringing the instant Motion.

## Plaintiffs' Response

Plaintiffs agree that SLG assigned administrative assistant Tayara Oliveira to call Cook, Kilgore, and Harris the morning of December 15, 2007, but disagree with Defendants' version of her communications with them. According to Plaintiffs, Oliveira contacted these employees as a follow up on potential witnesses identified by an existing client "to corroborate [that client's] claim for overtime violations" and "as part of investigating the client's claim." To support this claim, Plaintiffs rely on two pages of a fourteen-page fax filed under seal. The fax, dated December 13, 2007, is addressed to Tayara Oliveira from Matthew C. Bitner with a reference line of "Nation Tire & Battery." The second page states "Other NTB employees" with a list of six names, including Kilgore, Cook, and Harris, and their phone numbers. The other three names on the list are redacted.

Plaintiffs deny anyone at SLG's office asking Cook or Kilgore if they wanted to recover money owed to them. According to Oliveira's declaration, during her call to Cook, she "explained that we are a law firm representing workers in NTB stores who were not paid overtime...[stated] that one client had provided [Cook's] name as a possible witness to overtime deductions...[and] asked him if he had any knowledge of that problem." She stated that Cook's "immediate response was to say that it never happened and that people were making it up" before launching "into a stream of profanity" after which she ended the call. She stated that Cook "immediately called back...the call was answered by my co-worker Adriana Castrillon-McNish" and that he "again started with a stream of profanity,

5

and [McNish] ended the call and alerted [Oliveira] to the situation." According to Oliveira, Cook called a third time and "again resorted to profanity," so she ended the call and ignored a fourth call reflecting Cook's number on the caller ID. Oliveira maintains that she had the same conversation with Kilgore as with Cook and that Kilgore's "immediate response was to deny any problem." Plaintiffs submitted declarations by administrative assistants Oliveira and McNish to support their version of the communications that occurred that Saturday morning.

Plaintiffs argue that there is no proof of any solicitation by SLG; all that occurred was a brief attempt to contact potential witnesses identified by an existing client. Plaintiffs further claim that Oliveira's calls reflect SLG's efforts to comply with their Rule 11 duty to duly and diligently investigate their clients' case. Moreover, Plaintiffs claim that Oliveira properly disclosed SLG's role as counsel to a group of workers claiming unpaid overtime from the start of each call and immediately ended the calls when Cook and Kilgore denied witnessing any overtime compensation problems.

## Defendants' Reply[3]

Defendants argue that SLG's response reveals their failure to abide by Rule 11 and Florida Bar Rules in that administrative assistants with no legal training were purportedly conducting Rule 11 due diligence investigations regarding claims of SLG clients rather than

---

[3] On February 3, 2008, Plaintiffs filed a Motion for Leave to File Surreply (DE 76) claiming that Defendants' Reply inserted a new theory of inadequate claims investigation in the "4 pages of new argument under Rule 11 that Defendants introduced for the first time in their Reply." (DE 76). In an Endorsed Order (DE 87), filed February 7, 2008, the Court denied this motion and indicated that to "the extent that this Court determines that Defendants made new arguments in its reply, this Court will refuse to consider those arguments when rendering a decision."

6

attorneys. Defendants further argue that the document filed under seal is "grossly incomplete" in that it is only two pages of a fourteen page fax with no mention of why the six names and numbers were provided, nor any indication that the individuals listed were potential witnesses. Defendants suggest that the other twelve pages of the fax not provided by Plaintiffs may reveal why the names and contact numbers were provided to SLG. Defendants also suggest that the three redacted names may represent individuals who could corroborate Cook and Kilgore's claims of solicitation. Defendants question why SLG did not produce telephone records to confirm their version of the communications. Attached to the Reply was Cook's cellular phone records, which confirm that Cook received a two-minute phone call from SLG at 10:31 a.m. on December 15, 2007. The records also show that Cook placed an outgoing one-minute phone call to SLG at 10:51 a.m. Defendants explain that Cook called SLG "to sarcastically inquire into the possibility of" suing SLG. Defendants end by characterizing the declarations of Oliveira and McNish as self-serving and not credible.

On February 4, 2008, Defendants filed a declaration of TK employee Christopher Johnson (DE 81-2), a Kansas resident, stating that he received a call from SLG in mid-November, 2007. According to Johnson's declaration, the woman caller explained that the suit was due to Defendant corporation's "taking money from people by not paying them for the time when they had to work through lunches" and that their firm "would love to help [him] recover [his] money." After learning Johnson was not interested, the caller allegedly "asked if [he] knew of any coworkers...who may want to get their money back."

## FEBRUARY 8, 2008 HEARING

The Court held oral argument on February 8, 2008. As part of their argument,

7

Defendants noted that the six named Plaintiffs are from Florida, Georgia, North Carolina and Pennsylvania while during the time between the filing of the Complaint and the hearing, 40 individuals from Texas, Louisiana, Alabama, Ohio, Maryland, Missouri, Massachusetts and Illinois had consented to opt in to the suit. Defendants argued that the reason these individuals with no apparent connection to the named Plaintiffs joined the suit was due to unethical solicitation by SLG. Defendants went on to reiterate their version of the communications that took place according to the sworn declarations of Cook, Kilgore, and Johnson. Plaintiffs responded that all of the individuals who opted in to the suit voluntarily came forward and that SLG's administrative assistants were merely placing calls to investigate potential witness testimony.

The Court noted its failure "to see how the people of Kansas and Missouri are going to help substantiate a situation at a local store here in Florida." After hearing from both sides, the Court described Defendants' claims as "serious charges" and noted that a review of the number of cases filed by SLG since 2000 that never reached trial is indicative of "nuisance type claims that get bought off." The Court indicated that a resolution of the issues raised, issues that caused concern to the Court, would require determinations regarding credibility and the "clear factual issue" of whether the Defendants' employees were solicited or not.

## JULY 31, 2008 EVIDENTIARY HEARING

### Nick Kilgore

The court held an evidentiary hearing on July 31, 2008. Nick Kilgore testified for the defense. Kilgore had worked at a NTB store in Kansas City, Missouri for a year and a half,

8

first as a sales associate and then as a retail manager. (T.21).[4] Kilgore testified, consistent with his written declaration, that he was called on the morning of December 15, 2007, by a woman who identified herself as being from a law firm. (T.22). Kilgore remembered that she had an unusual name that he could not pronounce. The caller stated that SLG had received Kilgore's phone number from former employee Matt Bitner and that SLG wanted to know if Kilgore was interested in joining the suit. (T.22). Kilgore recalled that the caller stated the suit "was for unpaid lunch breaks or employees being forced to work through the lunch break" and the caller "wanted to know if [he] was interested in recovering some of [his] lost money." (T.22). Kilgore informed the caller he was not interested in joining the suit and had never been forced to work through a lunch break. Kilgore called his boss, Christopher Blum, and informed him of the call. (T.24).

According to Kilgore, the caller never asked if Kilgore witnessed Bitner or any other TK employees being forced to work through lunch breaks. (T.23). Kilgore admitted that although his declaration states that the phone call lasted approximately five minutes, the call actually lasted only about one minute. (T.25). Kilgore attributed the discrepancy to the fact that he made his declaration four to six weeks after the call occurred. Since making his declaration, Kilgore obtained and viewed his phone records showing the duration of the call being shorter than he originally remembered. (T.30).

On cross-examination, Plaintiff's counsel asked Kilgore if the suit about which he was contacted "had to do with overtime issues." (T.37). Kilgore corrected counsel's statement and stated: "She didn't say overtime issues, she said that it was due to people

---

[4]All references to the transcript (DE 130) of the Evidentiary Hearing are cited as (T.___).

9

being forced to work through the lunch break or not being paid for the lunch break." (T.37). He again stated that the caller told him Matt Bitner had identified him as a possible interested party in the suit. (T.37). According to Kilgore, the caller never asked him if he knew or had worked with Matt Bitner. (T.38). Kilgore had previously worked with Matt Bitner when they were both sales associates. (T.38). Kilgore stated that the caller did not go into details about the allegations of the suit, and that "her main interest was wondering if I wanted to join." (T.39).

### Chris Johnson

Chris Johnson testified for the Defendants. Johnson worked for NTB for three years, first as a tire technician and later as a sales representative. (T.42). Johnson worked at NTB's stores in Overland Park, Kansas; Shawnee Mission, Missouri; and Kansas City, Missouri. (T.43). Johnson's employment with NTB was interrupted by a fourteen-month break during which he served on active duty with the U.S. Army in Iraq. (T.43). Johnson later left NTB to work for Citibank as a customer service sales representative. (T.41).

Johnson testified that he received a call on December 7, 2007, from a caller who identified herself as working in a law office. (T.44). According to Johnson, the caller told him "about a lawsuit that's being brought up against NTB involving lost wages for certain employees" and that the caller "asked me if I felt I had any lost wages, if I'd like to be a part of that particular lawsuit." (T.45). Johnson told her he was not interested. The caller asked if Johnson knew anyone else who had lost wages. Johnson told the caller he would keep the number and get back to her if he lost any wages. He saved the number in his cellular phone. (T.45).

10

Johnson stated that the caller never asked if he had ever been forced to work off the clock, or if he had ever witnessed anyone else forced to work off the clock. (T.46). The caller did not mention any other NTB employee, nor did she mention how she obtained Johnson's number. (T.46). Johnson mentioned the call to his service manager the following day at work, who told him not to worry about it. (T.46). When Johnson later transferred to the Kansas City store, he overheard two other employees, Shane Cook and Chris Blum, talking about the suit against NTB. (T.47). Johnson informed them of the call he had received. (T.47). Johnson testified that while his declaration stated that he was called on November 7, 2007, the call actually happened December 7, 2007 and Johnson had confused the timing. (T.47). Johnson never knew Matt Bitner and never worked with him. (T.49). Johnson did not know any of the named Plaintiffs in the suit against NTB.

## Shane Cook

Shane Cook testified for the Defendants. Cook had been a mechanic for NTB for almost three years at the Kansas City store. (T.53-54). Cook testified that he received a call on December 15, 2007 from a law firm asking "if [he] would like to join a lawsuit for people that had basically been forced to work through lunch or forced to work through overtime and not being paid for it." (T.54). The caller told him that "Matt Bitner had given them [his] name saying [he] might be interested in joining." (T.55). Cook told her he thought the allegations were "B.S." and that he was not interested in joining the suit. (T.55).

According to Cook, the caller did not ask if he had witnessed Matt Bitner or any other employee being forced to work through lunch, or if Cook had been forced to work through lunch himself. (T.56). The call lasted under a minute. After the call ended, Cook

11

told his store manager, Chris Blum, about the call. (T.56). Cook stated that he later used his cellular phone to call the law firm back and ask them if they would like to join a suit he was bringing because SLG was filing frivolous suits. (T.56). Cook stated that he "quite often" makes such callbacks for his own entertainment "when [he is] solicited." (T.56). Cook admitted to having used profanity during the phone call he received, and that it is part of his everyday way of talking. (T.57). Cook stated that he knew Matt Bitner as a co-worker at the store. (T.58). Cook did not know any of the named Plaintiffs in the suit against NTB. (T.59).

On cross-examination, Cook offered the same recollection of what occurred during the phone call with the woman from SLG that he had given on direct examination. (T.62). Cook stated that he did not tell the caller that TK owed him money, but that the caller told Cook that TK owed him money. (T.62). Cook elaborated that "it was almost like a sales pitch to me" and "it was basically if I'd like to join the lawsuit to recover monies that was owed to me." (T.63). Cook stated that he did not mention calling the law firm back in his first declaration because he had not remembered doing it at the time he made his first declaration.[5] (T.65).

## Christopher Blum

Christopher Blum testified for the Defendants. Blum was employed by NTB for two years, as a sales associate, an assistant manager, a store manager, and most recently a service manager. Blum was the manager at Store 676 in Kansas City. (T.70). On December 15, 2007, Blum received a call from Nick Kilgore informing him that a former

---

[5]Defendants filed a "Second Declaration of Shane Cook" (DE 71-2), addressing the callback issue.

12

employee, Matt Bitner, was suing his store. Blum knew Bitner well as a former employee. (T.71). Blum stated that other employees in his store informed him that they had received calls from the same phone number regarding the same issue as that reported by Kilgore. Chris Johnson came forward later when he heard Blum, Kilgore, and Cook discussing the case.

### Gregg Shavitz

Gregg Shavitz of the Shavitz Law Group testified for the Plaintiff. Shavitz testified that SLG does labor and employment law with a concentration on wage and hour law. The firm almost always represents plaintiffs. At the time of the hearing, the firm employed approximately six attorneys and eleven non-attorneys. (T.84). Shavitz testified that in this case there were already thirty plaintiffs in the case, and nothing to be gained by adding three or five to that number. (T.92). Shavitz testified that current or former TK employees would be the best source of information about whether people regularly worked through lunch breaks in the region in which they worked. (T.94). Shavitz stated that the common way to identify witnesses to substantiate claims is for SLG clients to identify other employees who could support their testimony. (T.94). Shavitz stated that Kilgore, Cook, and Johnson could not have become part of the case against TK because they were ineligible. (T.97).

Shavitz testified that SLG provides training for its employees on how to call prospective witnesses about a case. (T.98). Shavitz described how a larger case such as this one would have a paralegal and an administrative assistant assigned to it. (T.98). An administrative assistant will "already have been with the firm for some period of time in which they'll have received incoming calls and then get comfortable in speaking to clients

13

and going through a script or an incoming call situation about one calling about a new case." (T.99). According to Shavitz, the administrative assistant on a particular case would have attended many meetings in which the allegations in that case were discussed. If the administrative assistant was asked to call potential witnesses, the attorney on the case would describe "with particularity the information that is being sought on the call." (T.99). Shavitz has provided training by discussing solicitation at monthly firm meetings and circulating articles on solicitation from the Bar Journal and other sources. (T.100).

On cross-examination, Shavitz stated that any time an administrative assistant is put on a case, he or she is reminded not to solicit. Shavitz estimated that Tayara Oliveira had approximately ten cases during her time at SLG that would have triggered such training. (T.107). Shavitz admitted that SLG does not have a written policy on solicitation. (T.107). He sends an e-mail with an article attached to the firm. (T.107). Sometimes SLG gives administrative assistants a script to work from when they make calls. (T.108). Tayara Oliveira did not have such a script in this case. (T.108). There was no attorney or paralegal sitting with Oliveira when she called Christopher Johnson, Nick Kilgore, and Shane Cook on December 7, 2007. (T.109).

Shavitz also stated that he did not know if SLG called the third parties to corroborate the allegations made by the named plaintiffs in the suit before filing the Complaint. (T.114). Shavitz admitted that contrary to his earlier testimony, Christopher Johnson would be a potential plaintiff in the case based upon his position with TK. (T.122). Shavitz also stated that Nick Kilgore would be a potential plaintiff but SLG would not wish to represent him in order to avoid conflicts because Kilgore had since become a manager. (T.123). Shavitz stated that the questions an administrative assistant calling a potential witness might ask

14

could be anything, depending on the attorney who directed him or her to make the call. (T.124). The administrative assistant may or may not know the position currently or formerly held by the potential witness. (T.125).

Shavitz admitted that the form of notice that SLG attached to its motion for class notice in this case did not advise potential plaintiffs that they could seek other counsel besides SLG. (T.132). In response to the Court's questions, Shavitz stated he did not give Oliveira a script to follow in this case because the issue was fairly narrow and Oliveira was already familiar with the issues in the case. (T.138). Shavitz also stated that neither he nor SLG attorney Hal Anderson was supervising Oliveira by telling her what to ask and what not to ask potential witnesses in her calls. (T.141). The administrative assistant would only e-mail Shavitz or Anderson if he or she had something specifically to share with them. (T.141). Shavitz did not recall if Oliveira had done so in this particular case. (T.146).

