THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| ZACHARIAH ROBERTSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>ENBRIDGE (U.S.) INC.,<br><br>Defendant. | 2:19-CV-01080-WSS<br><br>MJ Lenihan<br><br>ECF Nos. 305, 312 |
| ZACHARIAH ROBERTSON, ANGEL HERNANDEZ, GORDON LUNSTEAD, GREG HUGGINS,<br><br>Plaintiffs,<br><br>vs.<br><br>ONSHORE QUALITY CONTROL SPECIALIST, LLC,<br><br>Defendant. | 2:21-MC-00690-WSS<br><br>MJ Lenihan<br><br>ECF No. 1 |

## **REPORT AND RECOMMENDATION ON MOTIONS TO ENFORCE COMPLIANCE WITH SUBPOENA AND FOR PROTECTIVE ORDER**

For the reasons set forth below, it is recommended that the Motion to Enforce Compliance in C.A. No. 21-mc-690 (ECF No. 1) be granted and that the Motion for Protective Order in C.A.

No. 19-1080 (ECF No. 312) be denied. It is also recommended that the Motion to Enforce Subpoena in C.A. No. 19-1080 (ECF No. 305) be granted. Although a motion to quash and a motion for enforcement are usually non-dispositive matters, for movants Onshore and Avery, they are the entire proceeding before this Court. Therefore, in an abundance of caution, the undersigned will handle this on a Report and Recommendation basis.

## I.     BACKGROUND AND PROCEDURAL HISTORY

This Fair Labor Standards Act ("FLSA") class and collective action has been pending since August 27, 2019. It has been vigorously litigated, e.g. 324 docket entries to date. Finally, on February 12, 2021, Plaintiff filed a Motion for Approval of a Collective Action Settlement and Preliminary Approval of a Class Action Settlement. ECF No. 270.[1] On February 25, 2021, the District Judge entered an Order granting preliminary approval and setting a hearing date of June 29, 2021. ECF No. 272. Due to these motions and the resultant inability to give notice to class members, that final approval hearing has now been rescheduled to September 1, 2021. ECF No. 323.

The putative class for the settlement agreement consists of

> All Plaintiffs, Opt-in Plaintiffs, and current or former Inspectors who performed work on Defendant Enbridge (U.S.) Inc. pipeline or projects (including the pipeline or projects of Spectra Energy Corp. or affiliated entities) at any time from September 17, 2017 to September 17, 2020 working in Pennsylvania, New York, Ohio and Illinois; and employed by the Vendor Companies.

ECF No. 272 at 2.

The settlement agreement further provides:

> Eligible Rule 23 Class Members and Eligible FLSA Collective Members: Up to 600 inspectors, but less the number of inspectors in the Aguilar Action, [fn. omitted] employed by the following Vendor Companies who worked on Enbridge pipelines or

---

[1] All references to ECF Numbers will be for C.A. No. 19-1080 unless a specific citation is made to C.A. No. 21-690.

>   projects (including the pipelines or projects of Spectra Energy Corp. or its affiliated
>   entities (collectively, "Spectra") [fn. omitted]) during the FLSA Period:
>       a. Abrams Technical Services, Inc.
>       b. Audubon Field Solutions, LLC
>       **c. Avery Pipeline Services, Inc. / Avery Technical Resources, Inc.**
>       d. EnSite USA, Inc.
>       e. FIS Operations, LLC, d/b/a Frontier Integrity Solutions
>       f. MBF Inspection Services, Inc.
>       g. MDM Energy Services, Inc. / MDM Solutions, LLC
>       **h. Onshore Quality Control Specialists, LLC**
>       i. Universal Ensco, Inc. (Universal Pegasus International)
>       j. Wilcrest Field Services, LLC

(emphasis added) ECF No. 270-1 at 2.