Shavitz stated that if an administrative assistant informed him that a potential witness was interested in joining the suit as a plaintiff, Shavitz would express that he hoped the witness had expressed interest to SLG rather than the administrative assistant reaching out to the potential plaintiff. (T.144). Shavitz did not know if he was the attorney who directed Oliveira to make the calls to Johnson, Cook, and Kilgore. (T.145). Shavitz testified that his administrative assistants don't solicit, "based upon their training, based upon their understanding of the Bar rules and there's no advantage to the case to do so." (T.146). Shavitz admitted that if more plaintiffs opted-in to a FLSA collective action, SLG would spend more attorney time supplementing disclosures under Rule 26(a)(1), for which they would seek reimbursement at the end of the case if they won. (T.149).

15

## Tayara Oliveira

Tayara Oliveira testified for the Plaintiff. She was in her second year of college at the time of the hearing and had been an administrative assistant at SLG since October 2006. (T.151). She does not possess a law degree or paralegal certification. (T.171). Oliveira testified that her duties include making calls to witnesses, speaking with clients, and assisting incoming callers. (T.153). Oliveira was assigned to this case. (T.154). She made calls to witnesses to obtain information about SLG's clients' claims. (T.154). Oliveira stated that Gregg Shavitz offered SLG employees "extensive training" about what they could not say in phone calls, and that SLG educated them about other firms that had experienced issues with solicitation. (T.154). Oliveira testified that they were told not to solicit at any point in time by asking people to join the case. (T.156).

Oliveira stated that on December 15, 2007, she was calling people that SLG client Matthew Bitner had identified. (T.157). Bitner had faxed a typed list of names and telephone numbers to SLG. (T.158). The list included the names of Nick Kilgore, Shane Cook, and Victor Harris. (T.163). Oliveira testified she called Cook and Harris with the intention of getting information about SLG's clients' claims, and not to entice them to join the case as plaintiffs. (T.164).

Oliveira's stated recollection of the phone conversation with Cook differed from Cook's recollection. According to Oliveira, she explained who she was and explained that Bitner had provided SLG with Cook's name and number, and told SLG that Cook might have information to substantiate Bitner's claims. (T.164). Oliveira claimed she did not get far because Cook launched into a stream of profanity regarding the case and she ended the call. (T.165). Oliveira maintained that at no time did she inquire whether Cook was

16

interested in joining the suit or urge him to do so. (T.165). Oliveira stated she did not get as far as asking Cook his position with TK before she ended the call. (T.164). Someone called SLG back, and Adrienne Castrillon-McNish answered the call and said it was someone yelling and cursing. (T.165). Another call came in, but Oliveira and Castrillon-McNish did not answer it, believing it was Cook again. (T.165).

Oliveira also called Nick Kilgore the same day. She testified that she began the call the same way she did her call to Shane Cook. (T.166). Oliveira's testimony also conflicts with Kilgore's. Oliveira testified that she informed Kilgore that Matthew Bitner provided Kilgore's name and number to provide SLG information regarding Bitner's claims. (T.166). Kilgore stated he did not have information and was not interested in speaking with Oliveira at that time, and ended the call. (T.166). Again, Oliveira stated she never asked Kilgore whether he was interested in joining the suit. (T.166). She never asked him whether he ever experienced any wrongful deduction of pay. (T.166). Oliveira had no recollection of ever speaking with Christopher Johnson.

On cross-examination, Oliveira stated that SLG later provided her a written script to follow when making calls. (T.172). Oliveira testified that she could not recall exactly when SLG provided her the script, only that it was after her calls to Kilgore, Cook, and Johnson. (T.172). She testified that she has never seen the Florida Bar rule on solicitation. (T.172). Oliveira did not recall contacting a number of the opt-in plaintiffs in the case from other states, and could not say for sure who contacted them. (T.174). She admitted she contacted a plaintiff in Maryland, Lorenzo Ramsay, "to corroborate the lunch deductions issue that other tire technicians suffered while working for Tire Kingdom as a whole." (T.176-77). Oliveira could not recall which specific or potential SLG client's claims

17

she was trying to corroborate by calling Mr. Ramsay. (T.177).

Oliveira stated she did not know what Matt Bitner meant by writing "Other NTB employees" at the top of the fax he sent to Oliveira containing names. (T.181). She admitted that Bitner could have meant other NTB employees who would like to join the suit. (T.181). Oliveira did not recall what names were redacted from the fax or whether they worked with Bitner. (T.182). Oliveira could not recall if she ever spoke to any TK/NTB employee who corroborated Bitner's allegations in the case. (T.188). There was never a lawyer or certified paralegal sitting next to her when she made the calls on this case or any other case for which she made calls to potential witnesses. (T. 190).

Oliveira stated that she or another administrative assistant have regular weekly or bi-weekly meetings with Shavitz. (T.196). Oliveira did not have a training file. (T.197). She did not have a written job description and was not sure if one existed. (T.197). She takes notes when she makes calls to people, on a spreadsheet on the computer. (T.197). She records the information they provide or notes that they did not want to speak to her. (T.198). She was instructed by Gregg Shavitz orally to make the calls in this case. (T.199). There was no one "specifically set up to supervise" her but she was able to go to Shavitz with any questions or concerns. (T.200). If Shavitz was not in the office, she would phone him, email him, or wait a day or two and ask him in person. (T.201).

SLG did not bring supporting materials to the evidentiary hearing regarding the spreadsheets. However, given the seriousness of the allegations against SLG, the Court granted SLG leave to provide supporting materials after the hearing. The Court ordered SLG to provide the Court with the emails regarding the phone calls to the witnesses who were allegedly solicited, its training materials concerning Oliveira, and the fax from Bitner

18

to Oliveira filed under seal. (T.203). SLG provided the Court the following materials, which

the Court has reviewed[6]:

Exhibit A: "Spreadsheets, Emails, & Notes": This exhibit consists of a spreadsheet that contains, names, phone numbers, addresses, and brief notes of conversations. It also includes several e-mails from Tayara Oliveira to several people confirming conversations.

Exhibit B: "Training Documentation": This exhibit consists of e-mails from Gregg Shavitz to SLG employees and others.

Exhibit C: "Facsimile": This exhibit is the fax from Matthew Bitner to Tayara Oliveira discussed at the July 31, 2008 evidentiary hearing.

On November 18, 2008, the Court ordered (DE 137) the parties to file their final

memoranda of law on Defendant's Motion for Sanctions. Defendants filed their Final

Memorandum of Law (DE 140) in Support of Motion for Sanctions on November 24, 2008.

Plaintiffs filed their Final Memorandum in Opposition (DE 144) on December 9, 2008.

Defendants filed a Reply (DE 145) on December 15, 2008.

## DISCUSSION

The issues before the Court are whether SLG's pre-certification telephone

communications with Defendants' current and former employees constituted improper

solicitation of putative class members and, if so, what sanctions this Court should impose

to address that conduct.

Local Rule 11.1.C states that "[t]he standards of professional conduct of members

of the Bar of this Court shall include the current Rules Regulating the Florida Bar." Rule

4-7.4(a) of the Rules Regulating the Florida Bar prohibits a lawyer from personally soliciting

---

[6] The Court later entered several Orders (DE 131, DE 133, DE 135) that Plaintiffs file the electronically stored information in a manner accessible to the Court and in a manner replicating the originals.

19

professional employment from a prospective client "when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." This rule prohibits a lawyer from entering into an agreement for a fee, or from collecting a fee, for employment obtained in violation of this solicitation rule. The rule further states that a lawyer shall not permit his or her employees or agents to solicit on the lawyer's behalf. The commentary to the rule notes the "potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services" in that such clients often feel "overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest."

Rule 4-5.3 of the Rules Regulating the Florida Bar addresses lawyer liability for the conduct of their nonlawyer assistants. Under this rule, any lawyer having "direct supervisory authority" over nonlegal staff is responsible for making "reasonable efforts" to ensure that the nonlawyer's conduct is consistent with the attorney's own professional obligations. An opinion by the Professional Ethics Committee of the Florida Bar explains that Rule 4-5.3, among other rules, holds nonlegal staff to the same obligations as lawyers regarding solicitation of new business. Fla. Bar Prof'l Ethics Comm. Op. 89-4 (1989). Therefore, any lawyer who orders or ratifies improper solicitation by a nonlawyer at their firm would be held liable for violation of the Rules of Professional Conduct. Id.

The misconduct alleged by Defendants occurred in the context of pre-certification communications in a proposed collective action. The United States Supreme Court has recognized that while "[c]lass actions serve an important function in our system of civil justice," they also present "opportunities for abuse." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-100 (1981). The Supreme Court has further recognized that the same unique potential

20

for abuse inherent in class action suits is also present in collective actions with respect to "misuse of the class device." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989) (applying Gulf Oil to collective actions). The potential abuses include "heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties and counsel to 'drum up' participation in the proceeding" and "[u]napproved communications to class members that misrepresent the status or effect of the pending action." Gulf Oil, 452 U.S. at 101 n.12.

After observing all of the testimony at the evidentiary hearing and fully considering the materials submitted by the parties in support of their positions, the Court finds that SLG solicited Nick Kilgore, Shane Cook, and Chris Johnson to join the suit against TK. The Court finds the testimonies of Kilgore, Cook, and Johnson credible in their accounts of the calls they received from SLG. The Court finds, based on their testimonies, that each of these three witnesses received a phone call from SLG in which he was asked if he would like to join the suit against TK or NTB in order to recover money owed to him. Cook and Kilgore specifically recalled the caller informing them that Matt Bitner had provided their names.

The Court further finds that SLG's motive in soliciting Kilgore, Cook, and Johnson was pecuniary gain. The Court specifically finds, based on the testimonies of Cook, Kilgore, and Johnson, that none was asked the kind of "witness-type" questions that would lend credibility to SLG's contention that the purpose of the calls was to gather information to substantiate the claims of existing SLG clients. Gregg Shavitz admitted that the more clients SLG added to the suit, the more work it would perform for which it would later seek compensation if the suit concluded with a result favorable to SLG. The Court finds wholly

21

unpersuasive SLG's argument that it would not attempt to solicit Cook, Johnson, and Kilgore based on their lack of eligibility to participate as plaintiffs due to their positions. Indeed, Shavitz admitted on cross-examination that Kilgore and Johnson were eligible to become part of the suit. However, even assuming that Cook, Kilgore and Johnson were ineligible to join the suit as plaintiffs does not compel the conclusion that they were not solicited.

The Court finds that SLG failed to train its administrative assistant, Tayara Oliveira, regarding solicitation of clients. The Court further finds as to this point, based on the testimony of Oliveira and Gregg Shavitz, that attorneys Gregg Shavitz and Hal Anderson of SLG had direct supervisory authority over Oliveira as a member of SLG's nonlawyer staff. In opening statements at the evidentiary hearing, counsel for SLG stated that Tayara Oliveira would testify "about the extensive training she receives at the Shavitz Law Group to avoid solicitation." (T.16). Oliveira's testimony at the hearing failed to establish the existence of such training, nor did that of Gregg Shavitz. Oliveira admitted that she had never seen the Florida Bar rule on solicitation. Gregg Shavitz testified that SLG does not have a written solicitation policy in place.

The testimonies of Oliveira and Shavitz and the materials submitted by SLG in an effort to show training reveal an attempt by SLG to characterize the loose day-to-day supervision of Oliveira in her duties as something akin to formal training on solicitation. For instance, SLG attempted to establish through Shavitz's testimony that an administrative assistant such as Oliveira would be familiar with the case and in constant contact with a supervising attorney. Even if this were sufficient to show training, Shavitz undermined his earlier testimony when he testified that an administrative assistant such as Oliveira would

22

only contact him "if she has something to share." (T.141).

The Court notes that Shavitz's testimony regarding both training and the specific solicitation alleged in defendants' motion was vague and lacking in detail on important points. Shavitz resorted to generalities in his testimony about what "would happen" and who "will be" supervising the administrative assistants on a given case. Shavitz's ability to state specifically how Oliveira was supervised on this particular case lacked detail. Shavitz could not remember if he was the attorney who directed Oliveira to make the phone calls at issue in this motion. Shavitz did not provide details that would support the assertion that SLG provided Oliveira substantial training on solicitation or that solicitation did not occur in this particular case.

SLG contends the fax that it provided the Court proves that Matt Bitner sent Oliveira the names of potential witnesses. However, the fax does not support SLG's position. The FAX does not contain any notation that it was a list of potential witnesses. Oliveira's spreadsheets similarly fail to contain information that supports SLG's argument that it did not solicit plaintiffs in this case. Additionally, the emails SLG provided to the Court show only that SLG staff was occasionally warned not to solicit. The emails fail to show that SLG ever explained and identified solicitation to its staff and trained them on how to avoid it. The Court finds, based on the testimony at the hearing and the additional materials submitted by SLG, that SLG failed to provide formal, substantial, and informative training to its staff on compliance with the Florida Bar rules on solicitation.

SLG improperly solicited clients in violation of Rules Regulating the Florida Bar. The Court now addresses the appropriate means by which to sanction SLG for its conduct. "It has long been understood that certain implied powers must necessarily result to our Courts

23

of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." Thomas v. Tenneco Packaging Co. Inc., 293 F.3d 1306, 1320 (11th Cir. 2002) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). These powers include the power of the Court "to discipline attorneys who appear before it." Chambers, 501 U.S. at 43. However, courts are to exercise caution in the exercise of their inherent power, provide the attorney facing sanctions due process, and only impose sanctions where the court finds conduct that amounts to bad faith. Thomas, 293 F.3d at 1320. The Court does not take up the task of imposing sanctions lightly.

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil, 452 U.S. at 100. This "discretion is not unlimited," however, and "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101-02. While specific findings of abuses may justify a ban on communications, the mere possibility of abuse does not justify "adoption of a communications ban that interferes with formation of a class or the prosecution of a class action." Id. at 104.

The Court has found specific abuses in the present case that require the imposition of appropriate sanctions. However, the Court is mindful of the disfavor on communication bans expressed by the Supreme Court in Gulf Oil. Furthermore, the Court does not seek to punish SLG's legitimately-obtained clients by hampering SLG's ability to prosecute its case as to those clients through a ban on communication with potential witnesses. The

24

appropriate sanction in the present case prevents SLG from reaping financial benefit from
clients obtained by solicitation.

## RECOMMENDATION

For the reasons stated above, this Court respectfully RECOMMENDS to the District
Court that the Defendant's Motion for Sanctions (DE 58) be GRANTED IN PART and
DENIED IN PART, as follows:

1) that Shavitz Law Group be barred from representing any individual, including any
current opt-in plaintiff, who did not work with any of the named plaintiffs in this action:
Donald Hamm, Elliot Cook, Ronald Simms, Mark Wagner, Martha Harris, and Timothy
Bridges;

2) that Shavitz Law Group be barred from collecting any fees or costs for work
performed in representing any individual, including any current opt-in plaintiff, who did not
work with any of the named plaintiffs in this action: Donald Hamm, Elliot Cook, Ronald
Simms, Mark Wagner, Martha Harris, and Timothy Bridges;

3) that Shavitz Law Group be ordered to formulate and implement a formal written
policy on solicitation to inform and govern the conduct of all SLG attorney and non-attorney
staff;

4) that a copy of this Report and Recommendation and any Order adopting it be
forwarded to the Florida Bar for possible further action;

5) that Shavitz Law Group be ordered to reimburse Defendants for all reasonable
fees and costs incurred in bringing and prosecuting Defendants' Motion for Sanctions.