The settlement agreement also states:

>   Class List and Allocation: To the extent it is able to do so, Enbridge shall provide the data listed in the Class List to Class Counsel and the Settlement Administrator within 30 days of the execution of this Agreement. Enbridge does not have records of the addresses, phone numbers, social security numbers, or email addresses of the Eligible Rule 23 Class Members and Eligible FLSA Collective Members. Enbridge has requested this information from the Vendor Companies (as that term is defined herein and in the Aguilar Settlement) and will cooperate with Class Counsel in seeking to obtain this data. The Parties will work together to allocate the settlement funds based on the information provided in the Class List (as that term is defined herein and in the Aguilar Settlement).

*Id*. at 3.

Because Enbridge does not have access to many of the workers' contact information, it was agreed that counsel for Robertson, the named Plaintiff, would send third party subpoenas to certain third-party vendors, Onshore Quality Control Specialists, LLC ("Onshore") and Avery Technical Resources, Inc. ("Avery"), being two of these.[2]

Motions for protective orders were filed or, in some cases, the subpoenas were simply ignored. In at least one case, now transferred to this Court at Civil Action No. 21-mc-690, Robertson filed a Motion to Enforce Compliance with the subpoena. Plaintiff Robertson also

---

[2] MBF Inspection Services, Inc.("MBF") was a third vendor to which a third-party subpoena was sent. It initially filed a Motion to Intervene (ECF No. 302) but advised the Court at a conference on June 1, 2021, that it had complied with the subpoena.

3

filed a Motion to Enforce Subpoena in Civil Action No. 19-1080 at ECF No. 305. Onshore, Avery and MBF also filed Motions to Intervene in Civil Action 19-1080, which the undersigned recommended be denied on May 28, 2021. ECF No. 308. That Report and Recommendation has been adopted by the District Court. ECF No. 324.

A telephone conference was held on June 1, 2021, at which time the Court indicated it would allow motions for protective order from Onshore and Avery, MBF having already complied with the subpoena. The Motion was filed on June 3, 2021. ECF No. 312. Enbridge and Robertson each filed a Response on June 10, 2021. ECF Nos. 314, 315. Onshore and Avery filed a Reply on June 16, 2021. ECF No. 321.

Robertson filed a Motion to Compel Compliance with Third-Party Subpoena in the United States District Court for the Northern District of Texas and simultaneously requested that the matter be transferred to this Court. The transfer request was granted, and the case was opened in this Court at Civil Action No. 21-mc-690 on June 2, 2021. The Motion to Compel is pending at ECF No. 1. A Response was filed by Onshore (ECF No. 6) and Robertson filed a Reply and a Notice of Supplemental Authority. ECF Nos. 8 and 9.

This opinion will address all issues with the third-party subpoenas in both cases.

II. **DISCUSSION**

    A. **Parties' Arguments**

Avery and Onshore argue that notice of the settlement agreement with Enbridge should not be sent to any of their employees who signed an arbitration agreement with Onshore and Avery containing class and collective action wavers. For this reason, they seek an order protecting them from any obligation of complying with the third-party subpoena served by Robertson in this matter. Avery and Onshore ("Vendor Companies") provided pipeline

inspectors to Enbridge for projects in various states. They are commonly known as Vendor Companies in the oil and gas business. They allege that all of Onshore's employees and all but six of Avery's employees who worked on an Enbridge project during the relevant period had signed arbitration agreements. ECF No. 313 at 3. Robertson and Enbridge have reached a settlement agreement and Robertson is seeking information from these Vendor Companies so that they may send a notice of settlement to their employees, including any who have signed arbitration agreements with the Vendor Companies.

The Vendor Companies argue that: "[t]he law is clear that courts may not send notice of class and collective actions to ineligible persons." ECF No. 313 at 8. To support this statement, they rely primarily on *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) and *Bigger v. Facebook, Inc.,* 947 F.3d 1043 (7th Cir. 2020). Those cases involved sending notice to an employee with a valid arbitration agreement as part of conditional certification. They also cite to a case from this Court, *Bruno v. Wells Fargo Bank N.A.*, No. 19-587, 2021 WL 1550076 (W.D. Pa. Apr. 20, 2021). In that case, Judge Colville stated that "arbitration agreements with collective action waivers are presumptively valid*." Bruno*, 2021 WL 1550076, at *4. The *Bruno* court certified an interlocutory appeal to decide if notice of a class and collective action may be sent to employees who have entered into valid arbitration agreements at the conditional certification phase. Although each of these cases was decided at the conditional certification phase, Vendor Companies argue that they apply equally at the settlement stage. Because their employees signed arbitration agreements with Avery and Onshore, those third parties argue that they are therefore not eligible to participate in any class/collective settlement with Enbridge.