A party shall serve and file written objections, if any, to this Report and
Recommendation with the Honorable United States District Judge Kenneth L. Ryskamp,

25

within ten (10) days after being served with a copy. <u>See</u> 28 U.S.C. § 636(b)(1)(c). Failure

to file timely objections may limit the scope of appellate review of factual findings contained

herein. <u>See</u> <u>United States v. Warren</u>, 687 F.2d 347, 348 (11th Cir. 1982) cert. denied, 460

U.S. 1087 (1983).

     DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District

of Florida, this _____ day of December 2008.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Kenneth L. Ryskamp
All counsel of record

26

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80829-CIV-RYSKAMP/VITUNAC

DONALD HAMM,
ELLIOT COOK,
RONALD SIMMS,
MARK WAGNER,
MARTHA HARRIS, and
TIMOTHY BRIDGES,
individually and on behalf
of persons similarly situated,
     Plaintiffs,
v.

TBC CORPORATION,
a Delaware corporation, and
TIRE KINGDOM, INC.,
a Florida corporation,
     Defendants.
_____/

## ORDER ADOPTING THE REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon the report and recommendation of Magistrate

Judge Ann E. Vitunac **[DE 147]** entered on December 30, 2008. Pending before Judge Vitunac

was defendants' motion for sanctions **[DE 58]**. Judge Vitunac held a hearing on July 31, 2008.

Plaintiffs' objected to the report **[DE 151]** on January 21, 2009.

While plaintiffs agreed to some of Judge Vitunac's recommendations, they did object to

others arguing that they were too broad in scope. Specifically, Judge Vitunac recommended that

The Shavitz Law Group withdraw as counsel for any current or future opt-in plaintiff who did not

work with any of the named plaintiffs. Judge Vitunac recommended that this Court bar The

Shavitz Law Group from collecting any fees or costs for work preformed in representing those

individuals. The Shavitz Law Group agrees with Judge Vitunac with respect to any current opt-

in plaintiffs, but argues that it should not be barred from representing any future opt-in plaintiffs, regardless of whether the future opt-in plaintiff worked with a named plaintiff. This Court disagrees. The report and recommendation achieves two purposes: first, ensuring that counsel acts ethically in this litigation and second, sanctioning The Shavitz Law Group for unethically soliciting clients. Part of that sanction includes barring The Shavitz Law Group from representing any future opt-in client not directly associated with the named plaintiffs.

This Court would also note that, according to the Administrative Office of the United States Courts, for the past five years the Southern District of Florida has averaged 28.7% of all FLSA cases filed in the United States. This would cause one to wonder if the employers in the Southern District are willfully ignoring the FLSA. The more logical conclusion is that FLSA cases are heavily weighted in favor of the plaintiff. Most cases are filed against small businesses which quickly realize that it is cheaper to pay a small claim and the plaintiff's attorney's fee than it is to defend the claims. Very few FLSA cases go to trial. It is clear that the volume of cases in the Southern District is attorney-driven. This Court would note further that in the past five years the Shatvitz Law Group has filed 1437 cases in the Southern District of Florida which represents 23% of all cases filed in this district. These figures lead credence to the factual findings of the Magistrate Judge.

This Court has read and considered all of the above submissions in light of the record. Accordingly, it is hereby,

ORDERED AND ADJUDGED that:

(1)     The Report of Magistrate Judge Vitunac **[DE 147]** be, and the same hereby is, RATIFIED, AFFIRMED and APPROVED in its entirety;

(2)     Defendants' motion for sanctions **[DE 58]** is GRANTED in the following

respects;

(A)     The Shavitz Law Group is hereby barred from representing any individual,

including any current opt-in plaintiff, who did not work with any of the

named plaintiffs in this action: Donald Hamm, Elliot Cook, Ronald

Simms, mark Wagner, Martha Harris, and Timothy Bridges;

(B)     The Shavitz Law Group is barred from collecting any fees or costs for

work preformed in representing any individual, including any current opt-

in plaintiff, who did not work with any of the named plaintiffs in this

action;

(C)     The Shavitz Law Group is ordered to formulate and implement a formal

written policy on solicitation to inform and govern the conduct of all

Shavitz Law Group attorney and non-attorney staff;

(D)     A copy of this Order, and Judge Vitunac's report and recommendation,

will be forwarded to the Florida Bar for possible further action; and

(E)     The Shavitz Law Group is ordered to reimburse defendants for all

reasonable fees and costs incurred in bringing and prosecuting the motion.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 3 day of

February, 2009.

    /s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided:
All counsel of record
Magistrate Judge Ann E. Vitunac

# EXHIBIT 7

---------- Forwarded message ---------
From: **Michael Mantz** <mikemantzcontracting@gmail.com>
Date: Wed, May 13, 2020, 6:42 PM
Subject: Fwd: Reminder: Waiting for you to sign Frontier Integrity Solutions
To: Sandra Patton <spatton@frontierintegrity.com>

Sorry to bother you with this but why do I keep getting this email?

---------- Forwarded message ---------
From: **Josephson Dunlap** <echosign@echosign.com>
Date: Wed, May 13, 2020, 3:51 PM
Subject: Reminder: Waiting for you to sign Frontier Integrity Solutions
To: Mike Mantz <mikemantzcontracting@gmail.com>

 POWERED BY
Adobe Sign



# Please sign Frontier Integrity Solutions

[Click here to review and sign **Frontier Integrity Solutions**.]

After you sign **Frontier Integrity Solutions**, all parties will receive a final PDF copy by email.

Josephson Dunlap has requested that this reminder be sent. This reminder will be re-sent every week until completed. Click here if you wish to stop receiving reminders about this agreement.

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.

# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

MICHAEL J. BECKER, individually and on
behalf of others similarly situated

    *Plaintiff*,        Civil Action No. 3:20-cv-00285
 v.

DELEK US ENERGY, INC.,      Judge Waverly D. Crenshaw
               Magistrate Judge Alistair Newbern

    *Defendant*.

---

**<u>Declaration of Sharon Moyer</u>**

1.   My name is Sharon Moyer.  I am over 18 years of age and competent in all respects to make this declaration pursuant to 28 U.S.C. § 1746.  I have personal knowledge of the facts in this declaration; can testify to their accuracy; and make this statement voluntarily.

2.   I am Vice President and Chief Human Resources Officer for Cypress Environmental Partners, LP.  I am a duly-authorized custodian of personnel records for its affiliated entities, including Cypress Environmental Management – TIR, LLC, formerly known as Cypress Energy Management – TIR, LLC ("Cypress"), which employs inspectors who staff projects providing third-party inspection services.

3.   Cypress' principal place of business is in Tulsa, Oklahoma.  It maintains all personnel files, documents related to payroll and compensation, and human resources documents at its corporate headquarters in Tulsa, Oklahoma.  All witnesses who can authenticate these documents or testify as to payroll or human resources functions are also located in the Tulsa office.

4.   Delek US Energy, Inc. ("Delek") contracted for inspection services with field

DM_US 168815319-1.106804.0023

staffing provided by Cypress.  Delek pays a stipulated rate to compensate for those services; that rate is an all-inclusive rate including overhead, profit, equipment, material, salary, benefits, and all applicable taxes and withholdings under federal and state law, which includes contributions under the Federal Insurance Contribution Act and Federal Unemployment Tax Act.  Cypress, in turn, uses these monies to pay its personnel assigned to the specific customer project in the manner that it determines.

### Employment of Michael Jordan Becker

5.      I understand that Plaintiff Michael Jordan Becker ("Becker") alleges in this lawsuit that he worked exclusively for Delek as an electrical inspector from approximately August 2018 until December 2018.  Becker was actually employed by Cypress and assigned to provide services on its behalf to Delek from September 16, 2018 until October 26, 2018.

6.      Attached as Exhibit A1 is Becker's Employment Agreement with Cypress, which Becker acknowledges is a condition of employment with Cypress.

7.      In his Employment Agreement, Becker further acknowledges that he "understands that employment is based on a specific project to be performed for a designated customer."  Ex. A1, at ¶ 2.

8.      Becker's Employment Agreement includes an agreement that "any dispute, controversy or claim arising out of or related to in any way to the parties' employment relationship or termination of that relationship, including this Employment Agreement or any breach of this agreement, shall be submitted to and decided by binding arbitration in Tulsa, Tulsa County, Oklahoma." Ex. A1, at ¶ 5.  Becker agreed that such arbitrations "shall be administered under the laws of the American Arbitration Association in accordance with American Arbitration Association Employment Arbitration Rules and Mediation Procedures in effect at the time

arbitration is commenced." *Id.*

9.        In his Employment Agreement, Becker also agreed that there will be no class actions, collective actions, or representative actions. Ex. A1, at ¶ 6.

10.       Becker has signed other documents acknowledging that he was employed by Cypress.  These include:

- Exhibit A2 (Acknowledgment of Cypress' Anti-Alcohol Misuse Prevention Plan);
- Exhibit A3 (Acknowledgment of Cypress' Safety Training);
- Exhibit A4 (Consent to Cypress' Procurement of Motor Vehicle Reports);
- Exhibit A5 (Consent to Cypress' Electronic Distribution of Employee Benefits Information).

11.       Cypress determined Becker's salary.  This salary was set to comply with the Fair Labor Standards Act ("FLSA") requirements for the salary status exemption set forth in 29 C.F.R. § 541.604(b).

12.       Confirming that Cypress determined Becker's salary is his Inspector Pay Offer, attached as Exhibit A6.   Becker's Pay Offer Letter specifically notifies Becker that he will be performing work for Cypress's client "Delek Logistics Partners, LP" at the "BSH Project."

13.       Cypress determined that Becker's duties and pay qualified him for an exemption from the overtime requirements of the FLSA.  Specifically, it determined that Becker's job and salary qualified him for the administrative exemption under 29 U.S.C. § 213.

14.       Cypress paid Becker's salary as set forth in Becker's Inspector Pay Offer, totaling $11,900.00 in gross salary for the six weeks assigned to Delek.  Attached as Exhibit A7 are Becker's paystubs from Cypress during the period he was assigned to Delek.

15.       Confirming that Cypress paid Becker's salary is Becker's IRS W-2 tax form (attached as Exhibit A8) showing that Cypress paid Becker's wages for working as a Cypress employee in 2018.  Cypress remitted all corresponding payroll taxes to the relevant federal and

state governments under Cypress' own Federal Employer Identification Number.

16.      The records attached to this Declaration were made at or near the time of the events they record, were made by or from information transmitted by a person with knowledge of the events they record, and were kept in the ordinary course of business.  It was the regular practice of the business to make such records.

17.      I declare under the penalty of perjury, that the foregoing is true and correct.

[PAGE BREAK]

DM_US 168815319-1.106804.0023

Executed on this 9th day of July, 2020


Sharon Moyer                    _____

Sharon Moyer

DM_US 168815319-1.106804.0023

# EXHIBIT A1

DocuSign Envelope ID: 49352895-D064-4768-8E6B-BA31047E9B95



# EMPLOYMENT AGREEMENT

## Cypress Energy Management-TIR, LLC

**THIS AGREEMENT** between **Cypress Energy Management-TIR, LLC** hereafter referred to as "Employer", and, __Michael      J     Becker__ hereinafter referred to as "Employee".

## RECITALS

**WHEREAS**, Employee has requested to become employed by the Employer, and

**WHEREAS**, the Employee understands and agrees that without the execution of this Employment Agreement the undersigned Employee would not have been hired by the Employer, and

**WHEREAS**, the Employer agrees to hire the Employee according to the terms and conditions contained in this Employment Agreement.

The parties hereby mutually agree as follows:

1.  The Employer hereby engages the Employee and the Employee accepts the term of employment according to the terms and conditions contained in this Employment Agreement.

2.  The Employee understands that employment is based on a specific project to be performed for a designated customer.  Any concern or claim arising out of the working relationship must be reported to and addressed directly with Cypress Energy Management – TIR, LLC.  The Employee shall not make any complaints, allegations, or take any action against a customer or contact a customer regarding any of the foregoing without first contacting Cypress Energy Management – TIR, LLC and providing Cypress Energy Management – TIR, LLC a reasonable opportunity to resolve the matter.  Maintaining a good working relationship with the customer is critical to the company's success and the employee's opportunity for employment.

3.  The Employee shall be engaged on an employment term of day-to-day and this Employment Agreement shall therefore be designated as being able to be terminated by either party at any time. However, the parties shall have the right to attach an addendum to this agreement to state a specific length of the employment term provided that this addendum must be executed by both of the parties and dated. In the event both parties do not execute this addendum, it shall be unenforceable and deemed a nullity. The Employment Agreement shall apply for any and all future employment relationships between the parties unless this Employment Agreement is terminated by the mutual written consent of the parties. Therefore, this agreement shall be deemed a continuing Employment Agreement to apply at anytime the Employee is engaged by the Employer in the future. Furthermore, the parties agree that should the Employee be released from a project or for any other work being performed by the Employee for any unprofessional conduct to include, but not be limited to, positive drug or alcohol test or leaving before completion of a project, the Employee shall not be entitled to **any** travel **and** mileage pay from the Employer.

4.  This Employment Agreement is terminable at will by the Employer with or without cause and for any reason by the Employer. Further, the termination of the Employee by the Employer

8/1/2018

Employment Agreement
Cypress Energy Management-TIR, LLC
Page 2 of 3

with or without cause also terminates all of the company's obligations under the terms of this Employment Agreement. There is specifically no express or implied covenant of fair dealing contained in this agreement. That the Employee understands and agrees that without the Employer being able to terminate the Employee at any time, the Employer would not have hired the Employee.

5.  The parties agree that any dispute, controversy or claim arising out of or related to in any way to the parties' employment relationship or termination of that relationship, including this Employment Agreement or any breach of this agreement, shall be submitted to and decided by binding arbitration in Tulsa, Tulsa County, Oklahoma. Arbitration shall be administered under the laws of the American Arbitration Association in accordance with American Arbitration Association Employment Arbitration Rules and Mediation Procedures in effect at the time the arbitration is commenced. The rules are available online at adr.org/employment. You may also call the American Arbitration Association at 800-778-7879 if there are questions about the arbitration process.

6.  Employee and Employer expressly intend and agree that: (a) class action, collective action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Employment Agreement; (b) each will not assert class action or representative action claims against the other in arbitration or otherwise; and (c) Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. Further, Employee and Employer expressly intend and agree that any claims by the Employee will not be joined, consolidated or heard together with claims of any other employee. The validity and effect of this paragraph shall be determined exclusively by federal district or state district court of competent jurisdiction situated in Tulsa County, Oklahoma and not by an arbitrator.

7.  The protection of confidential business and trade secrets is vital to the interests and the success of Employer and its clients. Employees, who improperly use or disclose trade secrets or confidential business information, will be subject to disciplinary action, up to and including termination of employment and appropriate legal action. Further, the Employee consents to the right of the Employer to restrain the Employee from interfering with the Employer's business and the unauthorized release of any trade secrets or confidential business information.

8.  Employee agrees that compliance with Company policies and procedures are expected and required as a condition of employment. This includes abiding by all published policies, including those in the current Employee Handbook.  All changes to Company policies will be communicated through official notices and revised information may supersede, modify, or eliminate existing policies.  Employee is responsible for remaining knowledgeable with and abiding by the contents of this handbook and all other publicized Company policies and procedures.

9.  The Employee shall carry auto insurance at the Employee's expense on any personal vehicle being utilized in the performance of work under this agreement. In the event of a work related accident, the Employee's insurance provider will have first responsibility for the settlement of any damages. Furthermore, all work related vehicle accidents shall be reported to Employer within 24 hours of occurrence.