5

They further argue that, because this Court has previously decided that Enbridge may enforce arbitration agreements signed with Vendor Companies,[3] law of the case supports their position. They requested leave to file a Sur-Reply, ECF No. 320, at which time they addressed the issue of irreparable injury for the first time. The argument was that irreparable injury would occur if notice is improperly sent to arbitration-employees as they will likely have no ability to participate, citing *Bruno,* 2021 WL 1550076, at *5.

Robertson argues that, first, the information being sought is relevant to the settlement agreement and to damages in the underlying action and further, that courts routinely require third parties to provide identities and contact information of putative class members. C.A. No. 21-690, ECF No. 1 p.8. He further argues that neither *JP Morgan* nor *Bigger* stands for the proposition that there is a rule prohibiting employees with arbitration agreements from receiving notice of a settlement of a collective action. Both cases involved rulings at the conditional certification phase as opposed to the settlement phase and address an employee with an arbitration agreement with a defendant employer, not with a third-party vendor. He points to language in *Bigger* where the court specifically ruled that courts did not have "to simply take an employer at its word when it says certain employees entered valid arbitration agreements…." 947 F.3d at 1051. He further notes that in both cases, the defendants were trying to prevent notice to their own employees based on the arbitration agreements. Here, Defendant Enbridge is asking that notice be sent to its putative joint employees with the Vendor Companies.

Robertson further argues that neither Avery nor Onshore has met the standard of showing good cause for the issuance of a protective order. They have failed to identify any clearly defined

---

[3] This is a misrepresentation of the Court's prior ruling and will be addressed later.

or serious injury, or any specific or general injury for that matter. He argues that the only injury may be that Avery or Onshore may be sued in the future; however, the possibility of future litigation is not a recognized specific injury, citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). ECF No. 315 at 4-5.

As to the "law of the case" argument, Robertson clarifies, and the Court agrees, that the prior ruling was not that putative plaintiffs who signed an arbitration agreement with a third-party vendor could not participate in the litigation, but that it was for the arbitrator to decide if Enbridge, a non-signatory to the agreement, could enforce it.

Finally, Enbridge, Defendant herein and the entity trying to settle this matter, argues that neither Avery nor Onshore has a basis to withhold their employees' contact information. It has the discretion to determine whether it wishes to settle the claims in this matter, and whether to try to assert the benefit of any arbitration agreements signed with the Vendor Companies. At this point, it is choosing to settle rather than enforce those agreements. "No arbitration agreement prevents the parties from *voluntarily* settling claims and obtaining court approval." ECF No. 314 at 4. Like Robertson, Enbridge argues that *JP Morgan* and *Bigger* are not applicable at the settlement stage of a FLSA case but rather, are limited to the conditional certification stage.[4]

Enbridge further argues, as to law of the case, that there is no ruling by this Court that putative class and collective members are ineligible to participate in a settlement as part of a voluntary agreement between the parties. *Id.* at 6.

---

[4] Enbridge addresses Avery and Onshore's argument that *Hennigar v. Targa Res. Corp.*, No. 4:20-CV-1209 (S.D. Tex.) applies to stand for the proposition that individuals who agreed to arbitrate should not receive notice inviting them to pursue their claims in a case because they are not eligible to do so. Enbridge points out that, unlike the present action, the defendant in *Hennigar* continued to assert that the putative collective members who entered into arbitration agreements must arbitrate their claims. The Court has chosen not to address *Hennigar* as it not binding, nor does it provide guidance in this matter due to the exact difference Enbridge has pointed out in its briefing.

B. **Standard of Review**

Fed. R. Civ. P. 45 governs discovery directed to individuals and entities that are not parties to the underlying lawsuit. It is generally accepted that a subpoena under Rule 45 must fall within the scope of discovery under Fed. R. Civ. P. 26(b)(1), which is "'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (quoting *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, No. 08-2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)).