8/1/2018

Employment Agreement
Cypress Energy Management-TIR, LLC
Page 3 of 3

10.   If the Employee is involved in an accident or safety related incident, the Employee shall notify the Employer immediately, or in all events, within 24 hours of such occurrence. Furthermore, safety in the work place is considered to be a prime concern of the Employer, and an employee who exhibits unsafe or reckless conduct in the work place, or knowingly violates the safety rules of Employer or its clients, is subject to disciplinary action including termination of employment.

11.   This Employment Agreement sets forth the entire agreement between the parties. This agreement can only be modified in writing executed by the party against whom enforcement is sought. Further, any prior agreements, whether oral or written, concerning the employment of the Employee are hereby merged into this written agreement.

12.   If any of the terms and conditions of this Employment Agreement are found to be unenforceable, illegal or contrary to public policy, then this agreement remains in full force and effect, except for such unenforceable terms and conditions of this agreement.

13.   This agreement shall be binding upon the parties, their personal representatives, successors and assigns.

14.   The use of petty cash advances, travel advances, company credit cards, or company property by the Employee for personal use is discouraged. However where company monies or property have been used for personal expenses or purchases, the Employee hereby expressly authorizes Employer to deduct the full amount from Employee's salary as reimbursement.

15.   The Employer, for use in the performance of work assignments, may from time to time issue the Employee miscellaneous tools and equipment. The Employee hereby acknowledges that Employee is responsible for said equipment and barring damage during the performance of work, theft by others, or damages or losses due to accidents or acts of God, will be held responsible for the return of this equipment to Employer. The Employee hereby expressly authorizes the Employer to withhold Employee's final salary in the event Employee fails to return and/or account for any Employer owned equipment previously issued to Employee.

16.   In the event the employee is paid travel time and mileage for mobilization and de-mobilization to the job site and is released for just cause and fails to complete the assignment the employee will forfeit all travel time and mileage that he/she has been paid.

DocuSigned by:

C903E4A5AD5A6460

EMPLOYEE SIGNATURE

9/13/2018 | 10:30 PM CDT

DATE

DocuSigned by:

*Ashley Myers*

27B0F5CAFA37409

EMPLOYER SIGNATURE

9/14/2018 | 7:04 AM CDT

DATE

8/1/2018

# EXHIBIT A2



## Acknowledgement of Anti-Alcohol Misuse Prevention Plan

I acknowledge, by signing this form that I have received the Cypress Energy Management - TIR, LLC ("the Company") Anti-Drug and Alcohol Misuse Prevention Plan ("the Plan") effective 1/4/2016. I also acknowledge, by signing this form, that my full compliance with the Plan, and other DOT drug and alcohol regulation requirements are a condition of my initial and continued employment with Cypress Energy Management - TIR, LLC.  I understand and agree that I may be discharged or otherwise disciplined for any drug and/or alcohol violation, committed by me, as explained in the Plan, and in other DOT drug and alcohol regulatory requirements outlined by the Department of Transportation (DOT) and Pipeline & Hazardous Materials Safety Administration (PHMSA) which may not be included in the Plan.

## Acknowledgement of Drug and Alcohol Contraband Policy-Attachment 1

I also acknowledge, by signing this form, that I have received the Cypress Energy Management - TIR, LLC Drug and Alcohol Contraband Policy ("the Policy") effective 3/01/2017. By signing this form, I agree that my full compliance with the Policy and other client specific requirements are a condition of my initial and continued employment with the Company. I understand and agree that I may be discharged or otherwise disciplined for any drug and/or alcohol violation committed by me, as explained in the Alcohol, Drug and Contraband Client-Required Policy.

## Consent and authorization for disclosure to clients of CYPRESS ENERGY MANAGEMENT-TIR, LLC of alcohol and drug test results and related information

I further acknowledge, by signing this form, my consent to the disclosure by the Company and its agents, including, but not limited to, any collecting and testing agencies, of the DOT and Non-DOT test results to **clients of** Cypress Energy Management-TIR, LLC and its authorized agents, assigns, or representatives.

First: Michael          MI: J     Last: Becker

DocuSigned by:

_____          9/13/2018  |  10:30 PM CDT
C903E44BAD648480
EMPLOYEE SIGNATURE                        DATE

# EXHIBIT A3



# Cypress EHS Orientation
# SAFETY TRAINING ACKNOWLEDGEMENT

I, the undersigned, certify that I have completed the basic safety orientation and understand the expectations contained within. I understand that this is a Safety orientation and that the Cypress EHS Manual may cover additional Safety policies in more detail and that I have access to the Cypress EHS Manual. I also understand that in the future, additional policies may be instituted that may affect the manner in which I perform my job, and that I will be notified of any of those changes if they occur. I agree to abide by these and any future policies that may be established.

EMPLOYEE SIGNATURE: _____

EMPLOYEE NAME: ___Michael_____J___Becker_____
                                              (Print)

DATE ___9/13/2018  |  10:30 PM CDT_____

Summary of training topics:
- ➤ Emergency Action Plan
- ➤ Short Service Employee
- ➤ Behavior Based Safety
- ➤ Stop Work Authority
- ➤ Personal protective equipment
- ➤ Hearing protection
- ➤ Employee safety handbook
- ➤ JSA (Job Safety Analysis)
- ➤ Reporting accidents, incidents, injury and prescription medications
- ➤ Safe Return To Work
- ➤ Fire hazards, use of fire extinguishers and smoking areas
- ➤ Welding and burning
- ➤ Hazard communication – SDS, product labels
- ➤ Compressed gas cylinders
- ➤ Ladders and stairways
- ➤ Electrical Hazards, use of ground fault interrupters
- ➤ Proper use of tools and machine guards
- ➤ Warning signs and Barricades
- ➤ Confined Space Hazards
- ➤ Excavation Hazards
- ➤ Scaffold Hazards
- ➤ Material Handling
- ➤ Lock Out, Tag Out
- ➤ General Housekeeping
- ➤ Fatigue Management
- ➤ Heat Stress
- ➤ Drug, Alcohol, Weapons
- ➤ Discipline
- ➤ Contact Information



This document may be used in application for any Cypress Energy Partners L.P. Company or organization including Tulsa Inspection Resources, Brown Integrity, Cypress Water Environmental Services etc....

2017

# EXHIBIT A4

 **_Tulsa Inspection Resources, LLC_**

As part of its employment screening procedures, **TULSA INSPECTION RESOURCES, LLC, and its clients** (hereafter collectively referred to as the "Company") may require that motor vehicle reports be completed now and from time-to-time in connection with any application for employment, promotion, assignment, reassignment or retention as an employee.

I, _____, give the Company and its designees permission and authority to complete a background check on my driving record regarding my past and current activities. I understand and consent to an investigation that may include, but are not limited to, information regarding my driving record and other relevant information. I understand and agree that, if hired, this authorization shall remain on file and shall serve as an ongoing authorization for the Company to procure motor vehicle information for employment purposes at any time during my employment period.

Further, I hereby release the Company, its representatives and agents from all liability and responsibility, without reservation, for utilizing such motor vehicle report information in connection with evaluating me for employment, promotion, reassignment or retention as an employer.

| Becker | Michael | J | |
|---|---|---|---|
| Legal Name - Last | First | Middle | Social Security Number |
| | | Norman | Ok      73072 |
| Current Street Address | City | | State      Zip Code |
| | Ok | 2-28-20 | |
| Driver's License No. | Issuing State | Expiration Date | Date of Birth |
| Michael Becker | | | 9-24-18 |
| Signature | | | Date |

PLEASE NOTE: Date of Birth is required and will be used exclusively to verify background information.

**5727 S. Lewis Ave., Ste. 300, Tulsa, OK 74105, 918-274-1100 office, 918-274-1102 fax**

12/10/2015

# EXHIBIT A5

DocuSign Envelope ID: 4935289F-D06A-4768-8F6B-B1C1047E9B95

# Consent Form for Electronic Distribution of Materials

Under the Employee Retirement Income Security Act of 1974 (ERISA) and related regulations, employee consent must be given in order to receive electronic copies of employee benefits materials in certain situations.

The purpose of this notice is to inform you that Cypress Energy Management-TIR, LLC uses electronic distribution of notices about your employee benefits and employment information. Such notices will include (but not be limited to) newsletters, enrollment announcements, Summary Plan Descriptions (SPDs), Summaries of Material Modifications (SMMs), Summary Annual Reports (SARs), COBRA notices, Summaries of Benefits and Coverage, Health Insurance Marketplace Notices and HIPAA certificates of creditable coverage.

All required notices are accessible at https://n31.ultipro.com/login.aspx. After logging into UltiPro, hover over Myself, then click Links under Benefits.

In order for us to send these notices to you electronically, you must consent to receive notices electronically by signing the form below. Prior to consenting, you should understand that:

- When a new benefit notice, announcement, newsletter, SPD or other document is posted to the Internet, you will receive a notification at the email address you provide to inform you of the availability of the document.

- You have the right to withdraw your consent to electronic distribution at any time at no charge to you. To withdraw consent, you must notify Human Resources in writing at 5727 S Lewis Ave. Suite 300 Tulsa, OK 74105 or by email at hr@tulsainspection.com.

- If you consent to electronic distribution, you may still request a paper version of any document free of charge.

- All benefit notices, including SPDs and plan amendments, will be available on the Internet at https://n31.ultipro.com/login.aspx After logging into UltiPro, hover over Myself, then click Links under Benefits. If you do not have access to the Internet, or if you do not have the programs necessary to view this type of file, **you should notify HR in writing or by email at the address above.**

- To withdraw your consent or update your email address, please contact Human Resources in writing at 5727 S Lewis Ave. Suite 300 Tulsa, OK 74105 or by email at hr@tulsainspection.com.

- I consent to the electronic disclosure of all Employee Benefit notices, including Summary Plan Descriptions and plan amendments.

I acknowledge that I have read the contents of this notice and understand that I am entitled to withdraw my consent at any time at no cost to myself. I understand that I have the right to receive paper copies of all Employee Benefit notices, including Summary Plan Descriptions and plan amendments, upon request at no additional charge. I also confirm that I have the ability and the necessary equipment and software to access the Employee Benefits websites, view the documents and print copies, unless I have notified HR in writing at the address above.

First: Michael    MI: J    Last: Becker

DocuSigned by:

DB3E44BAD5A8460...

EMPLOYEE SIGNATURE

9/13/2018 | 10:30 PM CDT

DATE

10/2016

# EXHIBIT A6



### *Cypress Energy Management – TIR, LLC*
### *On Behalf of Tulsa Inspection Resources, LLC*

## INSPECTOR PAY OFFER

Employee Name: JORDAN BECKER

Phone #: █████████

Client: DELEK LOGISTICS PARTNERS, LP

Client Contact: WILLIAM EDWARDS

Job Classification: E&I TECHNICIAN

Email: William.edwards@deleklogisti

Anticipated Start Day: 9/16/2018

Project:: BSH Project

PAY PACKAGE:

$ 350.00   Salary PWD

$ 191.00   Per Diem PWD

$ 191.00   Per Diem PNWD

$ 0.545    Mileage (work related not commute)

$ 55.00    Vehicle Mileage PWD

$ 35.00    Communications* Pkg PWD

$ 10.00    Safety Equipment PWD

*Communications package includes computer, cell phone, digital camera, and air card.

Pay offer is based upon your current classification and our agreement with the client. Should your classification or our agreement with the client change, the rate of pay and terms of employment will be subject to the same change(s).

-------------------------------------------------------------------------------------------------------------------------

- Per Diem, when applicable, will be paid both days worked and non-work day(s), whereby company requests inspector to remain on the project site.
  Inspectors to remain on the project site. Per Diem will be paid.
- Each inspector is responsible for furnishing work-related clothing, the ordinary tools of their trade, and standard safety personal protective equipment (such as hardhat, safety

glasses, work boots, etc.) (FRCs and/or steel-toed boots, if required).
- Equipment and expense reimbursement, if any, will be paid at pre-approved and authorized rates.
- If ATV/UTV is used, you will receive a 1099 at year end for tax purposes.
- Any mobilization and demobilization contingent upon full completion of job duties for project.
  - 0-500 miles = 1 day with a maximum of (3) days plus miles.
  - Demobilization will not be paid for if terminated for cause.

Revised March 2017

# EXHIBIT A7



Cypress Energy Management TIR, LLC
5727 S Lewis Ave Ste 300
Tulsa, OK 74105-7146
918-274-1100

| Pay Statement | |
|---|---|
| Period Start Date | 09/16/2018 |
| Period End Date | 09/22/2018 |
| Pay Date | 10/05/2018 |
| Document | 557478 |
| Net Pay | $3,904.87 |

## Pay Details

| Michael J Becker | | Employee Number | 202790 | Pay Group | TIR2 | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Tax Location | Oklahoma | OK State Income Tax (Residence) | M 1 |
| Norman, OK 73072 | | Job | Inspector Elec & Instr | Subsidiary | TIR - TIR | OK State Income Tax (Work) | M 1 |
| USA | | Pay Rate | $0.0000 | Division | INSP - INSPECTION | | |
| | | Pay Frequency | Weekly | Class | OPS - OPERATIONS | | |

## Earnings

| Pay Type | Hours | Pay Rate | Piece Units | Day Rate | Current | YTD |
|---|---|---|---|---|---|---|
| Day Rate | 6.0000 | | 1.000000 | $350.00 | $2,100.00 | $2,100.00 |
| Equipment Comm | 6.0000 | | 1.000000 | $35.00 | $210.00 | $210.00 |
| Equipment Safty | 6.0000 | | 1.000000 | $10.00 | $60.00 | $60.00 |
| MILEAGE | 998.0000 | $0.0000 | | | $543.92 | $543.92 |
| Mileage-Other | 6.0000 | | 1.000000 | $55.00 | $330.00 | $330.00 |
| Per Diem | 6.0000 | | 1.000000 | $191.00 | $1,146.00 | $1,146.00 |
| Reg Earnings | 72.0000 | $0.0000 | | | $0.00 | $0.00 |

| Total Hours Worked  72.0000 | Total Hours  78.0000 |
|---|---|

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
|---|---|---|---|---|---|---|
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $2,100.00 | $239.40 | $239.40 |
| Employee Medicare | $2,100.00 | $30.45 | $30.45 |
| Social Security Employee Tax | $2,100.00 | $130.20 | $130.20 |
| OK State Income Tax | $2,100.00 | $85.00 | $85.00 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx1159 | Checking | $3,904.87 |
| Total | | $3,904.87 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $4,389.92 | $2,100.00 | $485.05 | $0.00 | $3,904.87 |
| YTD | $4,389.92 | $2,100.00 | $485.05 | $0.00 | $3,904.87 |



Cypress Energy Management TIR, LLC
5727 S Lewis Ave Ste 300
Tulsa, OK 74105-7146
918-274-1100

| Pay Statement | |
|---|---|
| Period Start Date | 09/23/2018 |
| Period End Date | 09/29/2018 |
| Pay Date | 10/12/2018 |
| Document | 559128 |
| Net Pay | $3,856.07 |

## Pay Details

| Michael J Becker | | Employee Number | 202790 | Pay Group | TIR2 | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Tax Location | Oklahoma | OK State Income Tax (Residence) | M 1 |
| Norman, OK 73072 | | Job | Inspector Elec & Instr | Subsidiary | TIR - TIR | OK State Income Tax (Work) | M 1 |
| USA | | Pay Rate | $0.0000 | Division | INSP - INSPECTION | | |
| | | Pay Frequency | Weekly | Class | OPS - OPERATIONS | | |