Robertson moves to compel compliance under Fed. R. Civ. P. 45(d)(2)(B)(i). In addition to opposing that, Avery and Onshore also move for a protective order, which is governed by Fed. R. Civ. P. 26(c). The Rule provides that a court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* The party seeking the protective order bears the burden of demonstrating that "good cause" exists for the protection of the material being sought. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

C. **Analysis**

Not only is there no Third Circuit authority addressing the issue of notice of a settlement for signors of an arbitration agreement in a class/collective FLSA case,  the only guiding authority found is in the Fifth and Seventh Circuits and involves sending notice to an employee with a valid arbitration agreement as part of conditional certification. *In re JPMorgan Chase &*

8

*Co.*, 916 F.3d 494 (5th Cir. 2019) and *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020). These are the cases cited by the Vendor Companies in support of their position. The Court agrees with Enbridge and Robertson that these cases are not relevant here as this case is in an entirely different posture. At this juncture, notice is being sent to inform the employees of their ability to participate in the settlement agreement. While the arbitration agreements **may** have prevented the employees from litigating the case, they do not prevent them from participating in a settlement between Enbridge and Plaintiffs.[5]

In *In re JPMorgan Chase & Co.*, the district court conditionally certified a FLSA collective action and directed that about 42,000 current and former chase employees receive notice. Chase argued that about 85% of those individuals signed arbitration agreements with it, waiving their right to proceed collectively against it and therefore, should not receive the notice. The case was before the circuit on a petition for writ of mandamus.  916 F.3d at 497. Citing *Hoffmann-LaRoche Inc. v. Sperling,* 493 U.S. 165, 169 (1989), the court first acknowledged that district courts have discretion to "'facilitate[e] notice to potential plaintiffs.'" *Id.* at 500 (quoting *Hoffmann-La Roche*, 493 U.S. at 169).  This ensures that "'employees [will] receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 170.)  Although some courts wait until stage two of the process, the final certification phase, *Hoffmann-LaRoche* gave discretion to provide notice sooner.

The court went on to state that, "if there is a genuine dispute as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a collective action, as to a

---

[5] The Court notes that it did not find that the arbitration agreement precluded an Onshore employee from litigating a claim with Enbridge. It found that the issue of whether the arbitration agreement was a bar was required to be submitted to the arbitrator. ECF No. 182.

9

particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee." *JPMorgan Chase,* 916 U.S. at 502-503. The court concluded that it was error to send notice of conditional certification to employees who had signed an arbitration agreement with Chase when Chase was attempting to enforce those agreements as a bar to the collective litigation. *Id.* at 503.

In *Bigger v. Facebook, Inc.,* the same issue was presented. Notice of conditional certification was sent to employees situated similarly to the named plaintiff over the objection of Facebook due to the existence of arbitration agreements for many of the employees. Citing to *Hoffmann-La Roche*, the court noted the opportunity for abuse of the collective action process by allowing plaintiffs to use it to leverage a favorable settlement and to solicit claims. 947 F.3d at 1049, referencing *Hoffmann-La Roche*, 493 U.S. at 174. Sending notice to arbitration employees, the court found, could appear to inflate the settlement pressure rather than simply inform the employees of an action in which they could resolve common issues. *Bigger,* 947 F.3d at 1049. *Bigger* found that if a plaintiff contests the assertions of a valid and preclusive arbitration agreement, the court should not authorize notice until the parties can submit evidence as to the existence and validity of same. *Id.* at 1050.

The Vendor Companies argue that this case presents a "logical extension of [the] law"[6] established in *Bigger* and *JPMorgan Chase*. The Court does not find it to be a logical extension at all. There are three very important distinctions at play in the present matter. First, we are not at the conditional certification stage, we are at the settlement stage. Second, the Defendant in this case, Enbridge, is not a signatory to any arbitration agreements and is choosing, at this point of the litigation, not to argue that they preclude anyone who will receive notice from participating

---

[6] ECF No. 313 at 1.