## Earnings

| Pay Type | Hours | Pay Rate | Piece Units | Day Rate | Current | YTD |
|---|---|---|---|---|---|---|
| Day Rate | 6.0000 | | 1.000000 | $350.00 | $2,100.00 | $4,200.00 |
| Equipment Comm | 6.0000 | | 1.000000 | $35.00 | $210.00 | $420.00 |
| Equipment Safty | 6.0000 | | 1.000000 | $10.00 | $60.00 | $120.00 |
| MILEAGE | 558.0000 | $0.0000 | | | $304.12 | $848.04 |
| Mileage-Other | 6.0000 | | 1.000000 | $55.00 | $330.00 | $660.00 |
| Per Diem | 6.0000 | | 1.000000 | $191.00 | $1,146.00 | $2,292.00 |
| Per Diem-Other | 1.0000 | | 1.000000 | $191.00 | $191.00 | $191.00 |
| Reg Earnings | 65.0000 | $0.0000 | | | $0.00 | $0.00 |

| Total Hours Worked 65.0000 | Total Hours 71.0000 |
|---|---|

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $2,100.00 | $239.40 | $478.80 |
| Employee Medicare | $2,100.00 | $30.45 | $60.90 |
| Social Security Employee Tax | $2,100.00 | $130.20 | $260.40 |
| OK State Income Tax | $2,100.00 | $85.00 | $170.00 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx1159 | Checking | $3,856.07 |
| Total | | $3,856.07 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $4,341.12 | $2,100.00 | $485.05 | $0.00 | $3,856.07 |
| YTD | $8,731.04 | $4,200.00 | $970.10 | $0.00 | $7,760.94 |



Cypress Energy Management TIR, LLC
5727 S Lewis Ave Ste 300
Tulsa, OK 74105-7146
918-274-1100

| Pay Statement | |
| --- | --- |
| Period Start Date | 09/30/2018 |
| Period End Date | 10/06/2018 |
| Pay Date | 10/19/2018 |
| Document | 560534 |
| Net Pay | $2,723.08 |

## Pay Details

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Michael J Becker | Employee Number | 202790 | Pay Group | TIR2 | Federal Income Tax | M 1 |
| | SSN | XXX-XX-XXXX | Tax Location | Oklahoma | OK State Income Tax (Residence) | M 1 |
| Norman, OK 73072 | Job | Inspector Elec & Instr | Subsidiary | TIR - TIR | OK State Income Tax (Work) | M 1 |
| USA | Pay Rate | $0.0000 | Division | INSP - INSPECTION | | |
| | Pay Frequency | Weekly | Class | OPS - OPERATIONS | | |

## Earnings

| Pay Type | Hours | Pay Rate | Piece Units | Day Rate | Current | YTD |
| --- | --- | --- | --- | --- | --- | --- |
| Day Rate | 4.0000 | | 1.000000 | $350.00 | $1,400.00 | $5,600.00 |
| Equipment Comm | 4.0000 | | 1.000000 | $35.00 | $140.00 | $560.00 |
| Equipment Safty | 4.0000 | | 1.000000 | $10.00 | $40.00 | $160.00 |
| MILEAGE | 458.0000 | $0.0000 | | | $249.62 | $1,097.66 |
| Mileage-Other | 4.0000 | | 1.000000 | $55.00 | $220.00 | $880.00 |
| Per Diem | 4.0000 | | 1.000000 | $191.00 | $764.00 | $3,056.00 |
| Per Diem-Other | 1.0000 | | 1.000000 | $191.00 | $191.00 | $382.00 |
| Reg Earnings | 48.0000 | $0.0000 | | | $0.00 | $0.00 |

| Total Hours Worked 48.0000 | Total Hours 52.0000 |
| --- | --- |

## Deductions

| | | | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $1,400.00 | $124.44 | $603.24 |
| Employee Medicare | $1,400.00 | $20.30 | $81.20 |
| Social Security Employee Tax | $1,400.00 | $86.80 | $347.20 |
| OK State Income Tax | $1,400.00 | $50.00 | $220.00 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx1159 | Checking | $2,723.08 |
| Total | | $2,723.08 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,004.62 | $1,400.00 | $281.54 | $0.00 | $2,723.08 |
| YTD | $11,735.66 | $5,600.00 | $1,251.64 | $0.00 | $10,484.02 |



Cypress Energy Management TIR, LLC
5727 S Lewis Ave Ste 300
Tulsa, OK 74105-7146
918-274-1100

| Pay Statement | |
| --- | --- |
| Period Start Date | 10/07/2018 |
| Period End Date | 10/13/2018 |
| Pay Date | 10/26/2018 |
| Document | 561944 |
| Net Pay | $3,869.15 |

## Pay Details

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| Michael J Becker | Employee Number | 202790 | Pay Group | TIR2 | Federal Income Tax M 1 |
| | SSN | XXX-XX-XXXX | Tax Location | Oklahoma | OK State Income Tax (Residence) M 1 |
| Norman, OK 73072 | Job | Inspector Elec & Instr | Subsidiary | TIR - TIR | OK State Income Tax (Work) M 1 |
| USA | Pay Rate | $0.0000 | Division | INSP - INSPECTION | |
| | Pay Frequency | Weekly | Class | OPS - OPERATIONS | |

## Earnings

| Pay Type | Hours | Pay Rate | Piece Units | Day Rate | Current | YTD |
| --- | --- | --- | --- | --- | --- | --- |
| Day Rate | 6.0000 | | 1.000000 | $350.00 | $2,100.00 | $7,700.00 |
| Equipment Comm | 6.0000 | | 1.000000 | $35.00 | $210.00 | $770.00 |
| Equipment Safty | 6.0000 | | 1.000000 | $10.00 | $60.00 | $220.00 |
| MILEAGE | 582.0000 | $0.0000 | | | $317.20 | $1,414.86 |
| Mileage-Other | 6.0000 | | 1.000000 | $55.00 | $330.00 | $1,210.00 |
| Per Diem | 6.0000 | | 1.000000 | $191.00 | $1,146.00 | $4,202.00 |
| Per Diem-Other | 1.0000 | | 1.000000 | $191.00 | $191.00 | $573.00 |
| Reg Earnings | 68.0000 | $0.0000 | | | $0.00 | $0.00 |

| Total Hours Worked  68.0000 | Total Hours  74.0000 |
| --- | --- |

## Deductions

| | | | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $2,100.00 | $239.40 | $842.64 |
| Employee Medicare | $2,100.00 | $30.45 | $111.65 |
| Social Security Employee Tax | $2,100.00 | $130.20 | $477.40 |
| OK State Income Tax | $2,100.00 | $85.00 | $305.00 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx1159 | Checking | $3,869.15 |
| Total | | $3,869.15 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $4,354.20 | $2,100.00 | $485.05 | $0.00 | $3,869.15 |
| YTD | $16,089.86 | $7,700.00 | $1,736.69 | $0.00 | $14,353.17 |



Cypress Energy Management TIR, LLC
5727 S Lewis Ave Ste 300
Tulsa, OK 74105-7146
918-274-1100

| Pay Statement | |
|---|---|
| Period Start Date | 10/14/2018 |
| Period End Date | 10/20/2018 |
| Pay Date | 11/02/2018 |
| Document | 563355 |
| Net Pay | $3,929.15 |

## Pay Details

| Michael J Becker | | Employee Number | 202790 | Pay Group | TIR2 | Federal Income Tax | M | 1 |
|---|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Tax Location | Oklahoma | OK State Income Tax (Residence) | M | 1 |
| Norman, OK 73072 | | Job | Inspector Elec & Instr | Subsidiary | TIR - TIR | OK State Income Tax (Work) | M | 1 |
| USA | | Pay Rate | $0.0000 | Division | INSP - INSPECTION | | | |
| | | Pay Frequency | Weekly | Class | OPS - OPERATIONS | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Piece Units | Day Rate | Current | YTD |
|---|---|---|---|---|---|---|
| Day Rate | 6.0000 | | 1.000000 | $350.00 | $2,100.00 | $9,800.00 |
| Equipment Comm | 6.0000 | | 1.000000 | $35.00 | $210.00 | $980.00 |
| Equipment Safty | 6.0000 | | 1.000000 | $10.00 | $60.00 | $280.00 |
| MILEAGE | 694.0000 | $0.0000 | | | $378.24 | $1,793.10 |
| Mileage-Other | 6.0000 | | 1.000000 | $55.00 | $330.00 | $1,540.00 |
| Per Diem | 6.0000 | | 1.000000 | $191.00 | $1,146.00 | $5,348.00 |
| Per Diem-Other | 1.0000 | | 1.000000 | $191.00 | $191.00 | $764.00 |
| Reg Earnings | 69.0000 | $0.0000 | | | $0.00 | $0.00 |

| Total Hours Worked  69.0000 | Total Hours  75.0000 |
|---|---|

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| Vol Life Insp | $10,000.00 | No | $1.04 | $1.04 | $0.00 | $0.00 |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $2,100.00 | $239.40 | $1,082.04 |
| Employee Medicare | $2,100.00 | $30.45 | $142.10 |
| Social Security Employee Tax | $2,100.00 | $130.20 | $607.60 |
| OK State Income Tax | $2,100.00 | $85.00 | $390.00 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx1159 | Checking | $3,929.15 |
| Total | | $3,929.15 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $4,415.24 | $2,100.00 | $485.05 | $1.04 | $3,929.15 |
| YTD | $20,505.10 | $9,800.00 | $2,221.74 | $1.04 | $18,282.32 |



Cypress Energy Management TIR, LLC
5727 S Lewis Ave Ste 300
Tulsa, OK 74105-7146
918-274-1100

| Pay Statement | |
| --- | --- |
| Period Start Date | 10/21/2018 |
| Period End Date | 10/27/2018 |
| Pay Date | 11/09/2018 |
| Document | 564556 |
| Net Pay | $4,021.25 |

## Pay Details

| Michael J Becker | | Employee Number | 202790 | Pay Group | TIR2 | Federal Income Tax | M 1 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | SSN | XXX-XX-XXXX | Tax Location | Oklahoma | OK State Income Tax (Residence) | M 1 |
| Norman, OK 73072 | | Job | Inspector Elec & Instr | Subsidiary | TIR - TIR | OK State Income Tax (Work) | M 1 |
| USA | | Pay Rate | $0.0000 | Division | INSP - INSPECTION | | |
| | | Pay Frequency | Weekly | Class | OPS - OPERATIONS | | |

## Earnings

| Pay Type | Hours | Pay Rate | Piece Units | Day Rate | Current | YTD |
| --- | --- | --- | --- | --- | --- | --- |
| Day Rate | 6.0000 | | 1.000000 | $350.00 | $2,100.00 | $11,900.00 |
| Equipment Comm | 6.0000 | | 1.000000 | $35.00 | $210.00 | $1,190.00 |
| Equipment Safty | 6.0000 | | 1.000000 | $10.00 | $60.00 | $340.00 |
| MILEAGE | 863.0000 | $0.0000 | | | $470.34 | $2,263.44 |
| Mileage-Other | 6.0000 | | 1.000000 | $55.00 | $330.00 | $1,870.00 |
| Per Diem | 6.0000 | | 1.000000 | $191.00 | $1,146.00 | $6,494.00 |
| Per Diem-Other | 1.0000 | | 1.000000 | $191.00 | $191.00 | $955.00 |
| Reg Earnings | 78.0000 | $0.0000 | | | $0.00 | $0.00 |

| Total Hours Worked 78.0000 | Total Hours 84.0000 |
| --- | --- |

## Deductions

| | | | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| Vol Life Insp | $10,000.00 | No | $1.04 | $2.08 | $0.00 | $0.00 |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $2,100.00 | $239.40 | $1,321.44 |
| Employee Medicare | $2,100.00 | $30.45 | $172.55 |
| Social Security Employee Tax | $2,100.00 | $130.20 | $737.80 |
| OK State Income Tax | $2,100.00 | $85.00 | $475.00 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx1159 | Checking | $4,021.25 |
| Total | | $4,021.25 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $4,507.34 | $2,100.00 | $485.05 | $1.04 | $4,021.25 |
| YTD | $25,012.44 | $11,900.00 | $2,706.79 | $2.08 | $22,303.57 |

# EXHIBIT A8

**Form W-2 Wage & Tax Statement 2018**
**Copy B - To Be Filed With Employee's FEDERAL Tax Return.**

This information is being furnished to the Internal Revenue Service.

Department of the Treasury - Internal Revenue Service                                    OMB No. 1545-0008

| a Employee's social security number ███████ | 1 Wages, tips, other compensation 11900.00 | 2 Federal income tax withheld 1321.44 |
|---|---|---|
| c Employer's name, address, and ZIP code<br><br>Cypress Energy Management TIR, LLC<br>5727 S Lewis Ave Ste 300<br>Tulsa, OK 74105-7146<br>USA | 3 Social security wages 11900.00 | 4 Social security tax withheld 737.80 |
| | 5 Medicare wages and tips 11900.00 | 6 Medicare tax withheld 172.55 |
| | 7 Social security tips 0.00 | 8 Allocated tips 0.00 |
| b Employer identification number (EIN) 46-4295803 | 9 Verification code | 10 Dependent care benefits 0.00 |
| e Employee's name, address, and ZIP code<br>Michael J Becker<br>███████<br><br>Norman, OK 73072 | 11 Nonqualified plans 0.00 | 13 Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ |
| | 12 See instructions for box 12 | 14 Other |

| 15 State | Employer's state ID No. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| OK | WTH-13929729-02 | 11900.00 | 475.00 | | | |

**Form W-2 Wage & Tax Statement 2018**
**Copy 2 - To Be Filed With Employee's State, City, or Local Income Tax Return.**

Department of the Treasury - Internal Revenue Service                                    OMB No. 1545-0008

| **a** Employee's social security number | **1** Wages, tips, other compensation | **2** Federal income tax withheld |
|---|---|---|
| ▮▮▮▮▮▮▮ | 11900.00 | 1321.44 |

| **c** Employer's name, address, and ZIP code | **3** Social security wages | **4** Social security tax withheld |
|---|---|---|
| Cypress Energy Management TIR, LLC | 11900.00 | 737.80 |
| 5727 S Lewis Ave Ste 300 | **5** Medicare wages and tips | **6** Medicare tax withheld |
| Tulsa, OK 74105-7146 | 11900.00 | 172.55 |
| USA | **7** Social security tips | **8** Allocated tips |
|  | 0.00 | 0.00 |

| **b** Employer identification number (EIN) | **9** Verification code | **10** Dependent care benefits |
|---|---|---|
| 46-4295803 |  | 0.00 |

| **e** Employee's name, address, and ZIP code | **11** Nonqualified plans | **13** Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ |
|---|---|---|
| ▮▮▮▮▮▮▮ | 0.00 |  |
| 1113 Gleneagles Ct |  |  |
| Norman, OK 73072 | **12** See instructions for box 12 | **14** Other |

| 15 State | Employer's state ID No. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| OK | WTH-13929729-02 | 11900.00 | 475.00 |  |  |  |

**Form W-2 Wage & Tax Statement 2018**
**Copy C-For EMPLOYEE'S RECORDS.**

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

Department of the Treasury - Internal Revenue Service

OMB No. 1545-0008

| a Employee's social security number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| ███████ | 11900.00 | 1321.44 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| | 11900.00 | 737.80 |
| Cypress Energy Management TIR, LLC | **5** Medicare wages and tips | **6** Medicare tax withheld |
| 5727 S Lewis Ave Ste 300 | 11900.00 | 172.55 |
| Tulsa, OK 74105-7146 | **7** Social security tips | **8** Allocated tips |
| USA | 0.00 | 0.00 |

| b Employer identification number (EIN) | 9 Verification code | 10 Dependent care benefits |
|---|---|---|
| 46-4295803 | | 0.00 |

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 13 Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ |
|---|---|---|
| ███████ | 0.00 | |
| 1113 Gleneagles Ct | | |
| Norman, OK 73072 | **12** See instructions for box 12 | **14** Other |

| 15 State | Employer's state ID No. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| OK | WTH-13929729-02 | 11900.00 | 475.00 | | | |

**1. The following information reflects your final pay statement plus employer adjustments that comprise your W-2 statement.**

| Earnings Description | Wages, Tips, Other Comp. | Social Security Wages | Medicare Wages |
|---|---|---|---|
| Gross Wages | 25012.44 | 25012.44 | 25012.44 |
| Less Exempt Wages | - 13112.44 | - 13112.44 | - 13112.44 |
| Less Deferred Comp | - 0.00 | | |
| Less Housing/Transportation | - 0.00 | - 0.00 | - 0.00 |
| Less Dependent Care | - 0.00 | - 0.00 | - 0.00 |
| Less Sec 125 | - 0.00 | - 0.00 | - 0.00 |
| Less Excess Wages | | - 0.00 | |
| Taxable Wages | 11900.00 | 11900.00 | 11900.00 |
| (Reported on Form W2) | Box 1 of W-2 | Box 3 of W-2 | Box 5 of W-2 |

**2. Employee W-4 profile to change your Employee W-4 profile information, file a new W-4 with the payroll department**

FIT: **M  1**          SIT Res: **OKSIT  M  1**          SIT Work: **OKSIT  M  1**

**Notice to Employee**

**Do you have to file?** Refer to the Form 1040 instructions to determine if you are required to file a tax return. Even if you don't have to file a tax return, you may be eligible for a refund if box 2 shows an amount or if you are eligible for any credit.