10

in the settlement. Third, this is not a situation where the Court is placing its judicial thumb on Plaintiff's side of the case[7] by helping to inflate the settlement amount. Enbridge has agreed to the settlement amount and does not contest the inclusion of the Vendor Company employees who may have signed arbitration agreements.

Vendor Companies seem to think that the Court will also be persuaded by its colleague, Judge Colville's opinion in *Bruno*, 2021 WL 1550076, at *1. The Court sees no difference between that opinion and *Bigger* and *JPMorgan Chase*. *Bruno* certified to the Third Circuit the following question: "whether the court may facilitate notice to Arbitration HMCs who are barred as a matter of law from joining this case…." *Bruno*, 2021 WL 1550076, *1. In fact, there is a third distinction in *Bruno*, the fact that the court found there was "absolutely no evidence that the [arbitration] agreements are unenforceable." *Bruno*, 2021 WL 1550076, at *4.

Vendor Companies argue that because the Court previously allowed two other vendors to intervene, the law of the case is that these employees should not receive notice. Again, all the Court did was refer the question of arbitrability of their claims to the arbitrator. The distinction, however, is that those vendors moved to intervene very early in the case[8], and at a time when Enbridge was also asserting the arbitration agreement as a defense. [9] The right to enforce an arbitration agreement can be waived and this is what Enbridge is now choosing to do. *See Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) (citing *Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986)).

These particular Vendor Companies sat back, allowed Enbridge to expend its resources in discovery, motions, and negotiations, and now that Enbridge has chosen to stop the litigation

---

[7] *See Bigger*, 947 F.3d at 1049.
[8] January 23 & 30, 2020. ECF Nos. 44 & 47.
[9] March 30, 2020, ECF No. 86.

bleed, are stepping in to interfere with its attempt at a final resolution. Too little too late does not even begin to describe their actions. Enbridge is the Defendant in this action, and it is not clear to this Court how Onshore or Avery—or this Court—can force it to proceed in arbitration when it is no longer asserting the arbitration agreement as a defense. If we were currently at the conditional certification stage, and if Enbridge continued to indicate a willingness to try to enforce the arbitration agreements, the Court would agree with Onshore and Avery. Fatal to their argument is the fact that we are not. Onshore and Avery argue that they do not need Enbridge's consent to enforce their own arbitration agreement. However, neither are defendants in this case. They are merely entities subject to the power of a third-party subpoena.

Discovery from a third party via a subpoena issued under Fed. R. Civ. P. 45 is subject to the same general limitations on discovery set forth in Rule 26. The District Judge has approved a collective action settlement and preliminarily approved a class settlement. The eligible class and collective members include persons for whom Onshore and Avery have the necessary information to provide notice to the class. The information requested by the subpoena is therefore relevant under Rule 26.

To obtain a protective order, Fed. R. Civ. P. 26(c) requires good cause. As explained above, good cause is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. The Vendor Companies do not address good cause until their Reply to Plaintiff's responsive arguments against their Motion for Protective Order. In that Reply brief, they argue that the irreparable injury is that notice will be sent to persons who "likely have no opportunity to participate" in the settlement. ECF No. 319 at 1 (citing *Bruno*, 2021 WL 1550076, at *5). The Court does not agree. The settlement is being funded by Enbridge and

Enbridge is not objecting to their participation.[10] Named Plaintiff is not objecting to their participation, and there is no exclusion in the putative class for someone who has signed an arbitration agreement. Furthermore, Vendor Companies have not proven annoyance, embarrassment, oppression, undue burden or expense.

## II. CONCLUSION

For the reasons set forth above, it is recommended that the Motion to Enforce Compliance in C.A. No. 21-mc-690 (ECF No. 1) be granted and that the Motion for Protective Order in C.A. No. 19-1080 (ECF No. 312) be denied. It is also recommended that the Motion to Enforce Subpoena in C.A. No. 19-1080 (ECF No. 305) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

DATED this 8th day of July 2021.

BY THE COURT

LISA PUPO LENIHAN
United States Magistrate Judge

---

[10] Enbridge Response to Motion for Protective Order, ECF No. 314 at 2 & 4.