**Earned income credit (EIC).** You may be able to take the EIC for 2018 if your adjusted gross income (AGI) is less than a certain amount. The amount of the credit is based on income and family size. Workers without children could qualify for a smaller credit. You and any qualifying children must have valid social security numbers (SSNs). You can't take the EIC if your investment income is more than the specified amount for 2018 or if income is earned for services provided while you were an inmate at a penal institution. For 2018 income limits and more information, visit www.irs.gov/EITC. Also see Pub. 596, Earned Income Credit. **Any EIC that is more than your tax liability is refunded to you, but only if you file a tax return.**

**Clergy and religious workers.** If you aren't subject to social security and Medicare taxes, see Pub. 517, Social Security and Other Information for Members of the Clergy and Religious Workers.

**Corrections.** If your name, SSN, or address is incorrect, correct Copies B, C, and 2 and ask your employer to correct your employment record. Be sure to ask the employer to file Form W-2c, Corrected Wage and Tax Statement, with the Social Security Administration (SSA) to correct any name, SSN, or money amount error reported to the SSA on Form W-2. Be sure to get your copies of Form W-2c from your employer for all corrections made so you may file them with your tax return. If your name and SSN are correct but aren't the same as shown on your social security card, you should ask for a new card that displays your correct name at any SSA office or by calling 800-772-1213. You may also visit the SSA website at www.SSA.gov.

**Cost of employer-sponsored health coverage (if such cost is provided by the employer).** The reporting in box 12, using code DD, of the cost of employer-sponsored health coverage is for your information only. **The amount reported with code DD is not taxable.**

**Credit for excess taxes.** If you had more than one employer in 2018 and more than $7,960.80 in social security and/or Tier 1 railroad retirement (RRTA) taxes were withheld, you may be able to claim a credit for the excess against your federal income tax. If you had more than one railroad employer and more than $4,674.60 in Tier 2 RRTA tax was withheld, you also may be able to claim a credit. See your Form 1040 instructions and Pub. 505, Tax Withholding and Estimated Tax.

**Instructions for Employee**

**Box 1.** Enter this amount on the wages line of your tax return.

**Box 2.** Enter this amount on the federal income tax withheld line of your tax return.

**Box 5.** You may be required to report this amount on Form 8959, Additional Medicare Tax. See the Form 1040 instructions to determine if you are required to complete Form 8959.

**Box 6.** This amount includes the 1.45% Medicare Tax withheld on all Medicare wages and tips shown in box 5, as well as the 0.9% Additional Medicare Tax on any of those Medicare wages and tips above $200,000.

**Box 8.** This amount is **not** included in box 1, 3, 5, or 7. For information on how to report tips on your tax return, see your Form 1040 instructions.

You must file Form 4137, Social Security and Medicare Tax on Unreported Tip Income, with your income tax return to report at least the allocated tip amount unless you can prove that you received a smaller amount. If you have records that show the actual amount of tips you received, report that amount even if it is more or less than the allocated tips. On Form 4137 you will calculate the social security and Medicare tax owed on the allocated tips shown on your Form(s) W-2 that you must report as income and on other tips you did not report to your employer. By filing Form 4137, your social security tips will be credited to

**Box 9.** If you are e-filing and if there is a code in this box, enter it when prompted by your software. The only valid characters are the letters A-F and the digits 0-9. This code assists the IRS in validating the W-2 data submitted with your return. The code is not entered on paper-filed returns.

**Box 10.** This amount includes the total dependent care benefits that your employer paid to you or incurred on your behalf (including amounts from a section 125 (cafeteria) plan). Any amount over $5,000 also is included in box 1. Complete Form 2441, Child and Dependent Care Expenses, to compute any taxable and nontaxable amounts.

**Box 11.** This amount is (a) reported in box 1 if it is a distribution made to you from a nonqualified deferred compensation or nongovernmental section 457(b) plan, or (b) included in box 3 and/or 5 if it is a prior year deferral under a nonqualified or section 457(b) plan that became taxable for social security and Medicare taxes this year because there is no longer a substantial risk of forfeiture of your right to the deferred amount. This box shouldn't be used if you had a deferral and a distribution in the same calendar year. If you made a deferral and received a distribution in the same calendar year, and you are or will be age 62 by the end of the calendar year, your employer should file Form SSA-131, Employer Report of Special Wage Payments, with the Social Security Administration and give you a copy.

your social security record (used to figure your benefits).

**Box 12.** The following list explains the codes shown in box 12. You may need this information to complete your tax return. Elective deferrals (codes D, E, F, and S) and designated Roth contributions (codes AA, BB, and EE) under all plans are generally limited to a total of $18,500 ($12,500 if you only have SIMPLE plans; $21,500 for section 403(b) plans if you qualify for the 15-year rule explained in Pub. 571). Deferrals under code G are limited to $18,500. Deferrals under code H are limited to $7,000.

However, if you were at least age 50 in 2018, your employer may have allowed an additional deferral of up to $6,000 ($3,000 for section 401(k)(11) and 408(p) SIMPLE plans). This additional deferral amount is not subject to the overall limit on elective deferrals. For code G, the limit on elective deferrals may be higher for the last 3 years before you reach retirement age. Contact your plan administrator for more information. Amounts in excess of the overall elective deferral limit must be included in income. See the instructions for Form 1040.

**Note:** If a year follows code D through H, S, Y, AA, BB, or EE, you made a make-up pension contribution for a prior year(s) when you were in military service. To figure whether you made excess deferrals, consider these amounts for the year shown, not the current year. If no year is shown, the contributions are for the current year.

**A**—Uncollected social security or RRTA tax on tips. Include this tax on Form 1040. See the Form 1040 instructions.

**B**—Uncollected Medicare tax on tips. Include this tax on Form 1040. See the Form 1040 instructions.

**C**—Taxable cost of group-term life insurance over $50,000 (included in boxes 1, 3 (up to social security wage base), and 5)

**D**—Elective deferrals to a section 401(k) cash or deferred arrangement. Also includes deferrals under a SIMPLE retirement account that is part of a section 401(k) arrangement.

**E**—Elective deferrals under a section 403(b) salary reduction agreement

**F**—Elective deferrals under a section 408(k)(6) salary reduction SEP

**G**—Elective deferrals and employer contributions (including nonelective deferrals) to a section 457(b) deferred compensation plan

**H**—Elective deferrals to a section 501(c)(18)(D) tax-exempt organization plan. See the Form 1040 instructions for how to deduct.

**J**—Nontaxable sick pay (information only, not included in box 1, 3, or 5)

**K**—20% excise tax on excess golden parachute payments. See the Form 1040 instructions.

**L**—Substantiated employee business expense reimbursements (nontaxable)

**M**—Uncollected social security or RRTA tax on taxable cost of groupterm life insurance over $50,000 (former employees only). See the Form 1040 instructions.

**N**—Uncollected Medicare tax on taxable cost of group-term life insurance over $50,000 (former employees only). See the Form 1040 instructions.

**P**—Excludable moving expense reimbursements paid directly to a member of the U.S. Armed Forces (not included in box 1, 3, or 5)

**Q**—Nontaxable combat pay. See the instructions for Form 1040 for details on reporting this amount.

**R**—Employer contributions to your Archer MSA. Report on Form 8853, Archer MSAs and Long-Term Care Insurance Contracts.

**S**—Employee salary reduction contributions under a section 408(p) SIMPLE plan (not included in box 1)

**T**—Adoption benefits (not included in box 1). Complete Form 8839, Qualified Adoption Expenses, to compute any taxable and nontaxable amounts.

**V**—Income from exercise of nonstatutory stock option(s) (included in boxes 1, 3 (up to social security wage base), and 5). See Pub. 525, Taxable and Nontaxable Income, for reporting requirements.

**W**—Employer contributions (including amounts the employee elected to contribute using a section 125 (cafeteria) plan) to your health savings account. Report on Form 8889, Health Savings Accounts (HSAs).

**Y**—Deferrals under a section 409A nonqualified deferred compensation plan

**Z**—Income under a nonqualified deferred compensation plan that fails to satisfy section 409A. This amount also is included in box 1. It is subject to an additional 20% tax plus interest. See the Form 1040 instructions.

**AA**—Designated Roth contributions under a section 401(k) plan

**BB**—Designated Roth contributions under a section 403(b) plan

**DD**—Cost of employer-sponsored health coverage. **The amount reported with code DD is not taxable.**

**EE**—Designated Roth contributions under a governmental section 457(b) plan. This amount does not apply to contributions under a taxexempt organization section 457(b) plan.

**FF**—Permitted benefits under a qualified small employer health reimbursement arrangement

**GG**—Income from qualified equity grants under section 83(i)

**HH**—Aggregate deferrals under section 83(i) elections as of the close of the calendar year

**Box 13.** If the "Retirement plan" box is checked, special limits may apply to the amount of traditional IRA contributions you may deduct. See Pub. 590-A, Contributions to Individual Retirement Arrangements (IRAs).

**Box 14.** Employers may use this box to report information such as state disability insurance taxes withheld, union dues, uniform payments, health insurance premiums deducted, nontaxable income, educational assistance payments, or a member of the clergy's parsonage allowance and utilities. Railroad employers use this box to report railroad retirement (RRTA) compensation, Tier 1 tax, Tier 2 tax, Medicare tax and Additional Medicare Tax. Include tips reported by the employee to the employer in railroad retirement (RRTA) compensation.

**Note:** Keep **Copy C** of Form W-2 for at least 3 years after the due date for filing your income tax return. However, to help **protect your social security benefits**, keep Copy C until you begin receiving social security benefits, just in case there is a question about your work record and/or earnings in a particular year.

# EXHIBIT 9

*Altenhofen v. Energy Transfer Partners, L.P.*, No. 2:20-cv-200-CB
(W.D. Pa.)

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Robert C. Chilcote

1. I hereby consent to make a claim against _____ / Energy Transfer Partners to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ / Energy Transfer Partners.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Robert C. Chilcote*
Robert C. Chilcote (Feb 19, 2020)

Date Signed: Feb 19, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Mark S. Cagle

1. I hereby consent to make a claim against ___/ Sunoco Logistics___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___/ Sunoco Logistics___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Mark S. Cagle*
Mark S. Cagle (Mar 30, 2020)

Date Signed: Mar 30, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Dick Foster

1. I hereby consent to make a claim against ___Energy Transfer___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___Energy Transfer___ .

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Dick Foster (Mar 30, 2020)

Date Signed: Mar 30, 2020

EXHIBIT 2

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Brian Matis

1. I hereby consent to make a claim against ___\Sunoco\Energy Transfer___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___\Sunoco\Energy Transfer___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Brian Matis (Mar 31, 2020)

Date Signed: Mar 31, 2020

EXHIBIT 3

## CONSENT TO JOIN WAGE CLAIM

Print Name: _Jessie Rosier_____

1. I hereby consent to participate in a collective action lawsuit against ___Energy Transfer Partners_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the Representative Plaintiff and the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

5. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court on all issues in this case.

Signature: _Jessie Rosier (Mar 30, 2020)_____     Date Signed: _Mar 30, 2020_____

EXHIBIT 4

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Gary D Slaid

1. I hereby consent to make a claim against _____/ Energy Transfer Partners_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____/ Energy Transfer Partners_____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Gary D Slaid*
Gary D Slaid (Mar 27, 2020)

Date Signed: Mar 27, 2020

EXHIBIT 5

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Douglas Thomas

1. I hereby consent to make a claim against _____ / Energy Transfer Partners _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ / Energy Transfer Partners _____ .

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Douglas Thomas*
Douglas Thomas (Mar 30, 2020)

Date Signed: Mar 30, 2020

.

EXHIBIT 6

## CONSENT TO JOIN WAGE CLAIM

Print Name: ___Jason Clark_____

1. I hereby consent to participate in a collective action lawsuit against ___Energy Transfer Partners_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the Representative Plaintiff and the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

5. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court on all issues in this case.

Signature: ___Jason Clark (Apr 4, 2020)_____   Date Signed: ___Apr 4, 2020_____

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Chelsea Dogie

1. I hereby consent to make a claim against ___/ Energy Transfer Partners___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___/ Energy Transfer Partners___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Dave is making changes on report 05 18 2019*      Date Signed: Apr 2, 2020

EXHIBIT 2

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Freddy Rojas

1. I hereby consent to make a claim against _____ / Energy Transfer Partners to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ / Energy Transfer Partners.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Freddy Rojas (Apr 3, 2020)     Date Signed: Apr 3, 2020

EXHIBIT 3

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Clovis Rushing

1. I hereby consent to make a claim against ___Sunoco___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___Sunoco___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Clovis Rushing*
Clovis Rushing (Apr 3, 2020)

Date Signed: Apr 3, 2020

EXHIBIT 4

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Michael Thorpe

1. I hereby consent to make a claim against \Sunoco\Energy Transfer to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against \Sunoco\Energy Transfer.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Michael Thorpe (Apr 5, 2020)

Date Signed: Apr 5, 2020

EXHIBIT 5

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Derek Bowman

1.  I hereby consent to make a claim against _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

    <span style="font-size:small">Energy Transfer Partners</span>

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP. LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____.

    <span style="font-size:small">Energy Transfer Partners</span>

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

    Signature: Derek Bowman (Apr 6, 2020)

    Date Signed: Apr 6, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: _Nicholas Nimmo_____

1. I hereby consent to make a claim against _____ Energy Transfer Partners to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP. LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Energy Transfer Partners.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Nicholas Nimmo (Apr 8, 2020)_____     Date Signed: _Apr 8, 2020_____

EXHIBIT 2

## CONSENT TO JOIN WAGE CLAIM

Print Name: _____Thomas Menas_____

1.  I hereby consent to participate in a collective action lawsuit against _____ Energy Transfer Partners
    to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be
    bound by the Court's decision.

3.  I designate the Representative Plaintiff and the law firm and attorneys at JOSEPHSON DUNLAP, LLP
    and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my
    wage claims, the manner and method of conducting this litigation, the entering of an agreement
    with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this
    lawsuit.

4.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC
    to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration
    against the company.

5.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court on all
    issues in this case.

Signature: _____     Date Signed: _____
Thomas Menas (Apr 10, 2020)                                   Apr 10, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: James King

1. I hereby consent to make a claim against _____ Energy Transfer Partners _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Energy Transfer Partners _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _James King (Apr 18, 2020)_    Date Signed: Apr 18, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Michael Pena

1. I hereby consent to make a claim against _____ Energy Transfer Partners _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Energy Transfer Partners _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Michael Pena (Apr 17, 2020)*

Date Signed: Apr 17, 2020

EXHIBIT 2

*Becker v. Delek US Energy*, No. 3:20-cv-00285 (M.D. Tenn.)

### FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Michael Becker

1. I hereby consent to make a claim against _____ Delek USA _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Delek USA _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Michael Becker (Mar 21, 2020)          Date Signed: Mar 21, 2020

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: freddy rojas

1.  I hereby consent to make a claim against _____/ Delek US_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____/ Delek US_____.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: freddy rojas (Apr 3, 2020)        Date Signed: Apr 3, 2020

EXHIBIT 1

*Shropshire v. Cheniere Energy, Inc.*, No. 4:20-cv-01175 (S.D. Tex.)

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Matthew Brister

1.  I hereby consent to make a claim against _____ Cheniere LNG _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Cleveland Integrity Services / Cheniere LNG _____.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Matthew Brister (Mar 26, 2020)_____    Date Signed: Mar 26, 2020

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Winfrey Garrett

1. I hereby consent to make a claim against ___/ Cheniere LNG___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___/ Cheniere LNG___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Winfrey Garrett (Mar 30, 2020)_          Date Signed: Mar 30, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name:  Floyd E. Shropshire

1. I hereby consent to make a claim against ___/ Cheniere LNG___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___/ Cheniere LNG___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Floyd E. Shropshire*
Floyd E. Shropshire (Apr 1, 2020)

Date Signed:  Apr 1, 2020

EXHIBIT 2

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name:  Chad G Farber

1.  I hereby consent to make a claim against _____s/Cheniere LNG_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____s/Cheniere LNG_____.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Chad G Farber*
Chad G Farber (Apr 3, 2020)

Date Signed: Apr 3, 2020

EXHIBIT 1

*Flynn v. Sanchez Oil & Gas Corp.*, No. 5:19-cv-00867 (W.D. Tex.)

## CONSENT TO JOIN WAGE CLAIM

Print Name: **William Howell**
_____

1. I hereby consent to participate in a collective action lawsuit against _Sanchez Oil & Gas_
   to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: _William Howell_
William Howell (Oct 16, 2018)

Date Signed: **10-16-18**
_____

EXHIBIT 1

**CONSENT TO JOIN WAGE CLAIM**

Print Name: William Moore

1. I hereby consent to participate in a collective action lawsuit against Sanchez Oil & Gas to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: William Moore (Oct 17, 2018)          Date Signed: 10/17/2018

EXHIBIT 2

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Jimmy Gonzales

1. I hereby consent to make a claim against _____ Sanchez Oil & Gas to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Sanchez Oil & Gas.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Jimmy Gonzales (Apr 20, 2020)

Date Signed: Apr 20, 2020

EXHIBIT 1

*Becker v. NES Midstream LLC*, No. 3:20-cv-01153 (N.D. Tex.)

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Dick Foster

1. I hereby consent to make a claim against _____ Navigator Midstream ___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Navigator Midstream ___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Dick Foster (Apr 1, 2020)          Date Signed: Apr 1, 2020

*Hinkle v. Phillips 66 Co.*, No. 4:20-cv-00022 (W.D. Tex.)

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Rick Saintes

1. I hereby consent to make a claim against     Phillips 66     to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against     Phillips 66    .

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Rick Saintes*
Rick Saintes (Mar 30, 2020)

Date Signed: Mar 30, 2020

EXHIBIT 2

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: William M. Stanley

1.  I hereby consent to make a claim against _____ConocoPhillips_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ConocoPhillips_____.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: William M. Stanley (Apr 3, 2020)

Date Signed: Apr 3, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: ThomasJBarba

1. I hereby consent to make a claim against _____ Phillips 66 _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Phillips 66 _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Thomas JBarba*
ThomasJBarba (Apr 20, 2020)

Date Signed: Apr 20, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Thomas Shilling

1. I hereby consent to make a claim against _____ Phillips 66 _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Phillips 66 .

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Thomas Shilling*
Thomas Shilling (Mar 23, 2020)

Date Signed: Mar 23, 2020

EXHIBIT 3

*Lindsey v. Magellan Midstream Partners, L.P.*, No. 4:19-cv-00646 (N.D. Okla.)

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Gary Irwin

1.  I hereby consent to make a claim against ___Magellan Midstream Service___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___Magellan Midstream Service___.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Gary Irwin (Mar 27, 2020)_   Date Signed: Mar 27, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: <u>William Lewis</u>

1. I hereby consent to make a claim against _ _____ `\Magellan Midstream` to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _ _____ `\Magellan Midstream`.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *William Lewis*
William Lewis (Apr 5, 2020)

Date Signed: Apr 5, 2020

EXHIBIT 1

### CONSENT TO JOIN WAGE CLAIM

Print Name: brandon engler
_____

1.  I hereby consent to participate in a collective action lawsuit against _____ Magellan Midstream Partners
    to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be
    bound by the Court's decision.

3.  I designate the Representative Plaintiff and the law firm and attorneys at JOSEPHSON DUNLAP, LLP
    and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my
    wage claims, the manner and method of conducting this litigation, the entering of an agreement
    with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this
    lawsuit.

4.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC
    to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration
    against the company.

5.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court on all
    issues in this case.

Signature: brandon engler (Apr 6, 2020)
_____

Date Signed: Apr 6, 2020
_____

EXHIBIT 1

*Lindsey v. ONEOK, Inc.*, No. 7:19-cv-00284 (W.D. Tex.)

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Michael Becker

1. I hereby consent to make a claim against _____OneOK_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____OneOK_____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Michael Becker (Mar 24, 2020)

Date Signed: Mar 24, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Jerry Fontenot

1. I hereby consent to make a claim against _____ / Oneok to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ / Oneok .

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Jerry Fontenot (Mar 30, 2020)     Date Signed: Mar 30, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: __Mark A. Lucier__

1.  I hereby consent to make a claim against ⎯⎯⎯⎯ / Oneok to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ⎯⎯⎯⎯ / Oneok.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Mark A. Lucier_
Mark A. Lucier (Apr 1, 2020)

Date Signed: __Apr 1, 2020__

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: _Roger Weaver_____

1. I hereby consent to make a claim against _____ Oneok _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP. LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Oneok _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Roger Weaver_____ Date Signed: _Apr 9, 2020_____
Roger Weaver (Apr 9, 2020)

EXHIBIT 1

*Newman v. Plains All-American Pipeline, L.P.*, No. 7:19-cv-00244 (W.D. Tex.)

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Mike Crain

1. I hereby consent to make a claim against _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

   Plains All American Pipeline

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ .

   Plains All American Pipeline

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Mike Crain (Jan 21, 2020)    Date Signed: Jan 21, 2020

EXHIBIT 1

## <u>CONSENT TO JOIN WAGE CLAIM</u>

Print Name: <u>Lon Crow</u>

1. I hereby consent to participate in a collective action lawsuit against <u>/Plains All American</u> to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at JOSEPHSON DUNLAP as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: <u>Lon Crow (Dec 18, 2019)</u>          Date Signed: <u>Dec 18, 2019</u>

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: John W. Smith

1. I hereby consent to make a claim against _____ t/ Plains All American Pipeli to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ t/ Plains All American Pipeli.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *John W. Smith*
John W. Smith (Apr 2, 2020)

Date Signed: Apr 2, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Steve Lang

1. I hereby consent to make a claim against _____Plains All American Pipe_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____Plains All American Pipe_____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Steve Lang (Apr 8, 2020)

Date Signed: Apr 8, 2020

EXHIBIT 1

*Oates v. Kinder Morgan Energy Partners L.P.*, No. 5:19-cv-01171
(W.D. Okla.)

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Lucien Boutte

1. I hereby consent to make a claim against     Kinder Morgan to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against     Kinder Morgan

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Lucien Boutte_
Lucien Boutte (Jan 7, 2020)

Date Signed: Jan 7, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: William delaHoussaye

1. I hereby consent to make a claim against _____Kinder Morgan_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____Kinder Morgan_____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *William delaHoussaye*
William delaHoussaye (Jan 8, 2020)

Date Signed: Jan 8, 2020

EXHIBIT 2

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Robert w.Asch Jr

1.  I hereby consent to make a claim against _____ / Kinder Morgan to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ / Kinder Morgan.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Robert w.Asch Jr*
Robert w.Asch Jr (Mar 26, 2020)

Date Signed: Mar 26, 2020

EXHBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Josef Ricketts

1. I hereby consent to make a claim against _____/Kinder Morgan_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____/Kinder Morgan_____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Josef Ricketts (Mar 31, 2020)      Date Signed: Mar 31, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Floyd E. Shropshire

1. I hereby consent to make a claim against ____Kinder Morgan____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ____Kinder Morgan____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Floyd E. Shropshire*
Floyd E. Shropshire (Apr 1, 2020)

Date Signed: Apr 1, 2020

EXHIBIT 2

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: David Beall

1.  I hereby consent to make a claim against \Kinder Morgan to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against Kinder Morgan.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: David Beall (Apr 3, 2020)          Date Signed: Apr 3, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Bonnie Dautriel

1. I hereby consent to make a claim against _____ Kinder Morgan _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Kinder Morgan _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Bonnie Dautriel*
Bonnie Dautriel (Apr 8, 2020)

Date Signed: Apr 8, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: __markmcmahan__

1. I hereby consent to make a claim against _____Kinder Morgan_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____Kinder Morgan_____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _markmcmahan_
markmcmahan (Apr 12, 2020)

Date Signed: __Apr 12, 2020__

EXHIBIT 1

*Page v. DTE Pipeline Co.*, No. 2:19-cv-01345 (W.D. Pa.)

## CONSENT TO JOIN WAGE CLAIM

Print Name: _Chris Aguilar_____

1. I hereby consent to participate in a collective action lawsuit against _DTE___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the Representative Plaintiff and the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

5. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court on all issues in this case.

Signature: _Chris Aguilar (Oct 25, 2019)_____    Date Signed: _Oct 25, 2019_____

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: <u>Joseph Cad Linsicombe</u>

1. I hereby consent to make a claim against <u>DTE Midstream</u> to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against <u>DTE Midstream</u>.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: <u>Joseph Cad Linsicombe (Mar 31, 2020)</u>     Date Signed: <u>Mar 31, 2020</u>

EXHIBIT 1

*Reeves v. Enterprise Product Partners, L.P.,* No. 4:19-cv-00570
(N.D. Okla.)

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Todd A Orcutt

1. I hereby consent to make a claim against _____Enterprise Products_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____Enterprise Products_____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Todd A Orcutt*
Todd A Orcutt (Jan 10, 2020)

Date Signed: Jan 10, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: __Colin Rice__

1.  I hereby consent to make a claim against _Enterprise Products_ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _Enterprise Products_.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: __Colin Rice__                    Date Signed: __Mar 6, 2020__

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: __Jacky Hamrick_____

1. I hereby consent to make a claim against ___Enterprise Products___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___Enterprise Products___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _*Jacky Hamrick*_____
Jacky Hamrick (Mar 25, 2020)

Date Signed: __Mar 25, 2020_____

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: __Doyle Rogers_____

1.  I hereby consent to make a claim against _/Enterprise Products_ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _/Enterprise Products_ .

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Doyle Rogers (Mar 27, 2020)_____          Date Signed: __Mar 27, 2020_____

EXHIBIT 2

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Charles stover

1.  I hereby consent to make a claim against _/ Enterprise Products_ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _/ Enterprise Products_.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Charles stover (Mar 27, 2020)_        Date Signed: Mar 27, 2020

EXHIBIT 3

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Lawrence W. Long

1. I hereby consent to make a claim against __/Enterprise Products__ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against __/Enterprise Products__.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Lawrence W. Long (Apr 1, 2020)          Date Signed: Apr 1, 2020

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: ___Kenneth Schiller_____

1.  I hereby consent to make a claim against _____Enterprise Products____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____Enterprise Products____.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Kenneth Schiller (Apr 12, 2020)_____     Date Signed: __Apr 12, 2020_____

EXHIBIT 1

*Robertson v. Enbridge (U.S.) Inc.,* No. 2:19-cv-01080 (W.D. Pa.)

## CONSENT TO JOIN WAGE CLAIM

Print Name: Gregory Huggins
_____

1. I hereby consent to participate in a collective action lawsuit against _____ Enbridge
   to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the Representative Plaintiff and the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

5. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court on all issues in this case.

Signature: *Gregory Huggins*
Gregory Huggins (Aug 27, 2019)

Date Signed: Aug 27, 2019
_____

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: AngelRHernandez

1.  I hereby consent to make a claim against ___Enbridge___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___Enbridge___.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _____     Date Signed: Oct 18, 2019

AngelRHernandez (Oct 18, 2019)

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Scott Bridgeman

1. I hereby consent to make a claim against _____Enbridge_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____/ Enbridge_____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Scott Bridgeman_          Date Signed: Dec 12, 2019
Scott Bridgeman (Dec 12, 2019)

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: James Kozelouzek

1.  I hereby consent to make a claim against _Enbridge_ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _/ Enbridge_ .

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *James Kozelouzek*
James Kozelouzek (Dec 4, 2019)

Date Signed: Dec 4, 2019

EXHIBIT 2

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Randall Hodges

1. I hereby consent to make a claim against _____ / Spectra Energy Corp _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ / Spectra Energy Corp _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Randall Hodges (Jan 10, 2020)          Date Signed: Jan 10, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: michael hendrick

1. I hereby consent to make a claim against Enbridge to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against Enbridge.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Michael D. Hendrick_    Date Signed: Feb 13, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: john parks

1. I hereby consent to make a claim against ___Enbridge___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___Enbridge___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _john parks (Mar 5, 2020)_

Date Signed: Mar 5, 2020

EXHIBIT 1

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Brian S. Matis
_____

1. I hereby consent to make a claim against ___Enbridge Contract___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___/ Enbridge Contract___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Brian S Matis*
Brian S. Matis (Mar 20, 2020)

Date Signed: Mar 20, 2020
_____

EXHIBIT 1

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Deano C. Trott

1. I hereby consent to make a claim against _____ Enbridge _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP. LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Enbridge _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Deano C. Trott (Apr 8, 2020)*          Date Signed: Apr 8, 2020

EXHIBIT 2

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: __Justin Atwood_____

1. I hereby consent to make a claim against _____<sup>Enbridge</sup>___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____<sup>Enbridge</sup>___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Justin Atwood (Apr 27, 2020)_____     Date Signed: _Apr 27, 2020_____

EXHIBIT 1

*Shwoerer v. The Williams Companies Inc.,* No. 5:20-cv-00375 (W.D. Okla.)

**FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Herbert R. Sterling III

1. I hereby consent to make a claim against _____ Williams Companies _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _____ Williams Companies _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _____     Date Signed: Apr 1, 2020 _____

EXHIBIT 1

## CONSENT TO JOIN WAGE CLAIM

Print Name: _kyle wood_____

1. I hereby consent to participate in a collective action lawsuit against _____ Williams _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the Representative Plaintiff and the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

5. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court on all issues in this case.

Signature: _kyle wood (Mar 30, 2020)_____     Date Signed: _Mar 30, 2020_____

EXHIBIT 2

# EXHIBIT 10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL J. BECKER, individually and on behalf of all others similarly situated, | DOCKET NO. 3:20-cv-00285 |
| vs. | JURY TRIAL DEMANDED |
| DELEK US ENERGY, INC. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## <u>DECLARATION OF MICHAEL BECKER</u>

I, Michael Becker, hereby declare as follows:

1.  My name is Michael Becker**,** and the facts contained in this declaration are within my personal knowledge and are true and correct. I worked exclusively for Delek US Energy, Inc. as an electrical inspector from approximately August 2018 until December 2018.

2.  During this timeframe, I only worked for Delek. I was financially dependent on Delek I relied on Delek as my employer and looked to Delek for a predictable paycheck.

3.  Throughout my employment, Delek paid me a day rate.

4.  Based on my experience with Delek, my observations on location, and my conversations with co-workers, Delek paid all their inspectors a day rate.

5.  During my employment with Delek, I reported any developments on location or otherwise directly to Delek's supervisors and upper management employees. My direct supervisor was a Delek employee, William Edwards, who was a Construction Manager.

6.  For my work for Delek, I was paid a flat sum or "day rate" for each day that I worked. The day rate I received was paid without regard to the number of hours I worked each day or in a workweek. I was paid a day rate regardless of the particular job or location I worked on. Delek dictated the amount of the day rate I received, which was non-negotiable or "take it, or leave it."

7.  I was not paid for days I did not work. I was not paid a salary. I was only paid based on the number of days I worked.

8.  Delek scheduled the days and hours that I worked. Delek generally told me I would be scheduled to work for 5-7 days a week, for weeks at a time. On the days that I worked, Delek required me to work shifts lasting 12 hours a day, but I often worked more. Based on my experience with

Delek, my observations on location, and my conversations with co-workers, this schedule was typical of other inspectors that worked for Delek who, like me, were paid a day rate.

9.  Delek assigned me and the other inspectors to the locations we would be working. While working for Delek, I worked in Big Spring, Texas and throughout northwest Texas.

10.  Without these assignments, we would have no jobsite to work on because we only worked on locations through Delek. Based on my experience with Delek, my observations on location, and my conversations with other inspectors, all of Delek's inspectors received their job assignments from Delek. The day-rate pay structure for inspectors was the same at all of the Delek locations that I worked.

11.  Delek did not require me or any of its other inspectors to significantly invest financially in our jobs. Delek does not require us to solicit business from Delek's clients or advertise our services. Delek prohibited us from negotiating additional work or more favorable rates of pay from Delek's clients. We were not financially responsible for downtime or damaged equipment.

12.  My main job for Delek, and the main job of Delek's other inspectors, was to ensure the project was completed according to Delek's specifications and guidelines. As an electrical inspector, my specific job duties involved inspecting the electrical work in the construction of gathering sites for oil and gas and refineries to make sure that the electrical work was performed in accordance with the construction plan and all applicable regulations.

13.  Based on my experience with Delek, my conversations with Delek's other employees, my observations on location, and my conversations with co-workers, I believe all of Delek's inspectors performed the same or similar work, including coating inspectors, welding inspectors, and utility inspectors.

14.  Although I regularly worked more than 40 hours a week for Delek, I never received any overtime. Based on my experience with Delek, observations on location, and my conversations with co-workers, all of Delek's inspectors paid a day rate regularly work more than 40 hours each week without receiving overtime compensation.

15.  Based on my experience with Delek, my observations on location, and my conversations with co-workers, I believe Delek's practice of paying its inspectors a day rate (with no overtime) was Delek's standard pay practice with regard to these workers.

16.  I believe Delek treated me as an employee. As a result, I should have received the benefits of being an employee, including overtime compensation.

2

17. Delek required me to work substantial overtime. I often worked 12-17 hours per day, usually for 7 days a week, for weeks at a time. Thus, on average I typically worked at least 84 hours a week.

18. Delek did not require any advanced degree to work for them as an inspector. Based on my experience with Delek, my observations on location, and my conversations with co-workers, I have personal knowledge that many of Delek's inspectors did not have any advanced degrees.

19. Delek did not allow me "subcontract out" any job assignment to another worker.

20. Delek controlled my work. Delek required all of the inspectors to adhere to strict guidelines, expectations, and directives. We did not exercise any independent judgement or discretion to create or stray away from established policies, practices, or regulations. If we failed to meet Delek's strict directives, Delek could remove us from the jobsite.

21. While working for Delek, I did not have any authority to hire or fire anyone. Delek's management-level employees were the only persons able to do this. I did not make any hiring, firing, advancement, or demotion recommendations while working for Delek. Based on my experience with Delek, my observations on location, and my conversations with co-workers, I do not believe that any inspector had any authority to hire, fire, or discipline anyone on location.

22. Through conversations, I know that there is a general interest among the Delek's inspectors in recovering back wages that we are entitled to through this collective action. Based on these conversations, I believe that other inspectors would be interested to learn about their rights and their opportunity to join this lawsuit.

23. Because we work in remote locations that are far away from home for long periods of time, we will eat, sleep, and work at the jobsite. This work schedule makes it difficult for us to regularly receive mail. In fact, while working, our primary form of contact both with Delek and with the outside world is through email and text messages. Therefore, I believe that in addition to receiving a letter notice, sending notice via email will guarantee that the other inspectors will be made aware of the case.

24. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed on ___Jun 9, 2020___.

Michael Becker (Jun 9, 2020 14:26 PDT)

Michael Becker

3

# EXHIBIT 11

**Declaration of Sharon Moyer**

1.        My name is Sharon Moyer.  I am over 18 years of age and competent in all respects to make this declaration pursuant to 28 U.S.C. §1746.  I have personal knowledge of the facts in this declaration; can testify to their accuracy; and make this statement voluntarily.

2.        I am Vice President and Chief Human Resource Officer for Cypress Energy Partners, LP ("Cypress").  I am a duly-authorized custodian of its personnel records and those of its affiliated entities, including Cypress Environmental Management – TIR, LLC (formerly named Cypress Energy Management-TIR, LLC) which employs inspectors who staff projects contracted by Tulsa Inspection Resources, LLC.  Both are under common control with Cypress.

3.        Attached as Exhibit A is Michael J. Becker's most current resume on file with Cypress Environmental Management – TIR, LLC.

4.        Exhibit A is a true and correct copy of a record kept or maintained by Cypress Environmental Management-TIR, LLC in the ordinary course of business.

5.        I declare under the penalty of perjury, that the foregoing is true and correct.


Executed on this 27th day of July, 2020

Recoverable Signature

X _Sharon Moyer_____

Sharon Moyer
Vice President & Chief Human Resource Officer
Signed by: e841214e-5a93-4ac3-9a6c-4d0761a6ed2e

1

# EXHIBIT A

# Jordan Becker

*1113 Glen Eagles Ct. Norman, Ok. 73072 Tel: (405) 210-7846 Email: jbecker_78@yahoo.com*

**Job Objective:**

I am currently seeking to expand my skill sets in the electrical industry. With 23 years total experience and 10 years in the oilfield, I have a wide array of skills ready to be applied.

**Education:**

Oklahoma City Community College               Sep 2014 ~ Jan 2016
*Associates in Applied Science, Applied Sciences*

**Experience:**

Applied Consultants Inc.                     Dec 2018 ~ Feb 2019

***E&I Consultant***
Electrical and Instrumentation consultant for Navigator Energy Services on large scale infrastructure addition to existing oil gathering and midstream operations in Oklahoma. Duties included project management, field engineering, bid analysis and contract awarding, contractor reviews, etc.

Panhandle Utility Services                   Oct 2018 ~ Dec 2018
***E&I Inspector***
E&I Inspector on large oil gathering project for Oxy Permian Basin

Quality Integrated Services                  Aug 2018 ~ Oct 2018
***E&I Inspector***
E&I Inspector on a large SCADA project for Targa Resources Badlands Division.
E&I Inspector on a LACT unit installation for Delek Logistics in West Texas

Fusion Industries                            Apr 2018 ~ Aug 2018
***Electrical Operations Manager***
Electrical Operations Manager for a large oilfield engineering, mechanical and electrical contractor. Duties include scheduling personnel for jobs, creating BOM's and procuring material for upcoming work, creating conduit schedules and wire schedules, planning for upcoming jobs, putting together proposals or bids for new and existing clients, filling in as a foreman/Journeyman when necessary to complete jobs on time and budget, quality control and analysis,etc.

Americom Technologies                        Apr 2017 ~ Apr 2018
***Electrical Superintendent***
Duties included job planning, creating conduit and wire schedules, creating proposals for bid jobs, quality control and analysis on current projects, creating job scopes and schedules, ensuring projects come in on time and within budget, etc.

# Jordan Becker

*1113 Glen Eagles Ct. Norman, Ok. 73072 Tel: (405) 210-7846 Email: jbecker_78@yahoo.com*

## Bob Bartley Electric                    Apr 2016 ~ Apr 2017
***Electrical Foreman***
Foreman Electrician for an electrical contractor specializing in oilfield service and construction . Duties included automation and electrical installation and service, VFD, PLC, SCADA installation and service, quality control and analysis, etc

## Kellogg, Brown and Root                    Feb 2016 ~ Apr 2016
***Journeyman Electrician***
Journeyman Electrician on a large expansion of the Koch Nitrogen Facility in Enid, Ok. Primary job assignments included PLC installation and termination, switchgear installation and termination, automation and electrical termination and certification, loop checks and testing, etc

## Integris Southwest Medical Center     Aug 2015 ~ Feb 2016
***Emergency Room Technician***
Emergency Room Tech. in one of the busiest ER's in the metro area

## Bob Bartley Electric                    Sep 2012 ~ May 2015
***Electrical Foreman***
Foreman/Journeyman for an oilfield service and construction electrical contractor. Duties included automation and electrical service and installation; VFD, SCADA, PLC service and installation, overhead distribution service and installation, etc.

### Skills:

*Automation:*
Installing, maintaining and troubleshooting various PLC's, VFD's, SCADA systems, lighting control systems, end devices and equipment in industrial, oilfield and commercial settings

*Electrical:*
Oilfield, manufacturing, and commercial new construction from ground work to completion; excellent troubleshooting and repair skills on various types of equipment, excellent supervisory and organizational skills

### Certifications:

Oklahoma Unlimited Journeyman License
License #115630

OSHA 10, Safeland, H2S, First Aide

### References:

James Jarwin - Navigator Energy  (405) 403-9517

Carlos Barboza - Fusion Industries  (580) 307-2458

Michael Fought - American Trades  (405) 816-5238

# EXHIBIT 12

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

|  |  |
|---|---|
| MICHAEL J. BECKER, individually and on behalf of all others similarly situated, | DOCKET NO. 3:20-cv-00285 |
| vs. | JURY TRIAL DEMANDED |
| DELEK US ENERGY, INC. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## DECLARATION OF FREDDY ROJAS

I, Freddy Rojas, hereby declare as follows:

1.  My name is Freddy Rojas**,** and the facts contained in this declaration are within my personal knowledge and are true and correct.

2.  I worked exclusively for Delek US Energy, Inc. as a coating and welding inspector from approximately February 2019 until May 2019.

3.  During this timeframe, I only worked for Delek. I was financially dependent on Delek I relied on Delek as my employer and looked to Delek for a predictable paycheck.

4.  Throughout my employment, Delek paid me a day rate.

5.  Based on my experience with Delek, my observations on location, and my conversations with co-workers, Delek paid all their inspectors a day rate.

6.  During my employment with Delek, I reported any developments on location or otherwise directly to Delek's supervisors and upper management employees.

7.  For my work for Delek, I was paid a flat sum or "day rate" for each day that I worked. The day rate I received was paid without regard to the number of hours I worked each day or in a workweek. I was paid a day rate regardless of the particular job or location I worked on. Delek dictated the amount of the day rate I received, which was non-negotiable or "take it, or leave it."

8.  I was not paid for days I did not work. I was not paid a salary. I was only paid based on the number of days I worked.

9.  Delek scheduled the days and hours that I worked. Delek generally told me I would be scheduled to work for 6 days a week, for weeks at a time. On the days that I worked, Delek required me to work shifts lasting 10-13 hours a day, but I often worked more. Based on my experience with

Delek, my observations on location, and my conversations with co-workers, this schedule was typical of other inspectors that worked for Delek who, like me, were paid a day rate.

10. Delek assigned me and the other inspectors to the locations we would be working. While working for Delek, I worked throughout West Texas. Delek paid the inspectors a day rate at every location I worked.

11. Without these assignments, we would have no jobsite to work on because we only worked on locations run by Delek. Based on my experience with Delek, my observations on location, and my conversations with other inspectors, all of Delek's inspectors received their job assignments from Delek. The day-rate pay structure for inspectors was the same at all of the Delek locations that I worked.

12. Delek did not require me or any of its other inspectors to significantly invest financially in our jobs. Delek does not require us to solicit business from Delek's clients or advertise our services. Delek prohibited us from negotiating additional work or more favorable rates of pay from Delek's clients. We were not financially responsible for downtime or damaged equipment.

13. My main job for Delek, and the main job of Delek's other inspectors, was to ensure the project was completed according to Delek's specifications and guidelines. As a coating and welding inspector, my specific job duties involved inspecting the construction of gathering sites for oil and gas and refineries to make sure that the welding and paint coating work was performed in accordance with the construction plan and all applicable regulations.

14. Based on my experience with Delek, my conversations with Delek's other employees, my observations on location, and my conversations with co-workers, I believe all of Delek's inspectors performed the same or similar work.

15. Although I regularly worked more than 40 hours a week for Delek, I never received any overtime. Based on my experience with Delek, observations on location, and my conversations with co-workers, all of Delek's inspectors paid a day rate regularly work more than 40 hours each week without receiving overtime compensation.

16. Based on my experience with Delek, my observations on location, and my conversations with co-workers, I believe Delek's practice of paying its inspectors a day rate (with no overtime) was Delek's standard pay practice with regard to these workers.

17. I believe Delek treated me as an employee. As a result, I should have received the benefits of being an employee, including overtime compensation.

2

18. Delek required me to work substantial overtime. I often worked 10-13 hours per day, usually for 6 days a week, for weeks at a time. Thus, on average I typically worked at least 72 hours a week.

19. Delek did not require any advanced degree to work for them as an inspector. Based on my experience with Delek, my observations on location, and my conversations with co-workers, I have personal knowledge that many of Delek's inspectors did not have any advanced degrees.

20. Delek did not allow me "subcontract out" any job assignment to another worker.

21. Delek controlled my work. Delek required all of the inspectors to adhere to strict guidelines, expectations, and directives. We did not exercise any independent judgement or discretion to create or stray away from established policies, practices, or regulations. If we failed to meet Delek's strict directives, Delek could remove us from the jobsite.

22. While working for Delek, I did not have any authority to hire or fire anyone. Delek's management-level employees were the only persons able to do this. I did not make any hiring, firing, advancement, or demotion recommendations while working for Delek. Based on my experience with Delek, my observations on location, and my conversations with co-workers, I do not believe that any inspector had any authority to hire, fire, or discipline anyone on location.

23. Through conversations, I know that there is a general interest among the Delek's inspectors in recovering back wages that we are entitled to through this collective action. Based on these conversations, I believe that other inspectors would be interested to learn about their rights and their opportunity to join this lawsuit.

24. Because we work in remote locations that are far away from home for long periods of time, we will eat, sleep, and work at the jobsite. This work schedule makes it difficult for us to regularly receive mail. In fact, while working, our primary form of contact both with Delek and with the outside world is through email and text messages. Therefore, I believe that in addition to receiving a letter notice, sending notice via email will guarantee that the other inspectors will be made aware of the case.

25. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed on ___Jun 9, 2020___.                    _____
                                                freddy rojas (Jun 9, 2020 17:35 CDT)
                                                Freddy Rojas

3